FILED

2019 AUG -9  A 11: 44

U.S. DISTRICT COURT
NEW HAVEN. CT.

JAMES P. CORNELIO

: CIVIL ACTION NO.
  _3:19-cv-1240-JAM_

V.

THE STATE OF CONNECTICUT
(State), STAVROS MELLEKAS, in
his official capacity as
Commander of the
CONNECTICUT DEPARTMENT
OF EMERGENCY SERVICES
AND PUBLIC PROTECTION
(DESPP), DEBBIE JENEY (Det.
Jeney), JOHN and/or JANE DOE,
each in their individual capacity
(collectively, Defendants).

: August _9_, 2019

### A. PARTIES

I'm a resident of the State; Stavros Mellekas is the Commander of DESPP of which the
Sex Offender Registry Unit ("SORU") is a division; Det. Jeney is, or was at the time of the
facts set forth below, an officer assigned to SORU; and John/Jane Doe are individuals
not yet identifiable.

### B. JURISDICTION, VENUE AND BASIS FOR RELIEF

Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331 and 1343; venue under 28 U.S.C.
§ 1391; and I am entitled to the requested relief under 42 U.S.C. § 1983.

### C. NATURE OF THE CASE

Your Honor, in 2005 I pled guilty in a New York court to various sex offenses committed
in the state of New York.  As a result of my residency in the State, I am required to register
as a sex offender under Connecticut General Statutes (C.G.S.) § 54-253 (the
"Registration Requirement"), and, under clause (b) thereof, I am also required to notify

1

the Commissioner of DESPP if I establish or change an "electronic mail address, instant message address or other similar Internet communication identifier". Further, under C.G.S. § 54-257 (the "Confirmation Law"), I am obligated to sign and return, each quarter of every year, a letter confirming my address.[1]

On June 30, 2016, Det, Jeney signed the warrant application attached as Exhibit A (the "Affidavit"). As a result of the warrant issued in connection therewith, I was arrested in my home on Sunday, April 22, 2018. On May 30, 2018, the case was dismissed by Judge Metasavage of the State's Superior Court.

As I believe it has relevance for the relief requested below, I am providing a brief history of an earlier interaction I had with officers of SORU.

On July 8, 2015 during a routine traffic stop in New Preston, CT, I was arrested as a result of an outstanding warrant application completed by an officer of SORU because two of the quarterly address confirmation letters which I am required to submit every year under the Confirmation Law were mailed beyond the 10-day grace period set forth in the statute. After the case was dismissed, believing that SORU's officers were being both inconsistent and vindictive in their application of that law, I submitted a complaint to the internal affairs division of the State police. The State police officer in charge of that investigation held that SORU's officers were acting within their authority but wrote that I should seek any "further clarification" from SORU on how the Confirmation Law is applied. On November 27, 2015, I sent an email to SORU with several questions on how they applied the Confirmation Law in an attempt to reconcile, for future reference and compliance, the discrepancies in the actual terms of the Confirmation Law and how the law is enforced by SORU both as it had been applied to me personally, and more generally. Rather than answering my questions, the then Commander of SORU simply referred me back to the law. Frustrated, confused and believing that I had been singled out by SORU's officers to 'teach me a lesson,' I filed a complaint in the Federal District Court in the State on August 9, 2016 alleging, among other things, that certain of SORU's officers had engaged in malicious prosecution in violation of my Fourth Amendment rights.

---

[1] See p. 9 infra for the text of the Confirmation Law.

In that case, it went unchallenged: (i) that SORU had instituted a 3-letter, 30 day protocol for late mail violations[2] notwithstanding the 10-day statutory time period under the Confirmation Law and had accepted, without more, several quarterly confirmation letters from me which were sent beyond the 10-day statutory period but within the 30-day protocol period,[3] (ii) that SORU, with no reason or warning, then sought a warrant for 2 additional late letters of mine even though those letters were also delivered within the protocol period, (iii) that, on its face, the opinion of the State's highest court appears to accept that a registrant's compliance with the 30-day protocol period cures any failure to return the confirmation letter within the 10-day statutory period,[4] (iv) that SORU, itself, violated the Confirmation Law by submitting the warrant application rather than referring the violation to local police as required by the law, (v) that SORU did not reveal in its improperly submitted application that it had implemented the protocol leaving any magistrate tasked with approving or disapproving the warrant application unaware of the existence or purpose of the protocol, SORU's authority to implement it and why it had been inconsistently applied to me, and (vi) that I had had multiple not-always deferential interactions with SORU over multiple years. Nevertheless, the Federal District Court Judge to which my case was assigned, Judge Haight, ruled that I "had failed to make any allegations that support malice" on the part of the defendants and, so, was not entitled to a trial on the merits.

But there was one additional fact of which neither I nor, presumably, Judge Haight were aware at the time: that SORU, some months after I had lodged my complaint with the internal affairs division of the State police but a month or so before I had filed my complaint with the District Court, had *again* sought a warrant for my arrest. That's the warrant sought pursuant to the Affidavit attached as Exhibit A. And that's the one for which I seek the following relief for the reasons set forth below.

---

[2] That is, if a registrant fails to respond to the initial address confirmation letter within 10 days, 2 more letters would be sent within 10 days of each other unless there is an intervening response from the registrant.

[3] Actually, my first late-mail was sent even beyond the 30-day protocol period. In that instance, the violation was referred, as required by the Confirmation Law, to the local police and inasmuch as it involved a misunderstanding and my absence from home during the relevant protocol period, it was resolved with no warrant being sought.

[4] See *State of Connecticut v. T.R.D.*, 286 Conn. 191, 942 A.2d 1000, 1007 (2008) and the discussion of that case on pp. 10-12, infra.

**Claim I:**

Det. Jeney (and, possibly, currently unknown Jane/John Does) engaged in malicious prosecution in violation of my Fourth Amendment right to be free of unreasonable searches and seizures.

To prevail on a §1983 malicious prosecution claim, I "must establish the elements of a malicious prosecution under State law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). Pursuant to *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982), there are four such State law elements, two which are relevant for this case: one, whether Det. Jeney acted without probable cause; and two, whether she acted with malice.[5]

Under *Golino v. City of New Haven, Conn.,* 950 F.2d 864, 870 (2d Cir. 1991), assuming, for the purposes hereof, that a "neutral magistrate" issued the arrest warrant, I face a "heavy burden" in order to prevail on my claim that Det. Jeney acted without probable cause as I must make a "substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in [the] affidavit and that the allegedly false statement was necessary to the finding of probable cause." Or I must show that there were "[i]ntentional or reckless omissions of material information" in that affidavit which had the same effect. *Id*.

So, given those standards, let's look at what Det. Jeney asserts in her Affidavit:

First: In its header, Det. Jeney states that my residence is in the Town of "Middlefield" CT. That's simply false.

