UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES CORNELIO | : | CIVIL NO. 3:19CV1240 (JAM) |
| | : | |
| V. | : | |
| | : | |
| STATE OF CONNECTICUT, ET AL. | : | SEPTEMBER 10, 2019 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

### I.   Introduction

The plaintiff, James Cornelio, is a registered sex offender residing in Connecticut. He is suing the State of Connecticut, retired Detective Jeney in her individual capacity, and Colonel Stavros Mellekas (Commanding Officer of the State Police) in his official capacity. In his *pro se* complaint, he alleges that Detective Jeney violated his Fourth Amendment right to be free of malicious prosecution. Specifically, he alleges that Detective Jeney violated his rights by applying for an arrest warrant when the plaintiff failed to register his email address with the Department of Emergency Services and Public Protection (DESPP).

The plaintiff also claims that Connecticut's sex offender statute requiring quarterly address verification, Conn. Gen. Stat. § 54-257(c), violates the *Ex Post Facto Clause* of the Constitution. He further claims that Connecticut's statute requiring him to register "communication identifiers," such as his email address, Conn. Gen. Stat. § 54-253, violates his First Amendment right to free speech. He seeks injunctive relief and monetary damages.[1] For the reasons discussed below, the court should dismiss the plaintiff's claims.

---

[1] Defendants assume that the plaintiff's claim for monetary damages is exclusively against Detective Jeney as she is the only non-Doe defendant sued in her individual capacity.

**II.     Background**

The plaintiff was convicted in 2005 in the State of New York for the sexual offenses of Criminal Sexual Act in the Second Degree, in violation of NYPL § 130.45, and Possessing a Sexual Performance by a Child, in violation of NYPL § 263.16.  (Ex. A, Plaintiff's Profile on the CT Registry & Ex. B, Plaintiff's Profile on the NY Registry).[2]  The plaintiff committed these crimes on November 7, 2003.  (See Ex. B).  The plaintiff was on NY's publicly disclosed registry while he resided in NY.  (*Id*.).  The plaintiff moved to the State of Connecticut and is on its registry pursuant to Conn. Gen. Stat. § 54-253.[3]

As part of the plaintiff's registration obligations, he must comply with quarterly address verifications pursuant to Conn. Gen. Stat. § 54-257(c).  The statute requires DESPP to mail a nonforwardable verification form to the registrant, who must confirm his address by signing the form and returning it by mail to DESPP within ten days.  Conn. Gen. Stat. § 54-257(c).  Failure to return the verification form is a class D felony.  See Conn. Gen. Stat. §§ 54-251, 54-252, 54-253 and 54-254.  This statute originated from Public Act No. 98-111 and went into effect on July 1, 1998.[4]  See Conn. Gen. Stat. Ann. § 54-257 (West) and CRIMINAL PROCEDURES—

---

[2] This court can take judicial notice of the plaintiff's registry profiles. *See Wallace v. New York*, 40 F. Supp. 3d 278, 297 (E.D.N.Y. 2014) ("[Registrant information] is available on the State's sex offender registry website and, thus, is judicially-noticeable.").

[3] "Any person who has been convicted . . . of any crime . . . which requires registration as a sexual offender in such other state . . . and who resides in this state on and after October 1, 1998, shall, without undue delay upon residing in this state, register with the Commissioner of Emergency Services and Public Protection in the same manner as if such person had been convicted . . . of such crime in this state." Conn. Gen. Stat. § 54-253(a)(2).

[4] The sex offender statutes were later revised in 1999 by Public Act 99-183.

2

SEXUAL OFFENDERS—REGISTRATION, 1998 Conn. Legis. Serv. P.A. 98-111 (S.S.B. 65) (WEST).

Additionally, the plaintiff must notify DESPP in writing without undue delay if he establishes or changes any "electronic mail address, instant message address or other similar Internet communication identifier" pursuant to Conn. Gen. Stat. § 54-253.

