# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES P. CORNELIO
  *Plaintiff*,

  v.                                              No. 3:19-cv-01240 (JAM)

STATE OF CONNECTICUT, ET AL
  *Defendant.*

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff James Cornelio is a convicted sex offender who is subject to Connecticut's sex offender registration law. He has filed this action alleging claims for violations of his rights under the Fourth Amendment, the Ex Post Facto Clause, and the First Amendment. He raises challenges in principal part to those sections of the Connecticut sex offender registration law that require him to verify his residence address every 90 days and to disclose his email addresses and other Internet communication identifiers. I will grant defendants' motion to dismiss the complaint.

### BACKGROUND

Since 1998 Connecticut has had a comprehensive sex offender registration law. *See* Conn. Gen. Stat. § 54-250 *et seq.*; *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4-5 (2003) (describing basic operation of law). The law is administered by the Sex Offender Registry Unit of the Connecticut Department of Emergency Services and Public Protection ("DESPP").

Cornelio was convicted in 2005 in New York State for one count of criminal sexual act in the second degree (N.Y. Penal Law § 130.45-1) and for ten counts of possessing a sexual

performance by a child (N.Y. Penal Law § 263.16).[1] These convictions arose from his criminal conduct in 2003.[2]

Cornelio now resides in Connecticut. As a resident of Connecticut who has previously been convicted of a sex offense against a minor victim, Cornelio is subject to Connecticut's sex offender registration law.[3]

There are two provisions of the Connecticut sex offender registration law that Cornelio challenges in this case. The first is a requirement that certain sex offenders not only notify DESPP of their residence address but continue to confirm or verify their residence address every 90 days or on a quarterly basis. *See* Conn. Gen. Stat. § 54-257(c). The law's quarterly verification requirement states in relevant part that "the Department of Emergency Services and Public Protection shall verify the address of each registrant by mailing a nonforwardable verification form to the registrant at the registrant's last reported address," that "[s]uch form shall require the registrant to sign a statement that the registrant continues to reside at the registrant's last reported address and return the form by mail by a date which is ten days after the date such form was mailed to the registrant," and that DESPP "shall have such person's address verified in such manner every ninety days after such person's initial registration date." *Ibid.* The failure of a registrant to return the address verification form shall result in the issuance of an arrest warrant. *Ibid.*

The second provision at issue in this case is a requirement that sex offenders register with DESPP any email or instant message addresses they use or other Internet communication

---

[1] Doc. #1 at 19; Doc. #17-3 at 2-3; *In re Cornelio*, 29 A.D.3d 55, 56, 811 N.Y.S.2d 380, 381 (2006).
[2] Doc. #17-3 at 3.
[3] *See* Conn. Gen. Stat. § 54-253 (sex offender registration requirements applicable to residents of Connecticut who have been convicted of a sex offense in a jurisdiction outside of Connecticut and incorporating registration requirements of Conn. Gen. Stat. § 54-251 that apply to an offender convicted for a sex offense against a minor victim).

identifiers. For a sex offender like Cornelio who resides in Connecticut and who was convicted in a court outside of Connecticut for a sex offense against a victim who is a minor, the law requires in relevant part that the offender "register such person's name, identifying factors, criminal history record, residence address and electronic mail address, instant message address or other similar Internet communication identifier, if any, with the Commissioner of Emergency Services and Public Protection, on such forms and in such locations as the commissioner shall direct." Conn. Gen. Stat. § 54-251(a) (as incorporated by Conn. Gen. Stat. § 54-253(a) for offenders like Cornelio who reside in Connecticut but who were convicted of a sex offense against a minor in a jurisdiction outside of Connecticut).

The law further requires in relevant part that "[i]f any person who is subject to registration under this section establishes or changes an electronic mail address, instant message address or other similar Internet communication identifier, such person shall, without undue delay, notify the Commissioner of Emergency Services and Public Protection in writing of such identifier." Conn. Gen. Stat. § 54-253(b). A person who violates this requirement by means of failing to register or notify the Commissioner of reportable information "shall be guilty of a class D felony" if "such failure continues for five business days." Conn. Gen. Stat. § 54-253(e).