Second: After spending two lengthy paragraphs referring to my obligation to keep SORU informed about any change in my address including underscoring, literally, the consequences of my failure to do so, Det. Jeney then continues, in the 5th paragraph, to note that I had reported my address as being in the town of New Preston (which is actually where it is) but then adds, pointedly, that I "*had not*" (her italicized emphasis) informed them of any change of my address, leading any reasonable person to believe given: (i)

---

[5] Neither of the two remaining elements: (i) that certain of Defendants instituted criminal proceedings against me, and (ii) that those proceeding were determined in my favor, *McHale*, 187 Conn. at 447, are disputable.

the address she sets forth in the header, (ii) my actual address she sets forth in paragraph 5, and (iii) her focus for almost the entire first page of the 2 page Affidavit on my statutory obligation to keep SORU informed of my current address, that I was in violation of that obligation.

I wasn't. So why did she even raise the issue of my residence in her Affidavit, and raise it in such length and in such (inaccurate) detail?

At the very least, the Affidavit is misleading. And unless one is prepared to suspend disbelief as to her competence or motive, how can it be seen as anything other than "knowingly and intentionally" so. And given that the primary mission of SORU under the State's sex offender registration laws is to track the residence of sex offenders and given that most informed magistrates recognize that as SORU's primary mission, what possible purpose can there be for Det. Jeney's false, misleading and lengthy focus on my residence other than to convince a magistrate, by misdirection, that there was probable cause to issue a warrant for my arrest for failure to report a change in my residence.

Then there's the fact that the remainder of the Affidavit confirms what my long and fraught history with SORU (some of which is outlined herein) also otherwise substantiates—that her motive for her false and misleading statements was malice.

To begin:

First, in its 6th paragraph, Det. Jeney makes reference to a "Sex Offender Advisement of Registration Requirements" which, she claims, advised me that I must inform SORU "in writing" of any "electronic mail address, instant message address or similar communication identifier" that I should establish, change or use. That Advisement is not attached to the Affidavit, nor do I remember it, and I surely would have had no reason to fail to reveal my email address in it especially given that I did reveal, as acknowledged by her Affidavit, the then website for a book I wrote about my crime, which was far more informative than any email address. In fact, that website included my email address on its contact page.

Second, in its 13th paragraph, Det. Jeney asserts that my earliest email to SORU was dated on or about 2/12/10. That, also, is demonstrably false. Per my records, my first

email to SORU was almost a year earlier on 3/17/09.[6]  And If you read that email, and the chain of emails which follow, it's clear that I'm not trying to avoid my legal obligations. Again though, the question is raised whether another demonstrably false assertion by Det. Jeney is a result of incompetence or something less excusable.

Third, of more than a dozen emails which my records show exist between myself and SORU for the several years between 2009 and 2016 when the Affidavit was signed, the two Det. Jeney highlights in her Affidavit is one dated 9/28/15 where, in the part she quotes, I write "Look forwarding to seeing you in Court"; and one dated the following day, 9/29/15, where, in the part she quotes, I write "I'm sorry Detective … I guess another of those crossed "T's" and dotted "I's" we can iron out in Court."

What possible reason could there have been for Det. Jeney to choose to highlight those particular parts of those particular emails among the dozen or more of our other emails while, at the same time, conveniently ignoring any context for the words of mine which she did choose to quote? Could it be because those words in those emails, not to mention my complaint to the internal affairs division of the State police a month or so earlier, were challenging in a way in which the officers of SORU were not used to being challenged by those under their … supervision?[7]  And, more pointedly, were challenging in a way that led Det. Jeney to act with a motive other than professionalism in seeking my arrest?

Maybe not.  But then there's this:

Fourth, the bottom line: Det. Jeney *knew* my email address, she knew it for *several* years prior to seeking an arrest warrant for my alleged failure to report it, and that fact is, in fact, revealed in the very Affidavit she signed seeking the warrant.

Having been born and raised as a human being but having been trained (and practiced) as a lawyer, I realize that there are times when there is tension between the two.  So I've asked myself, absent malice, what possible reason could the State's lawyers raise to justify Det. Jeney seeking an arrest warrant for my allegedly felonious failure[8] to notify

---

[6] See the email chain attached as Exhibit B.

[7] Or, perhaps, that, whatever my grievance, were challenging in a way that I have no right to assert.

[8] Per the Registration Law, failure to notify SORU of my email address is a Class "D" felony punishable by up to 5 years in prison.

SORU of an email address, an email address of which they were undeniably aware. I can think of none. But given that an admission of wrongdoing by SORU is unlikely, perhaps those lawyers will offer a strained, legalistic parsing of the word "notify"[9] which, to be logically consistent, would have to coupled with an assault on the concept of intent as that, typically, is an essential element of felonious behavior.[10]

Fortunately, though, your Honor, the Constitution, and case law interpreting the Constitution, protects me from what I think any human being would otherwise reject as … well, legalistic parsing and conceptual dissemblance. Under *McHale*, a warrant sought with malice in violation of our Constitutional protections is one sought "primarily for a purpose other than that of bringing an offender to justice." *McHale,* 187 Conn. at 447.

And if your Honor is not yet convinced that Det. Jeney was not primarily concerned about bringing me, the offender, to justice, consider this:

On September 2, 2016, just months after the warrant had been issued for my arrest (unbeknownst to me), I actually went to the offices of SORU to have my triennial picture taken for the sex offender registry. I went, I had my picture taken and I left. If the purpose of the arrest warrant was to bring an "offender to justice", then why wasn't I arrested at that time? Instead, over a year and a half later, I was arrested at my home in front of friends and neighbors. But, I guess, it could have been worse. It could have been while I was traveling through states or countries even less friendly than the state of Connecticut to those of us labelled as sex offenders. Given: (i) their duty as officers of the law, (ii) the ease and efficiency of an arrest while I was already, essentially, in their custody, (iii) that they, themselves, sought the warrant, and (iv) the risk that under State law a too-long delay between the issuance of the warrant and its enforcement can result in the dismissal of the charge (as is actually what happened in my case[11]), is it not reasonable to ask

---

[9] And the success of even that effort ignores the fact that my email address was included in my book's website of which I did notify SORU and further assumes that Det. Jeney's statements in the Affidavit about the "Advisement" and my response to it are not as false or misleading as other of her statements have proven to be.

[10] And if defendants' lawyers should argue that email notification is a strict liability felony, then I'd argue that adds more fuel to the fire of my argument in Claim II below.

[11] See fn. 13 below.

whether their failure to enforce that arrest warrant is because 'worse' is exactly what the officers of SORU preferred?

Maybe not, but then there's also this:

After the dismissal of the case against me, I wrote a letter to the State's attorney who handled it[12] as I was concerned that the technical reason he came up with for dismissal[13] would not prevent another warrant being issued for my arrest for the same email violation. I received no response to my letter nor, at least to my knowledge, has a warrant been requested by SORU for my continuing felonious failure to "notify" them of my email address. Again, if the purpose of the original arrest warrant was to bring an offender to justice, then why not?