### III.     Allegations in Complaint

In his complaint, the plaintiff alleges that as a registered sex offender in Connecticut he is required to follow his registration requirements, which includes returning address verification forms to confirm his residential address and notifying DESPP if he establishes or changes an "electronic email address, instant message address or other similar Internet communication identifier." (Doc. 1, at pp. 1-2).

He also sets forth several occasions when the Sex Offender Registry Unit (SORU), a unit of the State Police within DESPP, applied for arrest warrants when the plaintiff failed to comply with his registration requirements. (*Id*. at p. 2). Specifically, SORU applied for an arrest warrant for the plaintiff's failure to return his address verification forms, which led to his arrest in 2015. (*Id*.). He states that his criminal case was dismissed, and following this incident, he filed a complaint with the State Police internal affairs. (*Id*.). The plaintiff further alleges that "some months" after he filed a complaint with internal affairs, SORU applied for another warrant for his arrest for failing to register an internet communication identifier. (*Id*. at p. 3). This arrest is the basis for the plaintiff's malicious prosecution claim in the complaint. (*Id*.).

The plaintiff attaches a copy of arrest warrant application as Exhibit A to his complaint. (*Id*. at pp. 19-20). Defendant Detective Jeney signed the affidavit in support of the arrest warrant

3

application that details the plaintiff's registration violation. (*Id*.). In her affidavit, Detective Jeney provides background information regarding the plaintiff and some of his registration obligations, including the requirement to register any communication identifiers. (*Id*.). Detective Jeney details how the plaintiff began emailing SORU on or about 2010 using an email address ("jj4cpw@aol.com"). (*Id*. at p. 20). She describes several of the plaintiff's email communications with SORU, including an inquiry about a delay in responding to his prior email and another email in which the plaintiff indicated that they can "iron [it] out in court." (*Id*.). Detective Jeney states that the plaintiff never registered this email address with SORU but has been continuously using it in violation of Conn. Gen. Stat. § 54-253. (*Id*.). The arrest warrant application is signed by Sergeant Matthew Garcia of the State Police, a prosecutor, and a judge. (*Id*.). The plaintiff claims that Detective Jeney violated his Fourth Amendment rights by initiating a malicious prosecution against him. (*Id*. at pp. 4-9).

The plaintiff also claims that Connecticut's statute requiring quarterly address verification violates the *Ex Post Facto* Clause of the constitution and that Connecticut's statute requiring him to register his email address violates his First Amendment right to free speech. (*Id*. at pp. 9-18).

IV. **Argument**

    a. **Standard of Review**

        i. **Rule 12(b)(1)**

A motion to dismiss for lack of standing is made pursuant to Rule 12(b)(1). *See Granite Comm., Inc. v. One Comm. Corp.,* 2008 WL 4793729, at *3 (D.Conn. Oct. 31, 2008) (citing *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 (2d Cir. 2006)). "In deciding a motion to dismiss, 'standing cannot be inferred argumentatively from

4

averments in the pleadings, but rather must affirmatively appear in the record.'" *Spencer v. Kemna,* 523 U.S. 1, 11, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

A case is properly dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). In assessing a motion to dismiss for lack of subject matter jurisdiction, the court "accept[s] as true all material factual allegations in the complaint." *Shipping Fin. Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Id.* (citing *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. *Makarova,* 201 F.3d at 113; *see also Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996); *In re Joint E. & So. Dist. Asbestos Litig.,* 14 F.3d 726, 730 (2d Cir. 1993). Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000).

### ii. Rule 12(b)(6)

When ruling on a motion to dismiss, the court may consider the allegations in the complaint, any documents attached to the complaint or incorporated by reference into the complaint, and other facts of which judicial notice may be taken. *See Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir. 1993). The court is obliged to accept as true all factual