Cornelio's challenge to these provisions arise in the context of his arrest for alleged failure to notify the Sex Offender Registry Unit of DESPP of his email address.  This arrest was executed pursuant to an arrest warrant that was based on an affidavit sworn out by Connecticut State Police Detective Debbie Jeney in July 2016.[4]

---

[4] Cornelio has attached a copy of the affidavit to his complaint. Doc. #1 at 19-20. This arrest was the second time that Cornelio has been arrested for violating the Connecticut sex offender registration law. The first time he was arrested was in July 2015 on the basis of an arrest warrant that charged him with failing to timely return his quarterly verification forms in 2014. This charge was dismissed, and then Cornelio filed a federal lawsuit alleging malicious prosecution and other constitutional violations. Judge Haight dismissed the lawsuit, and the Second Circuit affirmed. *See Cornelio v. Connecticut*, 2017 WL 2271667 (D. Conn. 2017), *aff'd*, 708 F. App'x 41 (2d Cir. 2018).

After recounting Cornelio's sex offense convictions in New York, the affidavit states that Cornelio registered in Connecticut in March 2008, at which time he was advised in writing of the requirement that he notify the Sex Offender Registry Unit "in writing of any electronic mail address, instant messaging address or similar communication identifier that is established, changed or used by the offender."[5] According to the affidavit, when Cornelio initially registered he furnished the following "electronic mail address"—*brotosis.com* —and "[t]his was the only and last report of an email or any electronic identifiers provided by JAMES CORNELIO to the Sex Offender Registry Unit."[6]

The affidavit goes on to describe how Cornelio sent emails to the Sex Offender Registry Unit in 2010 and multiple times in 2015 using an AOL email address which had not been previously registered with or notified to the Sex Offender Registry Unit.[7] The affidavit states that Cornelio failed to report this AOL email address to the Sex Offender Registry Unit despite the fact that he had been advised of the notification requirement in letters that the Unit sent to Cornelio every 90 days for him to confirm his residence address.[8]

The affidavit concludes by stating that Cornelio "did not report the email address to the Sex Offender Registry Unit in writing as required by law as of the writing of this report [sic] however he continually corresponds utilizing the email address."[9] It states that "[w]herefore on or about 9/20/2015 JAMES PHILLIP CORNELIO violated his registration requirements when he failed to report his electronic mail address in violation of C.G.S. 54-253."[10]

---

[5] Doc. #1 at 19.
[6] *Id.* at 20. Because the arrest warrant affidavit as attached to the complaint has very small and somewhat blurry print, I cannot be certain that the alleged email address is "brotosis.com" or whether it is something very similar.
[7] *Ibid.*
[8] *Ibid.*
[9] *Ibid.*
[10] *Ibid.*

The affidavit also bears the signature of a state court judge with the following statement: "The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to an considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused."[11]

Cornelio alleges that he was arrested on the basis of this arrest warrant affidavit in April 2018.[12]  He further alleges that the judge who signed the arrest warrant dismissed the case several weeks later in late May 2018.[13]

Cornelio has filed this *pro se* federal action alleging three constitutional claims pursuant to 42 U.S.C. § 1983. First, he alleges a Fourth Amendment claim for malicious prosecution against Detective Jeney and John/Jane Doe defendants. Second, he alleges that the Connecticut's sex offender law's requirements for quarterly verification of his residence and notification of his email address and other Internet communication identifiers violate the Ex Post Facto Clause. Third, he alleges that the Connecticut sex offender law's requirement that he notify DESPP of his email address and other Internet communication identifiers violates his rights under the First Amendment. He seeks injunctive relief and damages. Defendants move to dismiss for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. 12(b)(6).[14]

---

[11] *Id.* at 19.

[12] *Id.* at 2.

[13] *Ibid.*

[14] I interpret the complaint to allege its malicious prosecution claim for money damages solely against Detective Jeney in her individual capacity. On the other hand, I interpret the Ex Post Facto and First Amendment claims for injunctive relief to be against the State of Connecticut and defendant Stavro Mellekas in his official capacity as DESPP Commander. To the extent that the complaint names John and/or Jane Doe defendants, the complaint fails to identify any specific actions by unnamed others that would give rise to plausible grounds for relief against them.