Your Honor, when does this stop? Given SORU's lifelong "supervision" of my life and given our already long and fraught history, how can I not worry that, on the grievance or even the whim of an officer of SORU, a failure to "notify" them of the "communication identifier" for my bank account or my PACER account or my NY Times account or ...will result in more State police troopers having the right to stop me on the street or invade my home and put me through the degradation, humiliation and expense, in both time and money, of an arrest.[14]

Perhaps, though, I'm deluding myself in believing that others will agree that arresting me for failing to notify SORU of those "communication identifiers" (which, admittedly, I have not done) is as absurd—and constitutionally disgraceful—as arresting me for failing to notify them of an email address, especially when SORU was, in fact, not only undeniably aware of that email address but was aware of it for years before they sought my arrest and was aware of it precisely because of my communications with them.

I hope not. Otherwise, I guess I should be waiting for a knock on my door which I would be prohibited, by law, from ignoring.

---

[12] Attached as Exhibit C.

[13] Yes, it was the State's Attorney, without any prompt by me, who offered that the unreasonable delay between issuance and enforcement of the warrant justified dismissal, under State law, of the charges against me.

[14] For a further discussion of this issue, see Claim III below.

Only you, your Honor, has the power to prevent this.

**Claim II:**

The Confirmation Law, as written, violates the principles set forth by the Supreme Court in *Smith v. Doe*, 538 U.S. 84 (2003) when it ruled that placing previously convicted sex offenders on newly established public sex offender cyber-registries did not violate the *Ex Post Facto* Clause of the United States Constitution.[15]

The Confirmation Law reads as follows:

*[DESPP] shall verify the address of each registrant by mailing a nonforwardable verification form to the registrant at the registrant's last reported address. Such form shall require the registrant to sign a statement that the registrant continues to reside at the registrant's last reported address and return the form by mail by a date which is ten days after the date such form was mailed to the registrant. The form shall contain a statement that failure to return the form or providing false information is a violation of section 54-251, 54-252, 54-253 or 54-254, as the case may be. Each person required to register under section 54-251, 54-252, 54-253 or 54-254 shall have such person's address verified in such manner every ninety days after such person's initial registration date. In the event that a registrant fails to return the address verification form, the Department of Emergency Services and Public Protection shall notify the local police department or the state police troop having jurisdiction over the registrant's last reported address, and that agency shall apply for a warrant to be issued for the registrant's arrest under section 54-251, 54-252, 54-253 or 54-254, as the case may be."*

Your Honor, if, after reading my argument below, you agree that the *intent* of the State's lawmakers in enacting the Confirmation Law or the *purpose* or *effect* of the Confirmation Law, is punitive rather than regulatory in nature then, under *Smith*, either: (i) inasmuch as the punishment imposed under the law should have been, but wasn't, addressed at my trial as were other aspects of my punishment, it should be held void as to me under the *Ex Post Facto* Clause,[16] or (ii) you should order that the Confirmation Law be rewritten to

---

[15] U.S. Const. art I § 10, cl. 1.

[16] Pursuant to the seminal case of *Calder v. Bull*, 3 U.S. 386, 390 (1798) any "law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" is *Ex Post Facto*.

comply with the principles set forth in *Smith* in its holding that the Alaska sex offender registration law at issue in that case[17] was regulatory rather than punitive in nature.

I recognize that, under *Smith*, only the "clearest proof" of the improper intent of lawmakers will suffice. *Smith*, 538 U.S. at 96. But all one need do is compare the provisions of the Confirmation Law with those of the Alaska law at issue in *Smith* to demonstrate that imposing punishment was at least a seized-upon side benefit to the purported (constitutionally acceptable) regulatory purpose of the law.

First, notably, violation of the Alaska law results in a misdemeanor charge[18] while violation of the Confirmation Law is a class "D" felony punishable by up to five years in prison. Second, as discussed more fully below, the standard for determining guilt is far harsher under the Confirmation Law than under the Alaska law. Finally, and most notably, the *Smith* Court, in ruling that the Alaska law was regulatory and not punitive, wrote that "Our conclusion [that the intent of the law was nonpunitive] is strengthened by the fact that, aside from the duty to register, the statute itself mandates no procedures. Instead, it vests the authority to promulgate implementing regulations with the Alaska Department of Public Safety." *Smith*, 538 U.S. at 96.

Here, though, we now have the Confirmation Law where the State's lawmakers not only ignore the no-mandate preference set forth in *Smith* but do so harshly and unforgivingly by: (i) mandating that SORU refer any late-mail to local law enforcement, (ii) mandating that local law enforcement seek an arrest warrant for any such late mail, and (iii) mandating that a violation of the law is a class "D" felony. It's the final mandate under the Confirmation Law, as confirmed by the State's highest court in *State of Connecticut v. T.R.D.*, 286 Conn. 191, 942 A.2d 1000 (2008), which I hope convinces your Honor that the "clearest proof" standard demanded by the *Smith* Court has been met.

In *T.R.D.*, the court held that the State's sex offender registry requirements, unlike the Alaska registry law at issue in *Smith*, imposes a strict liability standard.[19] *T.R.D.*, 942 A.2d

---

[17] 1994 Alaska Sess. Laws ch. 41.
[18] AS Sec. 11.56.840.
[19] Under AS Sec. 11.56.840, a registrant is guilty of failing to register only if s/he "knows" they must register and "unforeseeable circumstances" (as defined therein) is an affirmative defense to any charge.

at 1020. In other words, the *T.R.D.* court confirmed that it was the intent of the State's lawmakers to felonize the late mail of a registrant *without regard* to any other factor including the actual residence of the registrant, the confirmation of which is, allegedly, the regulatory purpose of the law.

The scope and breadth of the potential application of those mandates undermine any credible assertion that the address verification requirements set forth in the Confirmation Law were intended to be nonpunitive, civil and regulatory as required under *Smith* to avoid running afoul of the *Ex Post Facto* clause. Instructively, that punishing intent is highlighted both by SORU's 3-letter, 30-day protocol mentioned above and, more critically, by certain language in the *T.R.D.* opinion, language which is strikingly inconsistent not only with that court's ruling that the Confirmation Law imposes a strict liability standard but also with the language of the Confirmation Law itself.

To explain:

The defendant in *T.R.D.* was late in returning an address confirmation letter under the Confirmation Law but, what's relevant for the purposes of my argument, is that he was *9 months* late and, moreover, he returned the letter only 3 days *after* he had been arrested for failing to return the letter. *T.R.D.*, 942 A.2d. at 1015. Inasmuch as there was no doubt that the *T.R.D.* defendant was aware of his registry obligations and that he was massively out-of-compliance with those obligations, it is not particularly surprising that the *T.R.D.* court accepted the State's lawmakers imposition of a strict liability standard, in part, surely, because, under those circumstances, such a standard doesn't particularly offend a sense of justice and fair play, not even a degraded one.