5

allegations in the complaint. *Flores v. Southern Peru Copper Corp.,* 343 F.3d 140, 143 (2d. Cir. 2003). The Court considers not whether the plaintiff will ultimately prevail, but whether he has stated a claim upon which relief *may* be granted so that he should be entitled to offer evidence to support his claim. *See York v. Association of Bar of City of New York,* 286 F.3d 122, 125 (2d. Cir. 2002), *cert. denied,* 537 U.S. 1089 (2002).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court issued a ruling clarifying the standard applicable on a Rule 12(b)(6) Motion to Dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). The applicable standard is '"a plausibility standard" which is guided by "two working principles."' *Harris v. Mills,* 572 F.3d 66, 71-72 (2d Cir. 2009)(internal citations omitted). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* supra, 129 S.Ct. at 1949. As one court explained:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice…. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Baptista v. Hartford Bd. of Educ.*, 3:08CV1890(MRK), 2009 WL 2163133 (D. Conn. July 21, 2009) *aff'd*, 427 F. App'x 39 (2d Cir. 2011), quoting *Harris v. Mills*, supra, 572 F.3d at 71, and *Ashcroft v. Iqbal*, supra, 129 S.Ct. at 1949. The Court in *Iqbal* made clear that "naked assertion[s] devoid of further factual enhancement" are insufficient to state a cause of action. *Id.*

6

"Formulaic recitation of the elements of a cause of action" is similarly insufficient. *Id.* *Twombly* and *Iqbal's* pleading standard is a "heightened" one, in which "factual amplification is needed to render a claim plausible." *Turkmen v. Ashcroft*, 589 F3d 542, 546 (2d Cir. 2009), citing *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 225 (2d Cir. 2008).

### b. The Plaintiff Has No Injury and Therefore No Standing to Bring his *Ex Post Facto* Challenge[5]

The plaintiff makes an *ex post facto* challenge to CT's sex offender statute requiring address verification. Critically, he fails to demonstrate any actual *ex post facto* injury because the statute was already in effect when the plaintiff committed his sexual offenses, and there can be no retroactive application of a new criminal statute after the crime occurred. Although the sex

---

[5] Although the court should dismiss the plaintiff's *ex post facto* challenge because he has no standing, the plaintiff fails to state an *ex post facto* claim because Connecticut's statute is nonpunitive and therefore cannot support an *ex post facto* claim. *See Smith v. Doe*, 538 U.S. 84, 87 (2003) (finding that Alaska's sex offender statute did not violate *ex post facto* because it was regulatory instead of punitive). Although *Smith* addressed the Alaska law, Judge Chatigny addressed Connecticut's law in *Doe v. Lee*. *Doe v. Lee*, 132 F. Supp. 2d 57, 71 (D. Conn.), *aff'd sub nom. Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38 (2d Cir. 2001), *rev'd sub nom. Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003). In *Doe v. Lee*, the court analyzed Public Acts 98–111 and 99–183 in determining that the legislature's intent was nonpunitive and that the act was also nonpunitive in effect. *Id*. On appeal, the Second Circuit expressed concerns regarding whether Connecticut's statute was punitive in effect because, unlike the NY statute, it did not do individual risk assessments, however, the court did not decide this issue because it found that the act violated due process. *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 61 (2d Cir. 2001). The U.S. Supreme Court reversed the Second Circuit's holding regarding due process, *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003), and in a companion decision, upheld Alaska's sex offender statute as nonpunitive, *Smith v. Doe*, 538 U.S. 84, 87 (2003). In its decision, the Supreme Court appears to address the Second Circuit's concern regarding Connecticut's lack of individual risk assessments, stating that "[Alaska's] determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not render the Act punitive." *Smith v. Doe*, 538 U.S. 84, 87 (2003). Although the defendants contend that Connecticut's law is nonpunitive, the court does not need to decide this issue because the plaintiff lacks standing, as discussed in this section.

offender statutes applied retroactively to some registrants, the plaintiff does not fall into this category because, as applied to him, the statute at issue was already in effect at the time of his crimes.  Therefore he has no colorable *ex post facto* injury to invoke the court's subject matter jurisdiction.