**DISCUSSION**

The standard that governs a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain subject-matter jurisdiction and a plaintiff's claims for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F.Supp.3d 153, 155-56 (D. Conn. 2016). Because Cornelio represents that he is a former attorney, there are no grounds to apply the usual principles in favor of liberal construction of a *pro se* litigant's pleadings. *See, e.g., Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010); *see also In re Cornelio*, 29 A.D. 55, 811 N.Y.S.2d 380 (2006) (disbarment order).

### *Malicious prosecution*

Cornelio alleges in Claim I of his complaint that he was subject to malicious prosecution. The Fourth Amendment protects the right of the people to be free from unreasonable search and seizure. U.S. Const. amend. IV. A plaintiff who has been subject by a defendant state actor to an arrest or other seizure by reason of conduct that would otherwise violate the common law right against malicious prosecution may pursue a Fourth Amendment claim for malicious prosecution. *See Frost v. New York City Police Dep't*, -- F.3d --, 2020 WL 6603609, at *5 (2d Cir. 2020). Under Connecticut law, the elements of a malicious prosecution claim are that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of

---

Because the motion to dismiss does not raise at this time a sovereign immunity defense with respect to the State of Connecticut as a defendant, I do not consider any sovereign immunity issue for now.

bringing an offender to justice." *Spak v. Phillips*, 857 F.3d 458, 461 n.1 (quoting *Brooks v. Sweeney*, 299 Conn. 196, 210-11 (2010)).

Probable cause exists if the facts and circumstances are such that a reasonably prudent officer would conclude that a person has committed an offense. *See Frost*, -- F.3d. --, 2020 WL 6603609, at *6. The existence of probable cause is a complete defense to a malicious prosecution claim. *Ibid.*

Where, as here, an officer is subject to a lawsuit for money damages on grounds that she has violated a suspect's rights under the Fourth Amendment, the officer may assert a defense of qualified immunity. Qualified immunity shields government officials from claims for money damages unless a plaintiff shows the officer has violated clearly established law such that any objectively reasonable officer would have understood that her conduct amounted to a violation of the suspect's constitutional rights. *See Mara v. Rilling*, 921 F.3d 48, 68–69 (2d Cir. 2019).

An officer is entitled to qualified immunity if she had at least *arguable* probable cause to have initiated a prosecution. *See Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013). Arguable probable cause exists if either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (cleaned up).

Moreover, in the ordinary course, the issuance of a warrant which depends on a probable cause finding by a judge or magistrate creates a presumption that it was objectively reasonable for officers to believe that there was probable cause. *See Golino v. City of New Haven, Conn.*, 950 F.2d 864, 870 (2d Cir. 1991). This presumption may be rebutted by a showing that the warrant was based on misleading facts or an affidavit with omissions that were necessary to a finding of probable cause. *See id.* at 870-71. Alternatively, the presumption may be rebutted if

the warrant was so obviously lacking in probable cause that no objectively reasonable officer could have relied on a judge or magistrate's probable cause determination. *Cf. United States v. Leon*, 468 U.S. 897, 923 (1984) (noting that "objective good faith" reliance on search warrant would not be established by "relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable").

In light of this legal framework, I conclude that there was arguable probable cause to support the arrest of Cornelio for failure to notify DESPP of his email address. To be sure, the arrest warrant affidavit makes a rather odd showing of the basis and need to arrest Cornelio. It faults Cornelio for failing to notify DESPP of his email address on the basis of multiple emails that were sent by Cornelio himself to DESPP in 2010 and 2015 using the very email address that Detective Jeney accuses Cornelio of failing to disclose. A strong argument could be made that Cornelio's own emails—which reflect his email address—satisfy the statutory requirement of Conn. Gen. Stat. § 54-253(b) that he "notify" the Commissioner of DESPP of his establishing an email address. Still, an objectively reasonable law enforcement officer could read the "notify" requirement of § 54-253(b) in light of the separate requirement that also applied to Cornelio that he "register" his email address "with the Commissioner of Emergency Services and Public Protection, on such forms and in such locations as the commissioner shall direct." Conn. Gen. Stat. § 54-251(a) (as incorporated against Cornelio under Conn. Gen. Stat. § 54-253(a)).