But what if the letter were a couple of weeks or even only a couple of days beyond the 10-day grace period provided in the Confirmation Law? Would a registrant still be subject to arrest and be held strictly liable for a Class "D" felony for his or her late mail? Well, under the clear language of the Confirmation Law, the answer is yes.[20] Yet, as noted, SORU has implemented a "late mail" protocol whereby, if a registrant doesn't return the initial address confirmation letter within 10 days, SORU mails a second letter and, if that

---

[20] And, in fact, those were the grounds for my arrest in July, 2015 as described above.

isn't returned within 10 days, they mail a third. Leaving aside their authority to unilaterally modify an unambiguous law which is to be strictly followed, *why* would they do so? Well, I'd argue that it's for the same reason that the *T.R.D.* opinion of the State's highest court is, as I point out above, inconsistent.

On page 1007 of the opinion,[21] the court reveals that their defendant, in addition to being egregiously late in returning one confirmation letter, had also been late in returning an earlier confirmation letter. But even though that earlier letter was returned several days *after* the 10-day statutory time period, the court writes, as if it were a simple statement of fact, that upon receipt by SORU of that late letter, the "defendant was thus in compliance with his registration responsibilities" for the relevant quarter. *Id*

Really?

Neither that statement by the *T.R.D.* court nor the 3-letter, 30-day protocol implemented by SORU's officers square with the unambiguous terms of the Confirmation Law (or, frankly, the *T.R.D.* court's confirmation of the strict liability standard thereunder). They do, however, square with the inclination by most of us (whatever one's chosen profession) to temper harsh and punitive reactions to behaviors which can hardly be characterized as threatening. And I think most would agree that mail returned within 11-days[22] as opposed to 9-days wouldn't even register on any scale measuring threatening behavior. Or, more to the point, on any scale measuring risk to "public safety", the concern for which was at the heart of the *Smith* Court's willingness to accept that sex offenders could be listed on a cyber-registry even after the imposition of their punishment.

The Confirmation Law, though, says what it says and the officers of SORU are free to do with the late-mail of any registered sex offender what they did (and are free to do again) with mine—obtain a warrant for an arrest and seek to prosecute for a class "D" felony punishable by up to 5 years in prison for that late mail. And remember, your Honor, this is an obligation which is imposed every 4 months of every year, and, in my instance, and surely those of many others, it lasts for a lifetime.

---

[21] Page reference is to the Atlantic Reporter.
[22] Or even 30-days.

As but one other consequence of the harsh and punishing scope and breadth of the Confirmation Law, consider this—what if a registrant, knowing he or she will be unavailable during the 10-day statutory grace period, tries to offer an alternative confirmation of residency?

Well, that, too, happened with me.

In 2017, I sent an email to SORU explaining that I would be away during the 10-day statutory grace period under the Confirmation Law and offered to provide an alternative means for confirming my residence. As you can see from the attached email chain,[23] SORU agreed not to send the address confirmation letter while I was away but conditioned their agreement to delay compliance only if I provided them with information as to "where I will be traveling" including the "address and dates of travel." In other words, SORU demanded additional reporting requirements above and beyond those required under the State's sex offender registration laws. When I asked what law authorized them to demand such information, having none, they withdrew their offer and ignored mine.

Beyond the issue of their authority to unilaterally waive the requirements of the Confirmation Law and to unilaterally impose whatever conditions they unilaterally decide to impose in granting that waiver is the issue that the conditions which they did decide to impose not only have no relationship to the purpose of the Confirmation Law, they bring that law one step closer to the punitive regime of probation which the *Smith* Court was at pains to distinguish with the registration law at issue in that case.[24]

To be honest, though, your Honor, would not almost any person tasked with enforcing the Confirmation Law, with its harsh mandates, be reasonable in believing that the State's lawmakers were handing them not a leash but a whip, to wield as they chose. Or to express it in terms of real-life consequences, that SORU, by arresting me for late mail and by arresting me for an email address and by denying me the ability to provide them with a reasonable alternative means of establishing residency, was actually carrying out

---

[23] See Exhibit D (the most salient exchanges are asterisked).

[24] See *Smith*, 538 U.S. at 101-192 where the Court acknowledged that there was "some force" to the argument that the restraint imposed under the Alaska registration system was uncomfortably comparable to probation. And while it's true that, after "due consideration," the Court rejected the comparison, it's also true that the Alaska law did not require registrants to provide a detailed travel itinerary should they be traveling during a registration period.

Confirmation Law, late mail is a strict liability Class "D" felony without regard to one's residence.

But one need not resort to the effort and expense of quarterly visits by the officers of SORU to the home of every one of the State's registered sex offenders for an address verification law to be considered rational and moderate as, happily, the procedures for such a law already exist—the State's lawmakers could simply modify the Confirmation Law to incorporate SORU's 3-letter, 30-day protocol and provide that any registrant who fails to return one of the letters within such period would be *presumed* to have absconded entitling SORU to seek a warrant for such registrant's arrest. If that procedure were combined with a reduction in the charge for late-mail from a felony to a misdemeanor[25]—reserving the blunt instrument of a felony charge for those who do actually move without notifying SORU[26]—then who would object, at least constitutionally?

Or, though not as moderate and rational as that proposed procedure, the procedure in the state where I pled guilty—New York—provides a particularly useful contrast with the Confirmation Law since it was a New York case[27] which was one of only two cases cited by the *T.R.D.* court[28] as authority for imposing a strict liability standard in the State. In that New York case, beyond: (i) the fact that the defendant in that case was charged with a misdemeanor and not a felony, and (ii) the ameliorating factor that New York requires an address confirmation only once-a-year,[29] and (iii) the fact that the case appears to involve a failure to register at-all rather than a late-mail violation, is this further critical distinction—proof of the continued occupancy of the registered address by a registrant whose mail is late is a defense, under the New York law, to a late-mail violation.[30] In addition to being more reasonable and less harshly punitive on its face, given the law's appropriate and constitutional focus on confirming residency, it would render pointless any warrant sought after receipt by the authorities of a registrant's late mail and also

---

[25] Thus conforming to the Alaska law reviewed by the *Smith* Court, not to mention a sense of proportionality.

[26] See fn. 35 below.

[27] *People v. Patterson,* 185 Misc. 2d 519, 708 N.Y.S.2d 815 (2000).

[28] *T.R.D.*, 942 A.2d at 1021.

[29] NYCOR § 168-f 2.

[30] NYCOR § 168-f 2 (c).

the intent of those lawmakers to, yes, punish me again. Or to express it in terms of the Constitutional principles set forth in *Smith*, that the intent of the State's lawmakers in passing the Confirmation Law was punitive rather than regulatory and, thus, in violation of the *Ex Post Facto* clause.

I realize that, once again, I'm asking your Honor to rule on intent, here not just of one individual but of many, and of many individuals with even more power than that of Det. Jeney. Given, however, not just the prior analysis but the difficult-to-deny reality that for many voters no punishment is sufficient for sex offenders, coupled with the difficult-to-deny reality of the absence of virtually any counter-force to that first reality, the question almost becomes why wouldn't their representatives pile-on the punishment if given the chance.

Fortunately, though, also once again, the Constitution, and case law interpreting the Constitution, renders that effort at determining the lawmakers' intent non-essential.