"[T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an *injury in fact*—an invasion of a legally protected interest which is (a) *concrete and particularized,* and (b) *actual or imminent,* not 'conjectural' or 'hypothetical [.]'  Second, there must be a *causal connection* between the injury and the conduct complained of— the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be *redressed by a favorable decision.*"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (emphasis added) (citations and quotations omitted; second, third, and fourth modifications in the original); *see also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (O'Connor, J.) (outlining the "core component" of standing), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components,* ––– U.S. ––––, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (Scalia, J.); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (Rehnquist, J.) (same).

With respect to the injury-in-fact element, the injury is (i) "concrete," if it is "capable of resolution through the judicial process" and not "too abstract," *Raines v. Byrd,* 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (Rehnquist, C.J.) (quoting *Flast v. Cohen,* 392 U.S.

8

83, 97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (Warren, C.J.), and *Allen,* 468 U.S. at 752, 104 S.Ct. 3315); and (ii) "particularized," if the plaintiff is "himself among the injured" and not simply someone who retains a "special interest" in the injury, *Defenders of Wildlife,* 504 U.S. at 561 n. 1, 563, 112 S.Ct. 2130 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (Stewart, J.)) (adding that "particularized" means that "the injury must affect the plaintiff in a personal and individual way").  Moreover, the injury, if not "actual," must otherwise be "imminent," meaning that it is "*certainly* impending" and not merely occurring at "some indefinite future time." *Defenders of Wildlife,* 504 U.S. at 564 n. 2, 112 S.Ct. 2130 (emphasis in original) (quoting *Whitmore v. Ark.,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (Rehnquist, C.J.)); *accord Clapper v. Amnesty Int'l USA* ("*Amnesty Int'l* "), ––– U.S. ––––, 133 S.Ct. 1138, 1150 n. 5, 185 L.Ed.2d 264 (2013) (Alito, J.) (proposing a " 'substantial risk'" standard of imminence, as an alternative to the " 'clearly impending' requirement").

The law is settled, "two critical elements must be present for a criminal or penal law to be *ex post facto:* (1) it must be retrospective, that is, it must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981).

In this case, the plaintiff cannot claim that he has any injury from any alleged *ex post facto* violation because the law does not apply retrospectively to him.  Specifically, he committed the sexual offenses on November 7, 2003, five years after the address verification law went into effect.  *See United States v. Guzman*, 591 F.3d 83, 94 (2d Cir. 2010), *as amended* (Jan. 8, 2010) (finding "no ex post facto problem" when the defendants violated federal sex offender law after

9

the law's enactment).  Without any injury, the plaintiff has no standing to invoke the court's subject matter jurisdiction.[6]

### c. The Plaintiff Does Not Allege Injury for his First Amendment Claim

In his third claim, the plaintiff asks the court to enjoin Connecticut from enforcing the requirement that sex offenders register their internet communication identifiers, such as email addresses, because it violates the First Amendment.  (Doc. No. 1, p. 17).  It is unclear whether the plaintiff brings a facial or as-applied challenge to the law, however, he fails to allege facts demonstrating how this requirement actually chills his speech.  The plaintiff merely suggests that it may be impossible for law enforcement to enforce this law based upon the ubiquity of the internet and developments in the technology.  Contrary to his conclusory allegation of a First Amendment violation, he is able to freely use the internet without restraint but must merely register his communication identifiers, such as email address or user name, with DESPP.  *See* Conn. Gen. Stat. § 54-253.  Moreover, there are no non-conclusory allegations that DESPP has infringed upon his First Amendment rights, and as such, any potential harm is purely speculative. *See Lujan v. Defs. of Wildlife*, 504 U.S. at 560-61 (1992) ("[I]njury must be (a) concrete and particularized*,* and (b) actual or imminent*,* not 'conjectural' or 'hypothetical [.]'").

---

[6] Furthermore, the plaintiff does not have standing to bring this case on behalf of other sex offenders who may actually have been retroactively impacted by CT's statute.  The Second Circuit has explained that the "Supreme Court has held that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[ ], none may seek relief on behalf of himself or any other member of the class.' " *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 433 F.3d 181, 199 (2d Cir.2005) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

The plaintiff does not provide any Second Circuit authority or cases that analyze Connecticut's statute under the First Amendment, but rather, he cites to two cases in passing, *Packingham* and *Doe*.[7] Unlike both those cases, which concern laws that are markedly different from Connecticut's law, the plaintiff here has not alleged any facts demonstrating that his First Amendment rights have been burdened. As such, he does not have standing to invoke the court's subject matter jurisdiction.