Therefore, it is at least arguable that Cornelio was required to notify DESPP about his email address in response to the quarterly verification forms he received or on such other form that the Commissioner might prescribe. If so, Cornelio's sending of an email to the Sex Offender Registry Unit did not suffice to satisfy his statutory obligations of notification and registration. Although the many emails that Cornelio sent to the Unit self-evidently disclosed Cornelio's

email address, the record shows that these emails concerned his inquiries or communications

about other matters.[15] The record does not show that he sent any of these emails with a statement

that he was thereby notifying the Sex Offender Registry Unit of his establishment or change of

an email address in accordance with his registration and notification obligations under Conn.

Gen. Stat. §§ 54-251 and 54-253(b) and so that the email address would be made an official part

of his registration file. In addition, because a state court judge concluded on the basis of

Detective Jeney's affidavit that there was probable cause to arrest Cornelio, I conclude that

Detective Jeney is entitled to qualified immunity from Cornelio's claim for money damages on

the ground that there was—if barely—arguable probable cause to conclude that he violated the

email notification and registration requirements of the Connecticut sex offender registration law.

Cornelio argues that the arrest warrant affidavit includes false statements that were

necessary to a finding of probable cause. I do not agree. First, he claims that the affidavit

misstates in its caption that he resides in Middlefield, Connecticut, rather than in New Preston,

Connecticut, thereby creating an impression that he had failed to register or notify his true

residence address. But the warrant does not seek his arrest for failure to disclose his residence

address; instead, it seeks his arrest for failure to notify about his email address. Any possible

misstatement about his residence address was not material to or necessary for probable cause.

Cornelio also argues that the affidavit falsely asserts that his first emails with the Sex

Offender Registry Unit occurred in 2010 when in fact he emailed them in 2009. But even

assuming this to be true, this misstatement about precise dates of the first emails does not bear on

---

[15] Doc. #1 at 20 (arrest warrant affidavit describing some of content of emails); *id.* at 21-22 (emails in March 2009); *cf. id.* at 24-27 (emails in October and November 2017). I also take judicial notice of emails sent from the same AOL address by Cornelio in 2009 and 2015 concerning his compliance with quarterly verification requirements and filed by Cornelio in his prior federal court action. *See* Doc. #1-1 at 5-6, 10-11, 13-14 to *Cornelio v. Connecticut*, No. 3:16-cv-1421-CSH (D. Conn.).

whether there was arguable probable cause to conclude that he did not notify of his email address as the law requires. I have considered Cornelio's remaining arguments about defects in the warrant affidavit and conclude that they do not undermine the basis to conclude that there was arguable probable cause.

All that said, it is hard to believe that the Connecticut State Police don't have something better to do than to swear out criminal felony warrants for the most technical of foot faults with respect to sex offender reporting requirements. Judges and the community alike look to the police to exercise responsible discretion when enforcing the law and not to mindlessly and antagonistically investigate and prosecute cases for violations of criminal prohibitions that have nothing or little to do with the reason for the criminal prohibition. The prohibition here—to require disclosure of email addresses used by a sex offender—is quite plainly aimed at sex offenders who try to hide their email addresses from the police, not sex offenders like Cornelio who do the reverse by sending emails to the police using the very email address that the police seize upon to accuse them of failing to disclose.

Equally troubling is the specter that Cornelio's real offense here was what is colloquially known as "contempt of cop." The record in this case and from Cornelio's prior federal lawsuit reflects that Cornelio for years has been a gadfly in the bureaucratic machinery of the Sex Offender Registry Unit. He has complained about the quarterly verification requirement and his concern that the police would arrest him for a "late mail" violation, especially if he were not at home and on vacation at the time that a quarterly verification form arrived and was required to be returned within the required 10 days.[16] After the dismissal of charges from a prior arrest on

---

[16] *See, e.g.,* Doc. #1 at 22 (email exchange in 2009 expressing concern about his late receipt of a quarterly notification form from the Sex Offender Registration Unit and stating "[a]s you might appreciate, I want to avoid arrest" and asking about schedule of mailings in the future); *id.* at 24 (email in October 2017 noting concerns that because "I intend to be traveling during the next quarterly registration period (mid-December) and would like to

the basis of his failure (by a matter of just a few days) to timely comply with the quarterly

verification requirement, he filed a complaint against the commanding officer of the Sex

Offender Registry Unit with the State Police Office of Internal Affairs, and he complained by

way of email to the commanding officer in November 2015 that "I believe your enforcement of

[the sex offender registration law] was arbitrary, violative of both the letter and purpose of the

Registration Law and needlessly harsh, to say the least." Doc. #1-1 at 10 to *Cornelio v.*

*Connecticut*, No. 3:16-cv-1421-CSH (D. Conn.).