As noted by the *Smith* Court, once it had determined that the intent of the Alaska lawmakers was not punitive in passing Alaska's sex offender registration requirements then, nonetheless, under *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), the Court "must further examine whether the scheme is so punitive either in purpose or effect as to negate [the Alaska's lawmakers] intention to deem it civil." *Smith*, 538 U.S. at 92 (internal quotations and citations omitted).

Under *Mendoza*, there are several independent factors which are to be considered in order to determine whether a law has a punitive purpose or effect whatever may have been the intent of the lawmakers. Two of those are relevant for the purposes hereof. The first—whether the law "has a rational connection to a nonpunitive purpose"; and the second—whether it "is excessive with respect to this purpose." *Smith*, 538 U.S. at 97 (citing *Mendoza*, 372 U.S. at 168-69 (1963)).

For that analysis, consider this—is the procedure under the allegedly regulatory scheme of which the Confirmation Law is a part more "rational" and less "excessive" for confirming residency than that under the admittedly punitive regime of probation? Under probation, a probation officer visits the offender's home to confirm residency. Under the

neuter any attempt to expand a registrant's reporting requirements beyond that approved by a state's lawmakers.[31]

Finally, your Honor, there is the illuminating—and heartening—case of *Does v. Snyder*, __ F.3d __, 2016 WL 4473231 (6th Cir. 2016) where, in an elegantly simple and straightforward analysis, the Sixth Circuit Court of Appeals overruled the Michigan District Court and held that Michigan's Sex Offender Registration Act was punitive in nature and thus an unconstitutional *Ex Post Facto* law.[32] But what's relevant for the purposes hereof is that even the District Court, in its lengthy and detailed analysis, rejected a strict liability standard and read a "knowledge" standard into certain reporting obligations under the Michigan law.[33] And though I think, at best, a "knowledge" standard simply muddies the waters,[34] it is instructive that for a court obviously more sympathetic to Michigan's arguments for imposing punishing restrictions on sex offenders than was the Court of Appeals, a "strict liability" standard was, still, a bridge too far.

Surely, sir, there are a host of other more "rational" and less "excessive" alternatives to confirm the residence of sex offenders than the strict liability felonization of late mail. Moreover, a properly drafted alternative would: (i) pose no additional risk to public safety,[35] (ii) be as, if not more, effective in ascertaining residency, (iii) not violate the *Ex Post Facto* clause, and (iv) likely enhance public safety, at least if there's value to the idea that reintegrating sex offenders into society is a better approach for enhancing public safety than treating us like modern day pariahs by subjecting us to a harshly punitive law for something as simple as verifying our address where a more rational/moderate law would serve exactly the same purpose.

---

[31] As would, logically, the 'knowing' standard under the Alaska law. And the only other authority cited by the *T.R.D* court for upholding a strict liability standard, *People v. Molnar,* 857 N.E.2d 209 (2006), did not involve an assessment by that court of the ramifications of that standard viz a late mail violation. Moreover, the Illinois sex offender laws at issue in that case, like New York, require only an annual confirmation (see, 730 ILCS 150/5-10)

[32] And perhaps even more heartening was the Supreme Court's denial of certiorari notwithstanding compelling arguments by the petitioners that failure to hear the case and rule in their favor would, among other consequences, not only put federal dollars available under the Federal Sex Offender Registration and Notification Act at risk but would result in a conflict among the Circuits (See, the Petition filed under Supreme Court Docket No. 16-768).

[33] *Does v. Snyder,* 101 F. Supp 3d. 672, 694 (2015).

[34] As argued above, a "presumption" standard would be far more rational and moderate.

[35] After all, the Confirmation Law simply confirms a registrant's address. Another section of the law, C.G.S. § 54-253, makes it a crime to actually move without notifying proper authorities.

Unfortunately, though, given the public's fear of those of us labelled as sex offenders, punishment not reintegration is foremost in the minds of their elected representatives. Hopefully, this Court will agree that, if the purpose is punishment, do so at a trial subject to the safeguards and standards of criminal law jurisprudence which have been molded over centuries. If, however, the purpose is the regulation of sex offenders after punishment through the relatively new sex offender registration schemes, then this case gives this Court the opportunity to help mold the safeguards and standards of this new jurisprudence in a way consistent with the holding in *Smith*.

**Claim III**

Finally, your Honor, given: (i) the now near ubiquity of the world-wide-web and its soon-to-be complete integration into our lives, and (ii) the recent recognition of that fact by the Supreme Court when it struck down as an infringement of First Amendment rights a North Carolina statute which prohibited registered sex offenders from accessing social media websites,[36] and (iii) the injunction issued by the Ninth Circuit Court of Appeals in 2014 against the enforcement of a law requiring registered sex offenders to report internet "identifiers" because it "unnecessarily chills protected speech",[37] and (iv) more practically, the near-impossibility of enforcing—or, more to the point, identifying any 'rational purpose' for— laws with such reporting requirements (other than as a means for a punitive "gotcha" as happened with me), especially with the recent development of phone apps, phone texting, virtual private networks and other encryption technology (all of which pose as much if not more risk to the safety of children from on-line sexual predators), I ask that you permanently enjoin the enforcement of the obligation in the Registration Requirement that registered sex offenders report email addresses and other "communication identifiers" in that such obligation: (A) renders the Registration Requirement an *Ex Post Facto* law by failing the *Mendoza* tests that a law have "a rational connection to a nonpunitive purpose" or, even if one were prepared to grant some sort of rational purpose, the felonization of the obligation and the application of any standard other than intentional bad faith renders it "excessive with respect to [that] purpose,"[38] and/or (B) impermissibly

---

[36] *Packingham v. North Carolina*, 582 U.S. ___ (2017).
[37] *Doe v. Harris*, 772 F.3d 563, 578 (9th Cir. 2014).
[38] *Mendoza*, 372 U.S. at 168-69.

restricts lawful speech in violation of the First Amendment under the reasoning set forth in *Packingham* and *Harris*.

## D. DAMAGES AND OTHER RELIEF

In addition to the other relief requested herein, I request: (i) compensatory damages for my out-of-pocket expenses; (ii) punitive damages of $250,000; and (iii) injunctive relief whereby this Court orders the appropriate authorities at DESPP to bar any officer of SORU found to have violated my Fourth Amendment rights from any further decisions with respect to my continuing compliance with the Confirmation Law, or its substitute.

## E. JURY DEMAND

I do not seek to have a jury trial.

James P. Cornelio
101 West Shore Road
New Preston, CT 06777
860-868-3823

## DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, I declare, under penalty of perjury, that I am the plaintiff in the above action, that I have prepared the above Complaint and that the information contained in the Complaint is true and correct.