### d.  The Plaintiff Fails to State a Malicious Prosecution Claim

In his complaint, the plaintiff fails to allege facts sufficient to state a claim of malicious prosecution. As discussed below, the plaintiff's claim fails because there was probable cause for his arrest and because he fails to demonstrate that Detective Jeney acted with malice when she applied for the arrest warrant.

To prevail on a Section 1983 claim of malicious prosecution, the plaintiff "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York,* 612 F.3d 149, 160–61 (2d Cir.2010) (citing *Murphy v. Lynn,* 118 F.3d 938, 944 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998)); *Roberts v. Babkiewicz,* 582 F.3d 418, 420

---

[7] In *Packingham*, the U.S. Supreme Court held that a North Carolina law prohibiting sex offenders from social media sites was unconstitutional. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737, 198 L. Ed. 2d 273 (2017). Unlike *Packingham*, Connecticut's law does not absolutely ban sex offenders from using social media, but rather, only requires them to register their account names. See Conn. Gen. Stat. § 54-253. *Doe* is similarly unhelpful to the plaintiff in that its holding was based in part on the fact that California's law burdened registrants because its language was ambiguous and required sex offenders to register identifiers within 24 hours. *Doe v. Harris*, 772 F.3d 563, 578-82 (9th Cir. 2014). Unlike California's law, the language in Connecticut law is unmistakably clear in its requirements and permits sexual offenders five days of failing to register a new communication identifier until they can be charged with a crime.

11

(2d Cir.2009); *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992). In Connecticut, the elements of a malicious prosecution claim are that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale v. W.B.S. Corp.,* 187 Conn. 444, 447, 446 A.2d 815 (1982). To state a malicious prosecution claim under Section 1983, a plaintiff must also plead that he suffered a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights. *Murphy,* 118 F.3d at 944–46.

Probable cause is presumed when an arrest is made pursuant to a warrant issued by a neutral magistrate judge. *Walcyzk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause.") (internal quotation marks and citations omitted); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (noting, in qualified immunity analysis, that "[n]ormally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden")(internal quotation marks and citations omitted). A plaintiff may overcome that presumption either by "mak[ing] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause," *Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir. 1993)(internal quotation marks and

12

citations omitted), or by showing that the arrest warrant was facially invalid, *i.e.*, that the officer did not reasonably rely on the judge's probable cause determination. *See U.S. v. Leon*, 468 U.S. 897, 923 (1984).

        i.    Detective Jeney Had Probable Cause to Apply for an Arrest Warrant

As discussed above, there is a presumption of probable cause because a judge signed the plaintiff's arrest warrant. The plaintiff attaches a copy of the arrest warrant application, including the affidavit written by Detective Jeney. (See Doc. No. 1, pp. 19-20). In her affidavit, Detective Jeney details the plaintiff's failure to comply with SORU's requirement that all registrants provide written notification of all "communication identifiers" such as email addresses. (*Id.*).[8] Specifically, the plaintiff registered as a sex offender in Connecticut on 3/4/2008 and signed the "Sex Offender Advisement of Registration Requirements" form. (*Id.*). While on the registry, the plaintiff was using an email address ("jj4cpw@aol.com") that he never registered with SORU in his initial registration or otherwise. (*Id.*). Detective Jeney documented in the arrest warrant application affidavit that she discovered the plaintiff's violation of his registry requirements because he was using this email address to contact SORU. (*Id.*). As such, the plaintiff was in violation of his registry requirements. (*Id.*). Both a prosecutor and judge signed the arrest warrant application. (*Id.* at p. 20).