Several months later Detective Jeney swore out the arrest warrant affidavit in this case in

July 2016 (just as she was the detective who swore out the prior arrest warrant against Cornelio

in February 2015 for which the charges were dismissed).[17] The arrest warrant is witnessed by the

same supervising officer to whom Cornelio sent his email complaint in November 2015.[18]

If not for my conclusion that there was objectively arguable probable cause to warrant a

grant of qualified immunity, I would have little difficulty concluding that Cornelio has plausibly

alleged the element of malice for a malicious prosecution—that he has been targeted "primarily

for a purpose other than that of bringing an offender to justice." *Spak*, 857 F.3d at 461 n.1

(quoting *Brooks v. Sweeney*, 299 Conn. at 211).

Indeed, the fact that the police waited nearly two years after issuance of the arrest warrant

in July 2016 to arrest Cornelio in April 2018 is inconsistent with any claimed need to "bring an

offender to justice" in order to serve the protective purposes of Connecticut's sex offender

registration law. Notwithstanding multiple signs of malice that may be motivating the Sex

---

make alternate arrangements to assure you that, despite my travels, my permanent residence is and will continue to
be 101 West Shore Road, New Preston, CT").

[17] Doc. #1-1 at 8-9 to *Cornelio v. Connecticut*, No. 3:16-cv-1421-CSH (D. Conn.) (arrest warrant affidavit dated
February 24, 2015).

[18] Doc. #1 at 19-20 (witness signature of Sgt. Matthew Garcia).

Offender Registry Unit's dealings with Cornelio, there was—if barely—arguable probable cause to support the arrest warrant, and so I conclude that Detective Jeney is entitled to qualified immunity against Cornelio's malicious prosecution claim.

### Ex Post Facto Clause

Cornelio alleges in Claim II of his complaint that the Connecticut law's quarterly verification requirement—that he confirm or verify his residence address every 90 days, *see* Conn. Gen. Stat. § 54-257(c)—violates the Ex Post Facto Clause. "The Constitution forbids the passage of ex post facto laws, a category that includes '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" *Peugh v. United States*, 569 U.S. 530, 532-33 (2013).

Defendants devote much of their briefing to arguing that Cornelio has no standing to maintain his Ex Post Facto claim (or his First Amendment claim). But this argument confuses the requirements for constitutional standing with the merits of a claim. *See, e.g., Warren v. United States*, 517 F. App'x 54, 56 (2d Cir. 2013) (explaining the conceptual distinction). Because Cornelio is under an ongoing obligation to confirm his residence address every 90 days as well as to disclose his establishment of any email addresses or other Internet communication identifiers, he doubtlessly alleges a sufficient and imminent injury-in-fact to raise a constitutional challenge to these obligatory disclosure requirements, as well as an injury that is fairly traceable to the regulatory directive and that could likely be redressed by a court order in his favor. That is all that is required for standing*, see, e.g., Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017), and it is no answer to say that because Cornelio's claims fail on their merits under the Ex Post Facto Clause (or the First Amendment) that he does not have standing to press his claims in the first place.

In any event, there is no merit to Cornelio's ex post facto challenge to the quarterly verification requirement. This requirement was part-and-parcel of the Connecticut sex offender registration law's original enactment in 1998. *See* 98 Conn. Legis. Serv. P.A. 98-111 (S.S.B. 65), § 8(b). Because the law was already in place when Cornelio engaged in his crimes in 2003 and for which he was convicted in 2005, he plainly has no grounds for relief from the quarterly verification provisions under the Ex Post Facto Clause.