Executed on the ___ day of August, 2019

James P. Cornelio

| ARREST WARRANT APPLICATION | | STATE OF CONNECTICUT | For Court Use Only |
|---|---|---|---|
| JD-CR-64b Rev. 8-10 | | SUPERIOR COURT | Supporting Affidavits sealed |
| C.G.S. § 54-2a | | www.jud.ct.gov | ☐ Yes   ☐ No |
| Pr. Bk. Sec. 36-1, 36-2, 36-3 | | | |

| Police Case number | Agency name | | Agency number |
|---|---|---|---|
| | Connecticut State Police-Sex Offender Registry Unit | | |

| Name (Last, First, Middle Initial) | Residence (Town) of accused | Court to be held at (Town) | Geographical |
|---|---|---|---|
| CORNELIO, JAMES | MIDDLEFIELD | BANTAM | Area number  18 |

## Application For Arrest Warrant

To: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the: ☒ Affidavit Below   ☐ Affidavit(s) Attached.

| Date | Signed (Prosecuting authority) | Type/print name of prosecuting authority |
|---|---|---|
| 7/18/16 | | Gregory L Borrelli; DASA |

## Affidavit

The undersigned affiant, being duly sworn, deposes and says:

That your affiant, Debbie Jeney is a Detective with the Connecticut State Police and has been a member of said department since January 19, 1987. The affiant is presently assigned as Detective with the Sex Offender Registry Unit for the Connecticut Department of Public Safety in Middletown, Connecticut. This affiant has investigated numerous criminal investigations and received specialized training. The facts and circumstances stated herein are known as a result of this affiant's own investigative efforts and those of fellow officers who have reported their observations.

JAMES PHILLIP CORNELIO born 08/07/1955 is required to register as a Sex Offender in Connecticut as a result of a 07/14/2005 conviction for Criminal Sexual act in the second degree and Possessing a sexual performance by a child in violation of New York Criminal Law 130.45-1 and 263.16 under NY County Superior Court docket # 00275-2004. This statute is defined as an Offense against a victim which is a minor under C.G.S. 54-250 and requires a Lifetime Registration under C.G.S. 54-253(b). JAMES PHILLIP CORNELIO was released into the community, as defined in C.G.S. 54-250(10), on 09/10/2007.

JAMES PHILLIP CORNELIO registered on 03/14/2008 at the Connecticut Department of Emergency Services & Public Protection in Middletown , CT. JAMES PHILLIP CORNELIO had been notified of his obligations to verify his address during registration. JAMES PHILLIP CORNELIO was further notified of his registration requirements in a letter dated 03/14/2008, which he signed on 03/14/2008. JAMES PHILLIP CORNELIO was informed that he was required to return address verification letters that would be mailed to his last address every 90 days and that he must return the letters within ten days of the postmark. JAMES PHILLIP CORNELIO was further informed that he must notify the registry in writing within five days of changing his address and that failure to comply with these Registry requirements was punishable as a class "D" felony.

C.G.S. 54-257 subsection (c) reads "Except as provided in subsection (b) of this section, the Department of Emergency Services & Public Protection shall verify the address of each registrant by mailing a non-forwarding verification form to the registrant at the registrant's last reported address. Such form shall require the registrant to sign a statement that the registrant continues to reside at the registrant's last reported address and return the form by mail by a date which is ten days after the date such form was mailed to the registrant. The form shall contain a statement that failure to return the form or providing false information is a violation of section 54-251, 54-252, 54-253 or 54-254, as the case may be. Each person required to register under section 54-251, 54-252, 54-253 or 54-254 shall have such person's address verified in such manner every ninety days after such person's initial registration date. In the event that a registrant fails to return the address verification form, the Department of Emergency Services & Public Protection shall notify the local police department or the state police troop having jurisdiction over the registrant's last reported address, and that agency shall apply for a warrant to be issued for the registrant's arrest under section 54-251, 54-252, 54-253 or 54-254, as the case may be.

On 05/21/2008, JAMES PHILLIP CORNELIO reported his address to the Sex Offender Registry Unit as being 101 WEST SHORE ROAD  NEW PRESTON, CT 06777. The Sex Offender Registry Unit has not received written notice from JAMES PHILLIP CORNELIO of a change from this address.

Effective October 1, 2007 registered sex offenders in the State of Connecticut are required to notify the Sex Offender Registry Unit in writing of any electronic mail address, instant message address or similar communication identifier that is established, changed or used by the offender. JAMES CORNELIO registered as a sex offender on 3/4/2008 at which time he signed a Sex Offender Advisement of Registration Requirements form which advised him of this requirement.

*(This is page 1 of a 2 page Affidavit.)*

| Date | | Signed (Affiant) |
|---|---|---|
| | 6/30/2016 | Meg |
| Jurat | Subscribed and sworn to before me on (Date) | Signed (Judge/Clerk, Commissioner of Superior Court, Notary Public) |
| | 6/30/2016 | Sgt Matthew Garcia, #191 (Garcia) |

## Finding

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| Date and Signature | Signed (City or Town) | On (Date) | Signed (Judge/Judge Trial Referee) | Name of Judge/Judge Trial Referee |
|---|---|---|---|---|
| | | 7-7-16 | | Metasavage, J. |

A -1

**ARREST WARRANT APPLICATION**
JD-CR-64a Rev. 6-10
C.G.S. § 54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

| Name (Last, First, Middle Initial) | Residence (Town) of accused | Court to be held at (Town) | Geographical Area number |
|---|---|---|---|
| CORNELIO, JAMES | MIDDLEFIELD | BANTAM | 18 |

## Affidavit - Continued

During the initial registration process JAMES CORNELIO provide and electronic mailing address as being as being "twotosis.com". This was the only and last report of an email or any electronic identifiers provided by JAMES CORNELIO to the Sex Offender Registry Unit.

On 6/3/2008 the Sex Offender Registry Unit mailed a 90-Address Verification Letter to JAMES CORNELIO which advised him of his sex offender registration requirements. The letter specifically lists the requirement "Effective October 1, 2007 registered sex offenders in the State of Connecticut are required to notify the Sex Offender Registry Unit in writing of any electronic mail address, instant message address or similar communication identifier that is established, changed or used by the offender.

JAMES CORNELIO signed and returned this address verification letter to the Sex Offender Registry Unit with no indication of adding or modifying any electronic mailing address(es) to the Sex Offender Registry Unit.

The Sex Offender Registry Unit mails address verification letters to JAMES CORNELIO every 90 days as required by law since his initial registration on 3/14/2008. Each letter reiterates the sex offender requirements to include an offender is required to report any "communication identifier that is established, changed or used by the offender".

The email address which JAMES CORNELIO utilizes when contacting the Sex Offender Registry Unit is "jj4cpw@aol.com".

A review of JAMES CORNELIO's Sex Offender Registry records file, it was noted that JAMES CORNELIO has not reported the electronic mailing (email) address in which he has continually utilize to contact the Sex Offender Registry Unit.

A review of his file indicates that on or about 2/12/2010 was the earliest email exchange of correspondences with the Sex Offender Registry Unit via electronic Mailing (email) utilizing an email address being "jj4cpw@aol.com".