In civil rights cases involving the claim of false arrest or prosecution without probable cause, a court "put[s] aside allegedly false information, suppl[ies] any omitted information and

---

[8] Conn. Gen. Stat. § 54-253 provide that "[i]f any person who is subject to registration under this section establishes or changes an electronic mail address, instant message address or other similar Internet communication identifier, such person shall, without undue delay, notify the Commissioner of Emergency Services and Public Protection in writing of such identifier."

determine[s] whether the contents of the corrected affidavit would have supported a finding of probable cause." *Soares,* 8 F.3d at 920, *citing Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Magnotti v. Kuntz,* 918 F.2d 364, 368 (2d Cir.1990). If probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred. *Id., citing Cartier,* 955 F.2d at 845; *Kaskel v. Compagnone*, 664 F. App'x 109, 110 (2d Cir. 2016).

In his complaint, the plaintiff appears to argue that Detective Jeney's errors and misleading statements in her affidavit negate probable cause, however, these alleged deficiencies hardly undermine the judge's finding of probable cause. The plaintiff argues that Detective Jeney incorrectly identifies the plaintiff's town of residence as Middlefield instead of New Preston and then unduly emphasizes his obligation to report any address changes when the arrest warrant application only relates to his failure to register his email address. These alleged errors or misleading statements fail to undermine probable cause.

First, with regards to Detective Jeney listing the wrong town as Middlefield, this error has no bearing on the probable cause finding because the violation at issue pertains to his failure to register his email address and is unrelated to his residential address. Second, with regards to the allegedly misleading background information regarding the address verification requirements, the affidavit explicitly states the plaintiff's violation: "on or about 9/20/2015 JAMES PHILLIP CORNELIO violated his registration requirements when he failed to report his electronic mail address in violation of C.G.S. 54-253." (Doc. No. 1, p. 20). This is the only violation identified in the affidavit. Although the affidavit provides some background information regarding address verification requirements and the fact that the plaintiff had not indicated any change of address notices, the only "violation" identified in the warrant application is for failure to provide written

14

notice of his email address. If the court sets aside the alleged error and misleading statements and determines whether the remaining portion of the affidavit constitutes probable cause, as is required under *Soares*, the contents of the affidavit make clear that the plaintiff was using an unregistered email address in violation of Conn. Gen. Stat. § 253(b), which requires a registrant to notify DESPP in writing without undue delay of any newly created or changed email address(es). As such, there is undoubtedly probable cause that the plaintiff committed the violation.

      ii.    The Plaintiff Fails to Allege Facts Demonstrating that Detective Jeney Acted with Malice

Although the court should dismiss the plaintiff's malicious prosecution on the basis that there was probable cause for his arrest, the court could alternatively dismiss this claim because the plaintiff fails to allege facts demonstrating that Detective Jeney acted with malice. Malice in a malicious prosecution case means "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir.1996). Alternatively, "malice may be shown by proving the prosecution complained of was undertaken from improper or wrongful motives or in reckless disregard of the rights of the plaintiff." *Pinsky v. Duncan,* 79 F.3d 306, 313 (2d Cir.1996) (citations omitted).

In this case, the plaintiff fails to allege any facts demonstrating that Detective Jeney acted with malice when she applied for the arrest warrant. Her affidavit details the plaintiff's use of an unregistered email address ("jj4cpw@aol.com"), which explicitly violates the plaintiff's registry requirement to provide written notification to DESPP of all "communication identifiers" such as

15

email addresses.[9]  Detective Jeney was acting in accordance with statute, which specifically provides that any registrant who creates an email address and fails to provide the Commissioner with written notice within 5 business days "*shall* be guilty of a Class D felony."  *See* Conn. Gen. Stat. § 54-253(b) & (e)(emphasis added)

      Furthermore, the plaintiff's argument that Detective Jeney acted with malice because SORU had been aware of his email address since 2009 and only applied for a warrant after he filed an internal affairs complaint is undermined by the fact that she disclosed the plaintiff's prior dispute with SORU in her affidavit.  Specifically, she states that the plaintiff has been using his unregistered email address to communicate with SORU since 2010 (Doc. 1, p. 20).  Furthermore, Detective Jeney states that the plaintiff made references to a legal action in one of his emails.  If Detective Jeney had a wrong or improper motive based upon the plaintiff's threat of a legal action, it would make no sense for her to disclose this background information in the warrant application.  Contrary to the plaintiff's argument, Detective Jeney's affidavit demonstrates transparency and candor when she applied for the warrant.  The plaintiff's complaint fails to demonstrate that she acted with malice.  As such, the court should dismiss the plaintiff's malicious prosecution claim.