Cornelio also appears in passing to allege in Claim III of his complaint an ex post facto challenge to the Connecticut law's separate requirement under Conn. Gen. Stat. § 54-253(b) that notify DESPP of his electronic mail address and other Internet identifiers. These provisions of the Connecticut law were enacted in 2007, which was after Cornelio's crimes were committed in 2003 and his conviction in 2005. *See* 2007 Conn. Legis. Serv.-June Sp. Sess. P.A. 07-4 (S.B. 1500), §§ 90, 92 (amending Conn. Gen. Stat. §§ 54-251(a) and 54-253(b)). Accordingly, Cornelio's ex post facto challenge requires me to consider whether the requirement to disclose any email addresses or other Internet communication identifiers is punitive either in purpose or in effect. *See Doe v. Cuomo*, 755 F.3d 105, 109-10 (2d Cir. 2014) (outlining framework for consideration of whether a regulatory requirement is punitive in purpose or in effect in violation of the Ex Post Facto Clause).[19]

As an initial matter, Cornelio makes no showing that Connecticut lawmakers harbored a punitive purpose rather than a regulatory purpose when they decided to require that sex offenders disclose their email addresses and other Internet communication identifiers. The Connecticut

---

[19] I understand Cornelio's ex post facto challenge to be to the imposition of a regulatory requirement of disclosure of his email address and other Internet communication identifiers, rather than to a potential prosecution for failure to comply with the regulatory disclosure requirement. The latter challenge would fail in view that the prohibited conduct—failure to disclose—would occur only after the enactment of the disclosure requirement. *See, e.g., United States v. Young*, 585 F.3d 199, 202 (5th Cir. 2009).

Supreme Court has rejected the argument that the Connecticut sex offender registration law was enacted for punitive purposes. *See, e.g., State v. Waterman*, 264 Conn. 484, 492-93 (2003).

Next I must consider whether the disclosure requirement is punitive in effect. This requires consideration of multiple factors: "whether, in its necessary operation, the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is excessive with respect to this purpose." *Doe v. Cuomo*, 755 F.3d at 110 (quoting *Smith v. Doe*, 538 U.S. 84, 97 (2003)) (internal numbered brackets added).

As to the first factor, there is no indication that the requirement that a sex offender disclose his email address and other Internet identifiers amounts to a measure that in our history and traditions is a punishment. To the contrary, because the Internet is a recent development, there is little in the way of history or traditions to consider.

As to the second factor, the disclosure requirement does not amount to a disability or restraint. It does not prevent Cornelio from going anywhere or doing anything but requires simply that he disclose certain information concerning his identification information that he uses to communicate on the Internet.

As to the third factor, the disclosure requirement does not primarily promote the traditional aims of punishment. To the contrary, an information disclosure requirement is a classic tool of civil regulation rather than a penal sanction like a sentence of imprisonment or imposition of a fine.

As to the fourth factor, the disclosure requirement bears a rational connection to a non-punitive purpose. Many sexual offenses occur by means of the use of email or other forms of

Internet communications to entice victims or to solicit or distribute prohibited sexual images. In order to investigate future crimes involving the use of the Internet to exploit victims and in order to discourage a convicted sex offender from believing that he can use Internet communications for criminal sexual purposes in an anonymized manner, Connecticut has a valid regulatory interest in requiring sex offenders to disclose their email addresses and other Internet communication identifiers.

Such measures to aid the investigation and deterrence of future crimes serves a non-punitive purpose distinct from penalizing past conduct. *See, e.g., Doe v. Cuomo*, 755 F.3d at 112 (noting that enhancing future law enforcement efforts serves a non-punitive purpose); *Doe v. Pataki*, 120 F.3d 1263, 1281-82 (2d Cir. 1997) (noting that sex offender notification provisions serve "nonpunitive, prospective goals of protecting the public and facilitating law enforcement efforts"); *see also Hobbs v. Cty. of Westchester*, 397 F.3d 133, 158 (2d Cir. 2005) (discussing how a measure designed to deter a sex offender does not amount to a criminal penalty for Ex Post Facto Clause purposes notwithstanding some overlap with punitive purpose of deterrence).

As to the fifth factor, the disclosure requirement is not excessive with respect to its non-punitive purpose. For example, in contrast to the Connecticut law's provisions for public disclosure of a registered sex offender's address, name, and photograph, the law is narrowly tailored to provide that a sex offender's disclosure of his email address and other Internet identifiers does not constitute a public record and that DESPP may release this information only for law enforcement or security purposes. *See* Conn. Gen. Stat. § 54-258(a)(5).