On 9/28/2015 (1248 hrs) the Sex Offender Registry Unit received an email from JAMES CORNELIO from the email address "jj4cpw@aol.com" in which he uaddressed the receipt of his most current address verification letter. JAMES CORNELIO completed the correspondence with "Looking forward to seeing you all in Court".

JAMES CORNELIO again emailed the Sex Offender Registry Unit on 9/29/2015 (1613 hrs) inquiring why there was a delay from the Sex Offender Registry Unit in its response to his 9/28/2015 email. The Detective that manages the emails for the Sex Offender Registry Unit was on a scheduled day leave and promptly responded on 9/30/2015 (0839 hrs). JAMES CORNELIO promptly responded to this email at 0916 hours on 9/30/2015 by closing his email with the statement "I'm sorry Detective, ...Oh well, I guess another of those crossed "T"s and dotted "I"s we can iron out in Court".

On 6/30/2015 the Sex Offender Registry Unit again received an email correspondence from JAMES CORNELIO utilizing the email address "jj4cpw@aol.com".

JAMES CORNELIO's has continued to email the Sex Offender Registry Unit on a regular basis utilizing "his email jj4cpw@aol.com".

The more recent contact dates being 7/2/2015, 7/3/2015, 7/8/2015, 7/9/2015, 7/10/2015, 9/28/2015, 9/29/2015 and 9/30/2015.

JAMES CORNELIO did not report the email address to the Sex Offender Registry Unit in writing as required by law as of the writing of this report however he continually corresponds utilizing the email address.

Wherefore on or about 9/20/2015 JAMES PHILLIP CORNELIO violated his registration requirements when he failed to report his electronic mail address in violation of C.G.S. 54-253.

*(This is page 2 of a 2 page Affidavit.)*

| Date | Signed (Affiant) | |
|---|---|---|
| 6/30/16 | | 1149 |

| Jurat | Subscribed and sworn to before me on (Date) | Signed (Judge/Clerk, Commissioner of Superior Court, Notary Public) |
|---|---|---|
| | 6/30/16 | Sgt. W Martin Garcia #191 (Garcia) |

| Reviewed (Prosecutorial Official) | Date | Reviewed (Judge/Judge Trial Referee) | Date |
|---|---|---|---|
| | 7/18/16 | | 7-19-16 |

A-2

*EXHIBIT B*

**To:** sex.offender.registry@po.state.ct.us
**Subject:** Re: Quarterly Registration for Sex Offenders

Thanks , Det. Pirolli:

*3rd eMail*

Could you tell me whether the timing on my quarterly reports has now changed permanently, or was this a one-off.

-----Original Message-----
From: Sex Offender Registry <sex.offender.registry@po.state.ct.us>
To: 'Jim Cornelio' <jj4cpw@aol.com>
Sent: Tue, 17 Mar 2009 8:42 am
Subject: RE: Quarterly Registration for Sex Offenders

James,

*2nd eMail*

Your letter went out today. It is due 03/28/2009.

Det Mike Pirolli CSP-SORU

-----Original Message-----
From: Jim Cornelio [mailto:jj4cpw@aol.com]
Sent: Monday, March 16, 2009 4:02 PM
To: sex.offender.registry@po.state.ct.us
Subject: Quarterly Registration for Sex Offender
s

*First eMail*

My name is James Cornelio, I'm a sex offender and I live at 101 West Shore Road, New Preston, CT.  I was expecting to receive the letter requiring to me to sign and return to confirm my home address.  Haven't yet got it.  Could you tell me what's causing the delay?

James Cornelio

---

**Job Hunting?** Start with the companies that posted job openings this week.

---

**Job Hunting?** Start with the companies that posted job openings this week.

B-1

From: Sex Offender Registry <sex.offender.registry@po.state.ct.us>
To: jj4cpw <jj4cpw@aol.com>
Subject: RE: Quarterly Registration for Sex Offenders
Date: Tue, Mar 17, 2009 12:09 pm

James,

*[handwritten: Fixed email]* It depends when the mail goes out. It wont be the same every three months. It depends if it falls on a holiday or weekend etc.

Det Mike Pirolli

**From:** jj4cpw@aol.com [mailto:jj4cpw@aol.com]
**Sent:** Tuesday, March 17, 2009 12:04 PM
**To:** sex.offender.registry@po.state.ct.us
**Subject:** Re: Quarterly Registration for Sex Offenders

Detective:

*[handwritten: 7th Mail]* Perhaps my question was a little vague. Was the mailing to me "meant" to go out yesterday or was it mailed to me because I asked about it? I was previously told that I would receive the letter no later than the 15th of each March, June, September and December. Moreover, that has been true up until this quarter. So, I wonder ... and worry.

As you might appreciate, I want to avoid arrest which, as you know better than I, is the potential consequence for failing to sign and return the letter. So, as you also might appreciate, I'd like to know whether, in the future, I should continue to, once again, expect the letter no later than the 15th. Or, if there is a new schedule

Thanks very much.

James Cornelio

-----Original Message-----
From: Sex Offender Registry <sex.offender.registry@po.state.ct.us>
To: jj4cpw@aol.com
Sent: Tue, 17 Mar 2009 11:03 am
Subject: RE: Quarterly Registration for Sex Offenders

James,

*[handwritten: 17th Mail]* It depends on when the mailing goes out.

Det Pirolli

**From:** jj4cpw@aol.com [mailto:jj4cpw@aol.com]
**Sent:** Tuesday, March 17, 2009 10:55 AM

*[handwritten: B-2]*

EXHIBIT C

**James P. Cornelio**

**101 West Shore Road**

**New Preston, CT 06777**

Gregory Borelli, State's Attorney
Litchfield Judicial District Courthouse
50 Field Street
Torrington, CT 06790                                      June 1, 2018

Attorney Borelli,

Though I had fully expected to be found guiltless, in one way or another, of any charge against me for failing to notify SORU of my email address and, in fact, anticipated you might offer to dismiss the charge at our meeting Wednesday, I was not prepared for the reason you gave for the dismissal. Upon reflecting on that reason, I have a concern which I hope you can allay.

The legal argument you used for the dismissal—*i.e.*, that the delay between the time the warrant was issued and the time it was served was likely excessive under CT case law—appears to permit SORU to simply re-submit an arrest warrant affidavit for the same alleged felony and, so long as it is served within a reasonable time, subjects me, once again, to arrest and trial.

Perhaps my concern seems overblown. But when SORU, on the flimsy pretexts of late mail and failing to notify them of an email address of which they were long aware, has empowered the police to stop me on the street or enter my home and then put me through the humiliation and distress of being handcuffed, transported, searched, photographed, fingerprinted and caged, all while forced to incur significant expense, I'd like you to confirm that you will reject any resubmission of that charge. And given that history (and there's more to it than that) and the power they have to disrupt my life, I hope any future charge they devise will be met with the strictest scrutiny by you or your office as the officers of SORU, when it comes to dealing with me, seem motivated more by malice than public safety.