      **f.   Detective Jeney is Entitled to Qualified Immunity**

      As discussed below, Detective Jeney is entitled to qualified immunity from any monetary damages.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[9] The plaintiff in fact appears to concede that he never registered his email address, but rather, claims that it was "absurd" to arrest for him for the violation because they became aware of the unregistered email address when he contacted SORU.  (Doc. No. 1, p. 8).

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "[Qualified] immunity protect[s] government's ability to perform its traditional functions ... by helping to avoid unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 132 S. Ct. 1657, 1665 (2012) (second alteration in original) (internal quotation marks omitted). Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted).

The United States Supreme Court has recently reiterated the importance of qualified immunity, stating,

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. See, *e.g., City and County of San Francisco v. Sheehan,* 575 U.S. ——, ——, n. 3, 135 S.Ct. 1765, 1774, n. 3, 191 L.Ed.2d 856 (2015) (collecting cases). The Court has found this necessary both because qualified immunity is important to " 'society as a whole,' " *ibid.,* and because as " 'an immunity from suit,' " qualified immunity " 'is effectively lost if a case is erroneously permitted to go to trial,' " *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed. 2d 565 (2009).

*White v. Pauly*, 137 S. Ct. 548 (2017).

"In *Saucier [v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed .2d 272 (2001) ], [the Supreme Court] mandated a two-step sequence for resolving government officials' qualified

immunity claims. First, a court must decide whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right ... Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." (Citations omitted.) *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In reconsidering this analysis, the Supreme Court in *Pearson v. Callahan, supra,* 555 U.S. 223, concluded: "[W]hile the sequence set forth ... is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

"In determining whether a particular right was clearly established at the time an official acted, courts typically consider (1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." (Internal quotation marks omitted.) *Bradway v. Gonzales,* 26 F.3d 313, 318 (2d Cir.1994). The determination of whether the right at issue was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Saucier v. Katz, supra,* 533 U.S. 201; *see also Zieper v. Metzinger,* 474 F.3d 60, 67–68 (2d Cir.2007) (noting that the qualified immunity analysis must be undertaken in a "particularized" sense). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

right." (Internal quotation marks omitted.) *Distiso v. Wolcott,* 352 Fed.Appx. 478, 481 (2009), citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Supreme recently explained, courts need to adhere to the "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality' . . . [T]he clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 137 S. Ct. 548 (2017) (internal citations omitted).

In this case, it was objectively reasonable for Detective Jeney to believe that her actions did not violate the plaintiff's clearly established rights. In applying for an arrest warrant, she was following the applicable statute. Furthermore, the fact that her supervisor, a prosecutor, and a judge all signed the arrest warrant further supports her belief that her acts were lawful. As such, she is entitled to qualified immunity.

### V.    Conclusion

For the reasons discussed above, the defendants respectfully move to dismiss the plaintiff's claims in this case.

DEFENDANTS
State of Connecticut, et al.

WILLIAM TONG
ATTORNEY GENERAL


BY: */s/ Robert S. Dearington*
Robert S. Dearington
Assistant Attorney General
Federal Bar No. ct28862
110 Sherman Street
Hartford, CT 06105
Tel.: (860) 808-5450
Fax: (860) 808-5591
Email: Robert.Dearington@ct.gov


## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Courts electronic filing system. Parties may access this filing through the Court's system.

By: */s/ Robert S. Dearington*
Robert S. Dearington
Assistant Attorney General

20