In short, Cornelio makes no showing that Connecticut acted with a punitive purpose by requiring that convicted sex offenders disclose their email address and other similar Internet communication identifiers. Nor does Cornelio show that this disclosure requirement is punitive

in effect. Accordingly, I will dismiss Cornelio's ex post facto challenge to the disclosure requirements of Conn. Gen. Stat. § 54-253(b).

### First Amendment

Cornelio alleges in Claim III of the complaint that the requirement of Conn. Gen. Stat. § 54-253(b) that he notify DESPP of any email addresses or other similar Internet communication identifiers violates his right to free speech under the First Amendment. In the absence of particular email addresses or other Internet communication identifiers that he seeks to withhold from disclosure, Cornelio styles his claim as a facial First Amendment challenge rather than an as-applied challenge.

A plaintiff raising a facial First Amendment challenge carries a "heavy burden." *Amidon v. Student Ass'n*, 508 F.3d 94, 98 (2d Cir. 2007) (quoting *Nat'l Endowment of the Arts v. Finley*, 524 U.S. 569, 580 (1998)). To prevail, Cornelio "must demonstrate a substantial risk that application of the challenged practice or provision will lead to a First Amendment violation." *Ibid.* (internal citation omitted).

Connecticut's disclosure requirement burdens Cornelio's right to free speech in the sense that it compels him to furnish information about himself to the government and inhibits to some degree the exercise of his right to engage in anonymous speech activities on the Internet. *See Doe v. Harris*, 772 F.3d 563, 572-74 (9th Cir. 2014) (considering similar disclosure requirement under California law); *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010) (considering similar disclosure requirement under Utah law). Nevertheless, because the burden imposed is content-neutral and not impermissibly speaker-based, Connecticut's disclosure requirement is not subject to strict scrutiny but instead to intermediate scrutiny. *See Doe v. Harris*, 772 F.3d at 574-76; *Doe v. Shurtleff*, 628 F.3d at 1222-23.

16

Under intermediate scrutiny, a statute or regulation will be upheld against First
Amendment challenge if it "(1) advances important governmental interests unrelated to the
suppression of free speech, and (2) does not burden substantially more speech than necessary to
further those interests." *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 160 (2d Cir. 2013)
(quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) (internal citation omitted)).

Connecticut's requirement that sex offenders disclose their email addresses and similar
Internet communication identifiers survives intermediate scrutiny. To begin, Connecticut has an
important government interest in deterring convicted sex offenders from using the Internet in
order to recruit, groom, entice, or otherwise engage in communications with potential or actual
sex abuse victims as well as to engage in the distribution or exchange of prohibited sexual
images. Connecticut "has a substantial interest in protecting vulnerable individuals, particularly
children, from sex offenders, and the use of Internet to facilitate that exploitation is well known
to this Court." *Doe v. Harris*, 772 F.3d at 577.

Requiring sex offenders to disclose their email addresses or other Internet communication
identifiers specifically serves the government's important interest in at least two ways. First, in
the event that law enforcement discovers sexual crimes involving Internet communications, they
have a readily accessible database to search to potentially determine the true identity of the
person engaged in unlawful activity. Second, if a sex offender registrant knows that his email
address and other Internet communication identifiers is known to law enforcement authorities, he
is more likely to have second thoughts about using the Internet to engage in more sex crimes.

Connecticut's requirement that a sex offender registrant disclose his email address and
other Internet communication identifiers does not burden substantially more speech than
necessary to further the government's important interests. As noted above, Connecticut does not

publicly disclose the email addresses and other Internet communication identifiers; instead, such information is not a "public record" and is reserved solely "for law enforcement or security purposes." *See* Conn. Gen. Stat. § 54-258(a)(5). Accordingly, for all practical purposes, if a sex offender like Cornelio wishes to engage in anonymous speech on the Internet, he can almost certainly do so provided that he does not engage in nefarious activity to engender law enforcement investigation.