Thanks,


cc: Commander Alaric Fox
    SORU

**To:** Sex.Offender.Registry, DPS

**Subject:** Re: quarterly registration

*3d.*
*email*

Are you really not going to respond?

-----Original Message-----
**From:** jj4cpw <jj4cpw@aol.com>
**To:** Sex.Offender.Registry <Sex.Offender.Registry@ct.gov>
**Sent:** Fri, Oct 27, 2017 9:00 pm
**Subject:** Re: quarterly registration

*2nd*
*Email*

I understand that, because of my case before the 2nd Circuit, you may have concerns about responding to my queries. Nonetheless, inasmuch as I remain subject to the CT sex offender registration law, I'd like a response to my earlier email (below). I have responsibilities and obligations beyond my obligation to you. And, in this instance, those responsibilities conflict with your requirement that I need to be at home, within a particular window of time, to receive, sign and return your quarterly registration update.

I am prepared to do whatever is reasonably necessary to establish that my residence remains what it has been since I moved to CT a decade ago, a home which I've owned since the 1990s.

I look forward to hearing from you so that we may resolve this in a way that is satisfactory to both of us.

James Cornelio

-----Original Message-----
**From:** jj4cpw <jj4cpw@aol.com>
**To:** Sex.Offender.Registry <Sex.Offender.Registry@ct.gov>
**Sent:** Thu, Oct 26, 2017 10:38 pm
**Subject:** quarterly registration

*1st*
*Mail*

To The CT Sex Offender Registration Unit:

For personal reasons, I intend to be traveling during the next quarterly registration period (mid-December) and would like to make alternate arrangements to assure you that, despite my travels, my permanent residence is and will continue to be 101 West Shore Road, New Preston, CT.

I'd be happy to meet with local law enforcement in advance of my travels or to offer any other reasonable evidence so as to assure you that I have not changed my residence.

Thanks for your consideration and I look forward to hearing from you.

James Cornelio

Exhibit P

D-1

**6th email** (handwritten)

Send us the information as to where you will be traveling to include address and dates of travel. If you are traveling out of state there may be requirement you must abide by in the receiving state. We will make the necessary changes to your file to ensure that your travel is recorded and an address letter is not sent while you are away.

Regards,

Sgt. Garcia

**From:** [                    ]
**Sent:** Wednesday, November 01, 2017 10:57 PM
**To:** Garcia, Matthew
**Subject:** Re: quarterly registration

**5th email** (handwritten)

So then, Sgt., I will assume that only Det, Pirolli has the authority to make a decision on my request and that he will contact me when he returns, with his response.

-----Original Message-----
From: Garcia, Matthew <                    >
To: jj4cpw <                    >
Cc: Murray, Eric <                    >
Sent: Wed, Nov 1, 2017 2:40 pm
Subject: FW: quarterly registration

**4th email** (handwritten)

Mr. Cornelio,

Det. Pirolli has been out the past several days. Your email has been received.

Regards,

Sgt. Matthew Garcia

**From:** Sex.Offender.Registry, DPS
**Sent:** Wednesday, November 01, 2017 8:33 AM
**To:** Garcia, Matthew
**Subject:** FW: quarterly registration

**From:** [                    ]
**Sent:** Wednesday, November 01, 2017 12:29 AM

P-2 (handwritten)

-----Original Message-----
From: Garcia, Matthew <                              >
To: '                    ' <              >
Sent: Thu, Nov 2, 2017 11:14 am
Subject: RE: quarterly registration

Mr. Cornelio,

*8th Mai*

Without knowing any particulars of your travel I will refer to C.G.S 54-252 which requires you to notify the Registry of a change of address within 5 business days. Since your email is vague I cannot tell you if your travel would constitute a change of address. Each state has certain requirements regarding registered offenders who travel within their state. In Ct. an out of state Offender would have to contact the registry and provide an address and phone number. Should you be stopped in another state there is a chance that you would be in violation of their Registry requirements if you failed to notify them.

If you are traveling to another state for vacation or a temporary visit you are not required to notify us, unless it constitutes a change of address. However, by state law, we will send you a quarterly verification letter. Should you be away when that letter is sent and fail to return that letter within the statutory time period you will be in violation of your requirements. If we know where an when you will be away we will send the letter when you return. 

Regards,

Sgt. Garcia

**From:**                    [                    ]
**Sent:** Thursday, November 02, 2017 10:48 AM
**To:** Garcia, Matthew
**Subject:** Re: quarterly registration

*7th Email*

Sergeant, I will be traveling to and through multiple States over multiple days. But, more importantly, my understanding is that SORU is tasked simply with confirming that my residence in CT remains the same, not to track my movements wherever I may travel. Can you please identify under what authority you believe you are entitled to the information you are requesting.

-----Original Message-----
From: Garcia, Matthew <                              >
To: '                    ' <              >
Sent: Thu, Nov 2, 2017 10:40 am
Subject: RE: quarterly registration

Mr. Cornelio,

P - 3

**From:** JJ4cpw <JJ4cpw@aol.com>
    **To:** Matthew.Garcia <Matthew.Garcia@ct.gov>
**Subject:** Re: quarterly registration
    **Date:** Thu, Nov 2, 2017 1:10 pm



11th email (final)

Sergeant, I appreciate your willingness to have tried to work with me on what I'm sure even you see as a reasonable request. And though the personal reasons for me wanting to be away from home during the next registration period remain powerful, I am not yet prepared to provide further information beyond that already required by law.


-----Original Message-----
From: Garcia, Matthew <Matthew.Garcia@ct.gov>
To: 'JJ4cpw@aol.com' <JJ4cpw@aol.com>
Sent: Thu, Nov 2, 2017 11:58 am
Subject: RE: quarterly registration

Mr. Cornelio,

10th email

You are well versed on CT. law. I answered your question regarding your statutory obligations to Ct. in my previous response. The Registry will send you a quarterly address verification letter to your residential address which must be signed and returned within 10 days. It is incumbent upon you to ensure that this happens. Just as the C.G.S.'s do not require you to notify the Registry of temporary travel they do not provide an exception that travel precludes your registration responsibilities. For any further questions regarding your responsibilities I will direct you to C.G.S. 54-250 through 54-261.

Regards,

Sgt. Matthew Garcia

**From:**        [            ]
**Sent:** Thursday, November 02, 2017 11:41 AM
**To:** Garcia, Matthew
**Subject:** Re: quarterly registration



9th email

First, Sergeant, let me assure you that I am not 'changing my address' as I am aware of the consequences of failing to notify the proper authorities if I should do so. Moreover, as I clearly indicated in my first email, I am prepared to do anything reasonably necessary, including meeting with local law enforcement at my home before I leave on my travels, to show them that this remains my home.

Second, I am not sure why you are giving me legal advice about the laws of other States.

Third, why you need to know not only that I will not be home during the "statutory time period" but also "where" I am during that period in order for you to "send the letter when [I] return" seems both arbitrary and over-reaching unless there is some sort of statutory authority entitling SORU to that information whenever you grant a delay in signing the quarterly letter. Could you please advise.

D-4