Other states have laws like Connecticut that require registered sex offenders to disclose their email addresses and other Internet communication identifiers. To the extent as in Connecticut where the information is available only for law enforcement purposes, the large majority of federal and state courts to consider the issue have applied intermediate scrutiny to reject First Amendment challenges to these requirements. *See Doe v. Shurtleff*, 628 F.3d at 1223-26; *Delgado v. Swearingen*, 375 F. Supp. 3d 1251 (N.D. Fla. 2018); *Does #1-7 v. Abbott*, 345 F. Supp. 3d 763, 780 (N.D. Tex. 2018), *aff'd on other grounds*, 945 F.3d 307 (5th Cir. 2019) (*per curiam*); *State v. Jackson*, 390 Wis. 2d 402, 938 N.W.2d 639 (Wis. 2019); *State v. Aschbrenner*, 926 N.W.2d 240, 250-54 (Iowa 2019); *Ex parte Odom*, 570 S.W.3d 900, 907-16 (Tex. App. 2018); *Coppolino v. Noonan*, 102 A.3d 1254, 1282-84 (Pa. Commw. Ct. 2014), *aff'd*, 633 Pa. 445, 125 A.3d 1196 (2015); *Harris v. State*, 985 N.E.2d 767, 775-76 (Ind. Ct. App. 2013).

Cornelio relies on the Ninth Circuit's decision in *Doe v. Harris*, *supra*, in which the court invalidated California's Internet identifier disclosure requirement. But that decision turned on distinctions involving the California statute that do not appear to apply here.

First, the Ninth Circuit found the California law to be ambiguous concerning the scope of what Internet identifiers must be disclosed, noting that the California law "is not readily susceptible to the district court's limitation of the Act to require registered sex offenders to report

only new Internet identifiers that a sex offender actually uses for a communicative purpose." 772 F.3d at 578. Here, by contrast, the Connecticut statute is expressly limited only to Internet *communication* identifiers and ones that that are similar to email or instant message addresses. *See* Conn. Gen. Stat. § 54-253(b) (requiring notification of a registrant's "electronic mail address, instant message address or other similar Internet communication identifier").

There is no merit to Cornelio's suggestion that the Connecticut statute as written can be reasonably read to extend to any information input by an offender on the Internet such as usernames for a bank account or for access to PACER. *See also Aschbrenner*, 926 N.W.2d at 252 (rejecting First Amendment challenge in light of limiting construction on disclosure of Internet identifiers to including those "used for *outgoing* communications or posting sent by the offender, consistent with the statute's purpose to guard against anonymous trolling for victims").

Second, the Ninth Circuit found insufficient the protections in the California law against public disclosure of a registrant's report of Internet identifiers, especially in view of a provision in the law that affirmatively authorized public disclosure and which the Ninth Circuit concluded "too freely allows law enforcement to disclose sex offenders' Internet identifying information to the public." 772 F.3d at 579-81. Here, as discussed above, the Connecticut statute classifies a registrant's Internet communication identifiers not to be a public record and to be disclosed only for law enforcement and security purposes. *See* Conn. Gen. Stat. § 54-258(a)(5).

Third, the Ninth Circuit faulted the California law's requirement that a registrant disclose any change in his Internet identifiers within 24 hours. *See* 772 F.3d at 581-82. It contrasted this short time allowance to other jurisdictions such as Georgia that allow for three days. *Id.* at 581. Connecticut does not impose a 24-hour rule; it requires the information to be updated without "undue delay," Conn. Gen. Stat. § 54-253(b); *State v. Drupals*, 306 Conn. 149, 167-68 (noting

flexible definition of "undue delay" that may extend beyond five days). At a minimum, the failure to update the information is not subject to prosecution unless at least five business days have passed without reporting, Conn. Gen. Stat. § 54-253(e). *See Aschbrenner*, 926 N.W. 2d at 253 (similarly distinguishing *Harris* in light of Iowa's 5-day allowance period).

In short, I conclude as to Cornelio's facial challenge that Connecticut's requirement that sex offenders notify the Commissioner of their email address and other Internet communication identifiers survives intermediate scrutiny under the First Amendment. It advances important governmental interests unrelated to the suppression of free speech, and it does not burden substantially more speech than necessary to further those interests. Accordingly, I will dismiss Cornelio's First Amendment claim.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss (Doc. #17) is GRANTED. Because it does not appear that the deficiencies described could be remedied by the filing of an amended complaint, I dismiss this action with prejudice. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 30th day of November 2020.

/s/*Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge

20