20-4106-cv
*Cornelio v. Connecticut*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

————————

AUGUST TERM 2021
No. 20-4106-cv

**JAMES P. CORNELIO,**
*Plaintiff-Appellant,*

v.

**STATE OF CONNECTICUT, STRAVROS MELLEKAS, IN HIS OFFICIAL CAPACITY AS COMMANDER OF THE CONNECTICUT DEPARTMENT OF EMERGENCY SERVICES AND PUBLIC PROTECTION (DESPP), DET. DEBBIE JENEY, JOHN DOE, IN HIS INDIVIDUAL CAPACITY, JANE DOE, IN HER INDIVIDUAL CAPACITY,**
*Defendants-Appellees.*[*]

————————

On Appeal from the United States District Court
for the District of Connecticut

————————

ARGUED: OCTOBER 7, 2021
DECIDED: APRIL 26, 2022

————————

————————

[*] The Clerk of Court is directed to amend the caption as set forth above.

CERTIFIED COPY ISSUED ON 04/26/2022

Before:     JACOBS and MENASHI, *Circuit Judges*, and CRONAN, *District Judge*.[†]

Plaintiff-Appellant James P. Cornelio filed a pro se federal action in the U.S. District Court for the District of Connecticut against the State of Connecticut, Colonel Stavros Mellekas in his official capacity as commander of the Connecticut Department of Emergency Services and Public Protection, and retired Detective Debbie Jeney in her individual capacity, alleging three constitutional claims under 42 U.S.C. § 1983. Cornelio alleged that those provisions of Connecticut's sex offender registration statute that required him to disclose his email address and other internet communication identifiers and periodically to verify his residence violated the First Amendment and the Ex Post Facto Clause, respectively. Cornelio further alleged that Detective Jeney engaged in malicious prosecution in violation of the Fourth Amendment by seeking an arrest warrant for Cornelio's alleged failure to disclose one of his email addresses.

The district court dismissed all of Cornelio's claims. With respect to the First Amendment claim, the district court held that the disclosure requirement burdens protected speech but nonetheless survives intermediate scrutiny. In so holding, the district court concluded that the disclosure requirement advances important governmental interests and does not burden substantially more speech than necessary to further that interest. The district court dismissed Cornelio's Ex Post Facto Clause claim because the quarterly verification requirement was already in place when Cornelio engaged in his underlying crimes in 2003. Lastly, the district court dismissed

---

[†] Judge John P. Cronan of the U.S. District Court for the Southern District of New York, sitting by designation.

Cornelio's malicious prosecution claim, holding that Detective Jeney was entitled to qualified immunity. In so holding, the district concluded that despite Cornelio's repeated past use of an unregistered email address to communicate with the Sex Offender Registry Unit, Detective Jeney had arguable probable cause to seek the arrest warrant.

We conclude that, at this preliminary stage, Cornelio has stated a plausible First Amendment claim. We therefore reverse the district court's dismissal of that claim and remand for further proceedings. We affirm the district court's judgment with respect to Cornelio's two other claims.

———————

JAMES P. CORNELIO, pro se, New Preston, CT, *for Plaintiff-Appellant*.

ROBERT S. DEARINGTON, Assistant Attorney General (Clare Kindall, Solicitor General, *on the brief*), *for* William Tong, Attorney General of the State of Connecticut, Hartford, CT, *for Defendants-Appellees*.

———————

MENASHI, *Circuit Judge*:

The State of Connecticut, like other states, has a comprehensive sex offender registration law. *See* Conn. Gen. Stat. § 54-250 *et seq.* The Department of Emergency Services and Public Protection ("DESPP") and the Sex Offender Registry Unit ("SORU"), a unit of the State Police within the DESPP, administer the law. Two provisions of the sex offender registration law are at issue in this case. The first is a disclosure requirement pursuant to which a registered sex offender

3

must notify the DESPP when he creates a new email address, instant messenger address, or other internet communication identifier. The second is a residence verification provision, which requires that a sex offender verify his residential address every 90 days or on a quarterly basis.

Plaintiff-Appellant James P. Cornelio, a convicted sex offender, filed a pro se federal action in the U.S. District Court for the District of Connecticut against the State of Connecticut, Colonel Stavros Mellekas in his official capacity as commander of the DESPP, and retired Detective Debbie Jeney—a former detective in the SORU—in her individual capacity. Cornelio asserted three claims under 42 U.S.C. § 1983. First, he alleged that the disclosure requirement violates the Speech Clause of the First Amendment, applicable to the states under the Due Process Clause of the Fourteenth Amendment. Second, Cornelio alleged that the residence verification provision violates the Ex Post Facto Clause as applied to him. Third, he alleged that Jeney violated the Fourth Amendment by initiating a malicious prosecution against him when she sought an arrest warrant for Cornelio's alleged failure to disclose one of his email addresses to the SORU.

The district court (Meyer, J.) granted the defendants' motion to dismiss all three claims. The district court dismissed Cornelio's First Amendment claim for failure to state a claim, holding that although the disclosure requirement burdens protected speech it survives intermediate scrutiny. In so holding, the district court concluded that the disclosure requirement advances important governmental interests and does not burden substantially more speech than necessary to further those interests. The district court dismissed Cornelio's Ex Post Facto Clause claim because the residence

4

verification provision was already in place when Cornelio engaged in the underlying crimes in 2003. Finally, the district court dismissed Cornelio's malicious prosecution claim, holding that Jeney is entitled to qualified immunity. Despite Cornelio's past use of an unregistered email address to communicate with the SORU, the district court explained, Jeney had arguable probable cause to seek the arrest warrant for Cornelio's failure to register that email address.

We reverse the district court's dismissal of Cornelio's First Amendment claim. Assuming intermediate scrutiny is the appropriate standard of review, we conclude that the disclosure requirement plausibly fails intermediate scrutiny and therefore Cornelio has stated a First Amendment claim. We affirm the district court's dismissal of Cornelio's Ex Post Facto Clause claim because the residence verification provision was enacted before Cornelio committed his crimes. We also affirm the district court's dismissal of Cornelio's malicious prosecution claim because Jeney is entitled to qualified immunity. The case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I

The requirements of Connecticut's sex offender registration law apply to all persons convicted of criminal offenses against a minor, violent and nonviolent sexual offenses, and felonies committed for a sexual purpose. *See* Conn. Gen. Stat. §§ 54-251 to -252.

Cornelio was convicted in 2005 in New York State for one count of a criminal sexual act in the second degree, in violation of N.Y. Penal Law § 130.45(1), and for ten counts of possessing a sexual

performance by a child, in violation of N.Y. Penal Law § 263.16. The underlying conduct occurred in 2003. Because he is now a resident of Connecticut, Cornelio is subject to Connecticut's sex offender registration law, *see* Conn. Gen. Stat. § 54-253, and he challenges two provisions of that law.

First, the disclosure requirement mandates that a registered sex offender must provide all of his internet communication identifiers to the DESPP. As part of his initial registration, a registrant must disclose to the Commissioner of the DESPP his "electronic mail address, instant message address or other similar Internet communication identifier" on "such forms and in such locations as the commissioner shall direct." *Id*. § 54-251(a).[1] The law also imposes a continuing obligation to "notify" the Commissioner of the DESPP "in writing" if the registrant "establishes or changes an electronic mail address, instant message address or other similar Internet communication identifier." Conn. Gen. Stat. § 54-253(b). If a registrant fails to comply with the disclosure requirement he is "guilty of a class D felony" once "such failure continues for five business days." *Id*. § 54-253(e).

Second, the residence verification provision requires that a registrant verify his residential address every 90 days or on a quarterly basis. *Id*. § 54-257(c). Under the provision, the DESPP "shall verify the address of each registrant by mailing a nonforwardable verification form" to the registrant's last reported address, and the registrant must return the form by mail within ten days. *Id*. Failing to

---

[1] Pursuant to Conn. Gen. Stat. § 54-253(a), this requirement applies to offenders such as Cornelio who reside in Connecticut but were convicted of a sex offense in a jurisdiction outside of Connecticut.

return the verification form results in the issuance of an arrest warrant. *Id.* The residence verification provision was adopted as part of the original enactment of the sex offender registration law in 1998. *See* 1998 Conn. Legis. Serv. P.A. 98-111 (S.S.B. 65), § 8(b) (West).

## II

This case arises from Cornelio's arrest for his alleged failure to notify the DESPP of his email address. The arrest was executed pursuant to an arrest warrant that issued based on an affidavit submitted by Jeney, who at that time was a detective in the SORU. After recounting Cornelio's sex offense convictions in New York, the affidavit stated that when Cornelio initially registered in March 2008, he was advised of the requirement to notify the SORU "in writing of any electronic mail address, instant messaging address or similar communication identifier that is established, changed, or used" by him. App'x 22. The affidavit further stated that when Cornelio first registered, he provided a single email address.

The affidavit then described how Cornelio emailed the SORU in 2010 and multiple times in 2015 using an email address—ending with "aol.com"—that was different than the one he originally reported. The AOL email address was allegedly not included on the verification form that was sent to Cornelio, and Cornelio's sex offender registry file noted that he "has not reported" the AOL email address. *Id.* The affidavit concluded that Cornelio's failure to provide a formal notification to the SORU identifying the AOL email address violated the disclosure requirement under § 54-253.

Based on the affidavit, a state court judge issued the arrest warrant. The judge concluded that the affidavit provided probable cause to believe that Cornelio committed an offense that would justify

7

issuance of an arrest warrant. Cornelio was arrested in April 2018. Shortly after the arrest, the case was dismissed.

### III

On August 9, 2018, Cornelio filed a pro se action in the U.S. District Court for the District of Connecticut challenging, under 42 U.S.C. § 1983, the disclosure requirement as a violation of the First Amendment, the residence verification provision as a violation of the Ex Post Facto Clause, and Jeney's conduct as a malicious prosecution in violation of the Fourth Amendment. Cornelio sought injunctive relief against the State of Connecticut and Mellekas to prevent the further application to him of the disclosure requirement and the residence verification provision. He sought damages from Jeney based on the malicious prosecution claim. The defendants moved to dismiss Cornelio's complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

The district court granted the motion to dismiss under Rule 12(b)(6). *Cornelio v. Connecticut*, No. 19-CV-01240, 2020 WL 7043268, at *1 (D. Conn. Nov. 30, 2020), *as amended* (Dec. 9, 2020). The district court dismissed Cornelio's First Amendment claim, holding that although the disclosure requirement burdens protected speech it nonetheless survives intermediate scrutiny. *Id.* at *10. The district court concluded that the disclosure requirement advances important governmental interests unrelated to the suppression of speech and does not burden substantially more speech than necessary to further those interests. *Id.* The district court dismissed Cornelio's Ex Post Facto Clause claim because the residence verification provision was already in place when Cornelio committed his crimes in 2003. *Id.* at

8

*6. The district court also dismissed Cornelio's malicious prosecution claim, holding that Jeney was entitled to qualified immunity. *Id.* at *5. Even though Cornelio had used the AOL email address to communicate with the SORU, the district court concluded that Jeney had arguable probable cause to seek the arrest warrant for the failure formally to report it. *Id.*

## STANDARD OF REVIEW

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (internal quotation marks omitted). A court's function on a Rule 12(b)(6) motion is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Loc. 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990). Consequently, a complaint will survive a motion to dismiss under Rule 12(b)(6) if it alleges facts that, taken as true, establish plausible grounds to sustain a plaintiff's claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018).

## DISCUSSION

### I

We begin with whether Cornelio has stated a First Amendment claim. To answer that question, we proceed in three steps. First, we conclude that the disclosure requirement burdens protected speech and therefore must survive heightened scrutiny. Assuming that intermediate scrutiny is the appropriate standard, we then explain what that scrutiny requires. Finally, based on the allegations of the complaint, we conclude that the disclosure requirement plausibly

9

fails intermediate scrutiny. Accordingly, the district court erred in dismissing Cornelio's First Amendment claim under Rule 12(b)(6).

## A

In evaluating Cornelio's First Amendment claim, we must determine whether the disclosure requirement burdens protected speech and therefore triggers heightened scrutiny. We conclude it does.

First, the disclosure requirement burdens a registrant's "ability and willingness to speak on the Internet." *Doe v. Harris*, 772 F.3d 563, 572 (9th Cir. 2014). The disclosure requirement obliges a registrant to notify the DESPP each time he creates a new "electronic mail address, instant message address or other similar Internet communication identifier." Conn. Gen. Stat. § 54-253(b). Thus, whenever a registrant seeks to use a new identifier to communicate online, he must report that identifier in a timely fashion. In addition to the administrative burden that § 54-253(b) imposes on online communications, any error in compliance can result in a class D felony punishable by up to five years in prison and a $5,000 fine. *Id.* §§ 54-253(e), 53a-35a(8), 53a-41. In this way, the disclosure requirement plausibly deters registrants from engaging in protected online speech. *See Zieper v. Metzinger*, 474 F.3d 60, 65 (2d Cir. 2007) ("It is well-established that First Amendment rights may be violated by the chilling effect of governmental action that falls short of a direct prohibition against speech.") (internal quotation marks omitted).

Second, the disclosure requirement applies specifically to speakers engaged in online communication. The disclosure requirement targets "conduct with a significant expressive element"—the use of communications identifiers—and therefore

10

"has the inevitable effect of singling out those engaged in expressive activity." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986). The disclosure requirement imposes its burdens precisely when a registrant decides to engage in online speech using a communication identifier. That implicates the First Amendment, even if it is possible to distinguish between the identifier and the speech itself. *See Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592 (1983) ("[E]ven regulations aimed at proper governmental concerns can restrict unduly the exercise of rights protected by the First Amendment."). When a law imposes "special obligations" or "special burdens" on those engaged in speech, "some measure of heightened First Amendment scrutiny is demanded." *Turner Broad. Sys., Inc. v. FCC* (*Turner I*), 512 U.S. 622, 641 (1994).

Third, the disclosure requirement prevents a registrant from speaking anonymously. A speaker's decision "to remain anonymous … is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). "Under our Constitution," anonymous speech is "an honorable tradition of advocacy and of dissent." *Id.* at 357. It "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression." *Id.*; *see also Talley v. California*, 362 U.S. 60, 64 (1960) ("Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind."). The First Amendment protects this interest in anonymous speech as much on the internet as in other fora. "Although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech—there is 'no basis for qualifying the level of First Amendment scrutiny that should

11

be applied' to online speech." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (quoting *Reno v. ACLU*, 521 U.S. 844, 870 (1997)). The disclosure requirement does not avoid First Amendment scrutiny because the identifiers are disclosed to the government rather than to the general public. *Cf. Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2388 (2021) ("Our cases have said that disclosure requirements can chill association even if there is no disclosure to the general public.") (internal quotation marks and alterations omitted).[2] It is "offensive … to the values protected by the First Amendment" that "a citizen must first inform the government of her desire to speak." *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 165-66 (2002).

The Supreme Court has subjected disclosure requirements to heightened scrutiny when such requirements might deter First Amendment protected activity. *See Ams. for Prosperity*, 141 S. Ct. at 2388 ("[I]dentification and fear of reprisal *might* deter perfectly peaceful discussions of public matters of importance.") (quoting *Talley*, 362 U.S. at 65). "The risk of a chilling effect" on association or speech "is enough, 'because First Amendment freedoms need breathing space to survive.'" *Id.* at 2389 (alteration omitted) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)). Because the disclosure requirement of § 54-253(b) risks chilling online speech, anonymous and otherwise, it is subject to heightened scrutiny under the First Amendment.

---

[2] Moreover, the statute appears to allow disclosure beyond government officials. *See infra* section I.D.2.

12

## B

The district court determined that the disclosure requirement "is not subject to strict scrutiny but instead to intermediate scrutiny" because the burden on speech "is content-neutral and not impermissibly speaker-based." *Cornelio*, 2020 WL 7043268, at *8; *see Turner I*, 512 U.S. at 662 ("[T]he intermediate level of scrutiny [is] applicable to content-neutral restrictions that impose an incidental burden on speech."). We need not decide in this appeal whether strict or intermediate scrutiny properly applies. Cornelio does not contest the district court's application of intermediate scrutiny and, because he states a plausible claim even under intermediate scrutiny, the level of scrutiny would not alter our decision. *See McCutcheon v. FEC*, 572 U.S. 185, 199 (2014) (plurality opinion) (explaining that because a statute "fail[s] even under the [less demanding] test," the Court "need not parse the differences between the two standards in this case"); *Packingham v. North Carolina*, 137 S. Ct. 1730, 1739 (2017) (Alito, J., concurring in the judgment) ("Like the Court, I find it unnecessary to resolve this dispute because the law in question cannot satisfy the standard applicable to a content-neutral regulation of the place where speech may occur."). We proceed on the assumption that intermediate scrutiny is the appropriate standard.

## C

The burden of demonstrating that the disclosure requirement satisfies intermediate scrutiny falls on the government. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) ("It is well established that the party seeking to uphold a restriction on … speech carries the burden of justifying it.") (internal quotation marks and alteration omitted). To carry that burden, the government must show that the challenged law

13

"(1) 'advances important governmental interests unrelated to the suppression of free speech' and (2) 'does not burden substantially more speech than necessary to further those interests.'" *Time Warner Cable Inc. v. FCC*, 729 F.3d 137, 160 (2d Cir. 2013) (quoting *Turner Broad. Sys., Inc. v. FCC* (*Turner II*), 520 U.S. 180, 189 (1997)).

To establish that the law advances important governmental interests, the government "must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner I*, 512 U.S. at 664 (internal quotation marks and citation omitted); *see also City of Los Angeles v. Preferred Commc'ns, Inc.*, 476 U.S. 488, 496 (1986) ("This Court 'may not simply assume that the ordinance will always advance the asserted state interests sufficiently to justify its abridgment of expressive activity.'") (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 803 n.22 (1984)). When "trenching on first amendment interests, even incidentally, the government must be able to adduce either empirical support or at least sound reasoning on behalf of its measures." *Turner I*, 512 U.S. at 666 (quoting *Century Commc'ns Corp. v. FCC*, 835 F.2d 292, 304 (D.C. Cir. 1987)). Therefore, the government cannot rely on "speculation or conjecture." *Edenfield*, 507 U.S. at 770.

To establish that the law does not burden substantially more speech than necessary, the government must demonstrate that the law is "narrowly tailored" to serve the relevant interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989); *see also Bd. of Trs. v. Fox*, 492 U.S. 469, 480 (1989) ("[T]he State … must affirmatively establish the reasonable fit we require."). Intermediate scrutiny does not demand that the law follow the least restrictive means possible. *See Ward*, 491

U.S. at 798. But "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014).

To satisfy intermediate scrutiny, the government must identify evidence—or, at least, provide "sound reasoning" that "draw[s] reasonable inferences based on substantial evidence"—that these two requirements are met. *Turner I*, 512 U.S. at 666; *see also McCullen*, 573 U.S. at 495; *IMS Health, Inc. v. Sorrell*, 630 F.3d 263, 279 (2d Cir. 2010) ("The burden is on the government to show that it 'carefully calculated' costs and benefits of burdening speech.") (quoting *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999)), *aff'd*, 564 U.S. 552.[3]  For that reason, "the norm is to wait until the summary judgment stage of the litigation to address the ultimate question of whether the ordinance should stand." *Graff v. City of Chicago*, 9 F.3d 1309, 1322 (7th Cir. 1993); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 221 (1990); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 45 (1986); *Taxpayers for Vincent*, 466 U.S. at 793; *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 55 (1976).

The dismissal of a claim challenging a law that abridges protected speech "will rarely, if ever, be appropriate at the pleading stage. Instead, factual development will likely be indispensable to the assessment of whether [such a law] is constitutionally permissible." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 357 (3d Cir. 2016); *see also Preferred Commc'ns*, 476 U.S. at 495 (observing that it was not

---

[3]  Challengers also may introduce evidence showing that the requirements are not met. *See, e.g.*, *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 438-39 (2002).

"desirable to express any more detailed views on the proper resolution of the First Amendment question … without a fuller development of the disputed issues in the case"); *Council of Greenburgh Civic Ass'ns v. U.S. Postal Serv.*, 586 F.2d 935, 936-37 (2d Cir. 1978) ("Careful balancing of the need for the statute against the statute's constriction of first amendment rights is called for. Full development of the facts is essential for the court to strike this balance.") (citations omitted).[4] This is not to say that resolving a First Amendment challenge will never be appropriate on a motion to dismiss. But we conclude it was not appropriate here.

## D

As noted, to survive intermediate scrutiny, the government must show that the challenged law advances important governmental interests and is narrowly tailored to those interests. The government has not made that showing at this stage. Because the disclosure requirement plausibly fails intermediate scrutiny, Cornelio has stated a claim for violation of the First Amendment.

---

[4] Some district courts considering claims such as Cornelio's challenging state sex offender registration requirements have reached the same conclusion and declined to dismiss the claims in the absence of a developed record. *See, e.g.*, *Doe v. Haslam*, No. 16-CV-02862, 2017 WL 5187117, at *18 (M.D. Tenn. Nov. 9, 2017) ("At this stage, the Court can only speculate as to the real-world effect of the Act on internet use, as well as the efficacy of alternative requirements in furthering the government's significant interests."); *Doe v. Lee*, No. 21-CV-28, 2021 WL 1907813, at *17 (M.D. Tenn. May 12, 2021); *Doe v. Gwyn*, No. 17-CV-504, 2018 WL 1957788, at *10 (E.D. Tenn. Apr. 25, 2018).

**1**

The government argues that the disclosure requirement advances important governmental interests in deterring registrants from using the internet (1) to "recruit, groom, entice, or otherwise engage in communications with potential or actual sex abuse victims" and (2) to "engage in the distribution or exchange of prohibited sexual images." Appellees' Br. 33. Assuming that these interests in deterrence are important and legitimate as well as genuine,[5] nothing in the record demonstrates that the disclosure requirement advances these interests in a "direct and material way," *Turner I*, 512 U.S. at 664, or provides more than "ineffective or remote support" for these objectives, *Edenfield*, 507 U.S. at 770.

With no evidence demonstrating that the disclosure requirement materially provides deterrence, the government relies on two speculative propositions. First, a registered sex offender is less likely to engage in sex-based crimes on the internet if he knows that law enforcement possesses his email address and other internet communication identifiers. Second, the disclosure requirement provides law enforcement with a database that can be used to determine the identity of someone engaged in online sex offenses. The government, however, has not substantiated the deterrent effect and

---

[5] The government's asserted interests must be "genuine and not merely post-hoc rationalizations." *Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 265 (2d Cir. 2014); *see Watchtower*, 536 U.S. at 170 (Breyer, J., concurring) (noting that an asserted interest in "crime prevention" was "not a strong one" because, "[f]or one thing, there is no indication that the legislative body that passed the ordinance considered this justification"). On remand, the district court should inquire into the actual purpose of the law.

has not indicated whether the database has ever even been used.[6] Perhaps the government's speculation may turn out to be justified, but at this stage we cannot say that the government "has drawn reasonable inferences based on substantial evidence," *Turner I*, 512 U.S. at 666, and "accepting speculation in place of record evidence[] does not amount to intermediate scrutiny," *United States v. Perez*, 6 F.4th 448, 460 (2d Cir. 2021) (Menashi, J., concurring in the judgment).

A developed record may undermine the government's assertions. For example, in reviewing Michigan's sex offender registration law, the Sixth Circuit observed that "evidence in the record" supported "a finding that offense-based public registration has, at best, no impact on recidivism." *Does #1-5 v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016); *see Doe v. Prosecutor*, 705 F.3d 694, 701 (7th Cir. 2013) (questioning whether, once sex offenders "are willing to break the existing anti-solicitation law," a law prohibiting the use of social networking would "provide any more deterrence").[7] The government also may not be able to show that the database of internet identifiers has actually assisted law enforcement efforts to arrest

---

[6] *See* Oral Argument Audio Recording at 9:51 (government's counsel acknowledging that the record does not demonstrate that the disclosure requirement has a deterrent effect).

[7] Courts have made similar observations when considering other registration requirements. *See Watchtower*, 536 U.S. at 170 (Breyer, J., concurring) (suggesting it is "intuitively implausible to think that [a registration] ordinance serves any governmental interest in preventing … crimes"); *Serv. Emps. Int'l Union, Loc. 3 v. Municipality of Mt. Lebanon*, 446 F.3d 419, 428 (3d Cir. 2006) ("[I]f [perpetrators] are not deterred by the substantial criminal penalties which exist for burglary and violent crime, it is not reasonable to expect that they will alter their behavior because of a $300 fine for failing to register.").

online predators. There would be a "dramatic mismatch" between the asserted interest and "the disclosure regime that [the government] has implemented in service of that end" if "there was not a single, concrete instance" in which the database "did anything to advance the [government's] investigative, regulatory or enforcement efforts." *Ams. for Prosperity*, 141 S. Ct. at 2386 (internal quotation marks omitted).

The government may be able to identify some empirical basis for believing that the disclosure requirement materially advances an important governmental interest. At this stage, however, Cornelio has stated a plausible claim.

## 2

The government contends that the disclosure requirement does not burden substantially more speech than necessary to further its deterrence interests. But, even assuming that the disclosure requirement materially advances those interests, the disclosure requirement plausibly imposes an extra burden that unnecessarily chills protected speech.

The government cannot normally justify a speech restriction by reference to its interest in deterring crime. "The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it" rather than by regulating speech. *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001); *see Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U.S. 684, 689 (1959) ("Among free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law, not abridgment of the rights of free speech.") (quoting *Whitney v. California*, 274 U.S. 357, 378 (1927) (Brandeis, J., concurring)); *see also Packingham*, 137

S. Ct. at 1737 (majority opinion) (explaining that "narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor ... must be the State's first resort to ward off the serious harm that sexual crimes inflict"). To show that the disclosure requirement is narrowly tailored, the government must explain why criminal sanctions that do not implicate the First Amendment would not provide adequate deterrence. *Cf. Safelite*, 764 F.3d at 266 (explaining that intermediate scrutiny is not satisfied when an "alternative proposal[] ... would have served the same governmental interests, but would have been less burdensome on [the plaintiff's] speech rights"). It has not done so.[8]

Even if the government had, Cornelio argues, the breadth of the disclosure requirement provides another reason to doubt that it is narrowly tailored. Registered sex offenders must disclose their "electronic mail address, instant message address or other similar Internet communication identifier." Conn. Gen. Stat. § 54-253(b). Cornelio argues that the catch-all phrase "Internet communication identifier" broadens the disclosure requirement to internet platforms with "any information input," such as "Pacer and bank accounts." Appellant's Br. 16. In response, the government provides a narrower construction: the phrase "Internet communication identifier" limits

---

[8] At oral argument, counsel for the government said that the laws criminalizing illicit online conduct "should serve as deterrent, but clearly there are individuals out there who, despite the criminal laws being in place, are still recruiting and grooming individuals online, so it's important for the government to have this additional deterrent." Oral Argument Audio Recording at 9:19. That sidesteps the question of whether sanctions that do not implicate speech could provide adequate deterrence.

20

the disclosure requirement to platforms that can be used to communicate with others online. Appellees' Br. 36-37. In other words, the disclosure requirement applies to internet platforms "that … allow back-and-forth comments between users." *Packingham*, 137 S. Ct. at 1741 (Alito, J., concurring in the judgment).

At the motion to dismiss stage, we cannot say that Cornelio does not plausibly allege that the disclosure requirement is overbroad. Many platforms that allow communications between users do not reasonably present a vehicle by which a sex offender can communicate with minors or exchange prohibited sexual materials.[9] "Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *Edenfield*, 507 U.S. at 777 (quoting *Button*, 371 U.S. at 438). Perhaps the statute may be construed more narrowly than the government suggests on appeal. But we "need not decide the precise scope of the statute" to conclude

---

[9] *See White v. Baker*, 696 F. Supp. 2d 1289, 1310 (N.D. Ga. 2010) ("In the Court's experience, these communications are those that occur privately in direct email transmissions, usually using a pseudonym, and in instant messages. They generally do not occur in communications that are posted publicly on sites dedicated to discussion of public, political, and social issues."); *see also Packingham*, 137 S. Ct. at 1741 (Alito, J., concurring in the judgment) ("The fatal problem for [a law] is that its wide sweep precludes access to a large number of websites that are most unlikely to facilitate the commission of a sex crime against a child."); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 122 n.* (1991) ("A regulation is not narrowly tailored—even under the more lenient tailoring standards applied in *Ward* and *Renton*—where … a substantial portion of the burden on speech does not serve to advance the State's content-neutral goals.") (internal quotation marks and alteration omitted).

21

that Cornelio states a claim. *Packingham*, 137 S. Ct. at 1737 (majority opinion).

The disclosure requirement also plausibly appears to be overbroad because it applies to all persons subject to the sex offender registration law, including registrants who have never engaged in the sort of illicit online activity that the government seeks to deter. *See* Conn. Gen. Stat. §§ 54-251 to -252. If the disclosure requirement applies to a broad class beyond those who are likely to engage in the conduct the government seeks to deter, it would be "significantly overinclusive" rather than narrowly tailored. *Simon & Schuster*, 502 U.S. at 121. The government has not explained why the disclosure requirement cannot be more narrowly targeted.[10] As other courts have noted, "[a] regulatory scheme designed to further the state's legitimate interest in protecting children from communication enticing them into illegal sexual activity should consider how and where on the internet such communication occurs." *White*, 696 F. Supp. 2d at 1309. To show narrow tailoring, the government must demonstrate that a less burdensome alternative—requiring disclosure only for those online platforms that facilitate solicitation or the exchange of illicit material, for example, or only for those persons likely to engage in such conduct—would not advance the asserted governmental interests.

The government argues that the disclosure requirement is narrowly tailored because, under the registration statute, the DESPP

---

[10] The government acknowledges that it lacks information about the proportion of registrants who have engaged in internet-related conduct and therefore might be likely to engage in such conduct again. *See* Oral Argument Audio Recording at 15:38.

22

may share a registrant's internet communication identifiers only with "law enforcement officials" and only for the "purpose of investigating potential crimes." Appellees' Br. 35. As a result, a registrant can "participate in anonymous speech online" as long as he does not engage in unlawful activity that could "engender a law enforcement investigation." *Id.* This argument does not answer the narrow tailoring inquiry, which focuses on "the extent to which the burdens are unnecessary." *Ams. for Prosperity*, 141 S. Ct. at 2385. It helps the government's case if the disclosure requirement does not compound the burden on speech by releasing a registrant's identifiers to the public. But the government must still justify the burden that exists. "There is no *de minimis* exception for a speech restriction that lacks sufficient tailoring or justification." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 567 (2001).

To the extent the government argues that a required disclosure to the government rather than to the public will necessarily survive intermediate scrutiny, it is mistaken. A disclosure requirement may violate the First Amendment "even if there is no disclosure to the general public." *Ams. for Prosperity*, 141 S. Ct. at 2388 (alterations omitted) (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)). "[A]ssurances of confidentiality may reduce the burden of disclosure" but "do not eliminate it." *Id.*

Even putting that aside, moreover, the government's insistence that disclosure is limited to law enforcement personnel does not appear to be consistent with the statutory text. The statute contemplates sharing the identifiers with third parties when it authorizes the DESPP to "adopt regulations … to specify the circumstances under which and the persons to whom such identifiers may be released including, but not limited to, providers of electronic

23

communication service or remote computing service … and operators of Internet web sites." Conn. Gen. Stat. § 54-258(a)(5). A separate provision that addresses "the identity of any victim of a crime committed by a registrant" expressly limits disclosure to "government agencies." *Id.* § 54-258(a)(3). The disclosure requirement does not contain such a limitation for internet identifiers.

The text also provides reason to doubt that the identifiers may be released only for "investigating potential crimes." Appellees' Br. 35. The statute allows disclosure not only for "law enforcement" but also for "security purposes." Conn. Gen. Stat. § 54-258(a)(5). This language could encompass not only the investigation of crimes that have occurred but also the prevention of conduct deemed to be unsafe. *See, e.g.*, *White*, 696 F. Supp. 2d at 1310 (recognizing that a similar phrase could mean the "investigation of suspected or identified criminal conduct," "the development of investigative leads," or "any purpose determined appropriate by law enforcement personnel to prevent criminal conduct"). For this reason, the statutory phrase "law enforcement and security purposes" may not be "readily susceptible" to a limiting construction that would confine its application to the investigation of past crimes. *Reno*, 521 U.S. at 884.[11]

---

[11]  As a result, we think that *Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir. 2010), is inapposite to this case. In *Shurtleff*, the Tenth Circuit upheld Utah's sex offender registration law against a First Amendment challenge. *Id.* at 1223-26. The Utah law required sex offenders to register their "internet identifiers" with the state. *Id.* This information was not to be "made available" on the registration website, but it could be "share[d] … to assist in investigating kidnapping and sex-related crimes." Utah Code § 77-27-21.5(2) (West 2010) (repealed 2012). The Tenth Circuit held that the "broader statutory context, as well as the limited law-enforcement purposes for which internet identifiers may be 'shared'" meant that the statute was

In sum, the disclosure requirement plausibly fails intermediate scrutiny because it may not materially advance the asserted interest in deterrence and that interest may be achieved through a more narrowly tailored alternative.

**3**

The district court purported to apply intermediate scrutiny in this case, but its analysis more closely resembled rational basis review. The government moved to dismiss Cornelio's First Amendment claim for lack of standing under Rule 12(b)(1) on the ground that Cornelio failed to allege a concrete injury. The government did not attempt to defend the disclosure requirement under intermediate scrutiny, and therefore the government did not assert that the disclosure requirement advances any governmental interest or that it was narrowly tailored to that interest. Rather, the district court supplied the reasons for why it thought the disclosure requirement survived intermediate scrutiny. But "[u]nlike rational-basis review," intermediate scrutiny does not permit a court to "supplant the precise interests put forward by the State with other suppositions." *Edenfield*, 507 U.S. at 768. It is the government's burden

---

"readily susceptible of a much narrower construction" than advanced by the plaintiff. *Shurtleff*, 628 F.3d at 1224. The court read the statute "as permitting sharing only among law-enforcement agencies … and only for the recited law-enforcement purposes." *Id.* at 1225. The court thought the language "to assist in investigating kidnapping and sex-related crimes" was in turn also "readily susceptible" to a narrowing construction, "only allowing state actors to look beyond the anonymity surrounding a username in the course of an investigation after a new crime had been committed." *Id.* The Connecticut statute is materially different. Facially, the statute does not permit sharing "only among law-enforcement agencies" or only once a crime has been committed.

to demonstrate that the challenged law furthers important governmental interests and is narrowly tailored. If the government fails to make that showing, it cannot prevail. The district court cannot supply a justification that the government fails to provide. *See Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1314 (11th Cir. 2017) (*en banc*) ("Under heightened scrutiny …, a court may not come up with hypothetical interests and rationales (or discover new evidence) that might support legislation that restricts speech.").

The district court's approach conflicts with the mandate that intermediate scrutiny must remain "sufficiently skeptical and probing" of the government's arguments "to provide the rigorous protection that constitutional rights deserve." *Ramos v. Town of Vernon*, 353 F.3d 171, 181 (2d Cir. 2003). Once it is apparent that heightened scrutiny applies, the government cannot be excused from the obligation to identify evidence that supports its restriction of a constitutional right. *Turner I*, 512 U.S. at 666; *Craig v. Boren*, 429 U.S. 190, 204 (1976) (requiring a "showing" that the government's policy "represents a legitimate, accurate" route to its end); *see also United States v. Virginia*, 518 U.S. 515, 541-44 (1996) (evaluating such a showing). When a court "simply accepts the government's assertions," let alone when it excuses the government from even making assertions, "the court undermines the protections of the [First] Amendment … by watering down the intermediate scrutiny the court purportedly applies to the challenged restriction into a form of rational basis review." *Perez*, 6 F.4th at 457-59 (Menashi, J., concurring in the judgment).

26

## II

We next address Cornelio's claim that the residence verification provision, as applied to him, violates the Ex Post Facto Clause. Article I of the Constitution provides that "[n]o State shall … pass any … ex post facto Law." U.S. Const., art. I, § 10, cl. 1. The Ex Post Facto Clause forbids, among other things, "legislative action that retroactively … makes more burdensome the punishment for a crime, after its commission." *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir. 1997) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)); *see also Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (noting that the Ex Post Facto Clause prohibits "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed"). A statute violates the Ex Post Facto Clause if it "increase[s] the punishment for a crime after it is committed." *Doe v. Cuomo*, 755 F.3d 105, 110 (2d Cir. 2014).

Cornelio argues that the residence verification provision is punitive. Yet his claim fails for the simple reason that the residence verification provision was in place well before Cornelio committed his crimes in 2003. *See* 1998 Conn. Legis. Serv. P.A. 98-111 (S.S.B. 65) § 8(b) (West). Because the residence verification provision has not been applied to Cornelio retroactively, the Ex Post Facto Clause is not implicated. *See Weaver v. Graham*, 450 U.S. 24, 30-31 (1981). We therefore affirm the district court's dismissal of Cornelio's Ex Post Facto Clause claim.[12]

---

[12] The district court also held that, to the extent Cornelio challenged the disclosure requirement under the Ex Post Facto Clause, that claim fails too. Cornelio abandoned any such claim on appeal, so we do not reach the issue of whether the district court properly dismissed the claim. *See United States*

### III

Finally, we address Cornelio's claim for malicious prosecution under the Fourth Amendment against Jeney. The district court concluded that this claim failed because Jeney is entitled to qualified immunity. We agree.

To state a § 1983 malicious prosecution claim a plaintiff "must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017) ("In defining the contours and prerequisites of a § 1983 claim, … courts are to look first to the common law of torts."). Under Connecticut law, a malicious prosecution claim requires proof that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Spak v. Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017) (quoting *Brooks v. Sweeney*, 9 A.3d 347, 357 (Conn. 2010)).

The existence of probable cause is a complete defense to a malicious prosecution claim. *See Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242-43 (2d Cir. 2020). But even when probable cause is lacking, a police officer is entitled to qualified immunity if "(1) her conduct does not violate clearly established statutory or constitutional rights of

---

*v. Quiroz*, 22 F.3d 489, 490 (2d Cir. 1994) ("It is well established that an argument not raised on appeal is deemed abandoned.") (internal quotation marks omitted).

which a reasonable person would have known, or (2) it was objectively reasonable for her to believe that her actions were lawful at the time of the challenged act." *Betts v. Shearman*, 751 F.3d 78, 82-83 (2d Cir. 2014) (internal quotation marks and alterations omitted). In the context of a malicious prosecution claim, an officer's decision to initiate a prosecution "is objectively reasonable … if officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotation marks omitted); *see also Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017); *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016).

In evaluating qualified immunity, "the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officer[] to believe that there was probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). This presumption may be overcome by showing that the warrant was based on misleading information or an affidavit with omissions that were necessary to a finding of probable cause. *Id.* at 870-71.

Jeney sought an arrest warrant based on Cornelio's alleged violation of the disclosure requirement. We have already concluded that Cornelio has stated a plausible claim that the disclosure requirement violates the First Amendment and that further proceedings on that claim are warranted. Even if Cornelio were ultimately to succeed on that claim, it would not affect Jeney's entitlement to qualified immunity. Whether the disclosure requirement violates the First Amendment was not "clearly established" at the time Jeney initiated the prosecution against

29

Cornelio—as it must have been to foreclose a defense of qualified immunity. *Travella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010).

We agree with the district court that Jeney had arguable probable cause to initiate the prosecution. Cornelio's arrest was made pursuant to a warrant issued by a state court judge, who found that the circumstances described in Jeney's affidavit provided probable cause to believe that Cornelio had violated the disclosure requirement. Because a "neutral magistrate" found that there was probable cause, it was presumptively "objectively reasonable" for Jeney to believe that such cause existed. *Golino*, 950 F.2d at 870.

Cornelio cannot overcome this presumption. He argues that the state court judge was not acting as a neutral magistrate. The same judge had dismissed a prior charge based on Cornelio's alleged failure to comply with the residence verification provision. Cornelio suggests that the judge "turned" a "blind eye" to Jeney's malicious intent because, when Cornelio had appeared to urge the dismissal of the earlier charge, Cornelio was "not as repentant or humbled as those who uphold the law might have expected." Appellant's Br. 11. That may or may not be so. But we presume that a judicial officer impartially executes his responsibilities, *see MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998) ("Judges … must be presumed, absent more, to be impartial."), and we require more than an alleged possible resentment to conclude otherwise.

Cornelio further argues that Jeney lacked arguable probable cause because Cornelio had complied with the disclosure requirement. He had used the AOL email address to communicate with the SORU, and he had displayed the AOL email address on a personal website that he registered with the SORU. To Cornelio, these

circumstances show that he was not concealing the AOL email address from the SORU and that he satisfied his obligation to disclose the AOL email address under § 54-253(b). That is entirely plausible, and perhaps this argument may have led to the dismissal of the charge against Cornelio. But we agree with the district court that an objectively reasonable police officer could have understood the disclosure requirement to mandate that Cornelio report his email address in a direct and formal way. The statute requires a registrant to "*notify* the Commissioner of Emergency Services and Public Protection in writing of [a new] identifier," Conn. Gen. Stat. § 54-253(b) (emphasis added), as part of the obligation to "register" any internet identifier "with the Commissioner of Emergency Services and Public Protection, on such forms and in such locations as said commissioner shall direct," *id.* § 54-251(a). These provisions at least arguably required Cornelio to include the AOL email address on the quarterly verification forms he received or to provide the SORU with an official notice when he created the new email address. Under this interpretation, Cornelio's emails to the SORU did not satisfy the disclosure requirement because those emails disclosed Cornelio's email address only implicitly while addressing other matters.[13]

Though we conclude that Jeney had arguable probable cause and therefore qualified immunity for her actions in this case, we note that Cornelio plausibly alleges that the prosecution was motivated by malice. The underlying arrest in this case is not the first time Cornelio was arrested for a trivial reporting infraction. *See Cornelio*, 2020 WL

---

[13]  Before the district court, Cornelio argued that false statements in Jeney's affidavit negate the finding of probable cause. Cornelio appears to abandon this argument on appeal, however, so we do not consider it. *See City of Syracuse v. Onondaga County*, 464 F.3d 297, 308 (2d Cir. 2006).

7043268, at *5-6. The history between Cornelio and the SORU suggests a possible motivation to harass him. *See Spak*, 857 F.3d at 461 n.1; *see also Owens v. Downey*, 150 F. Supp. 3d 1008, 1028 (S.D. Ind. 2015) (inferring malice from a "history of animosity" toward the plaintiff). Nevertheless, an officer cannot be liable for a vexatious motivation as long as she acts with arguable probable cause.

## CONCLUSION

We reverse the district court's dismissal of Cornelio's First Amendment claim and affirm the district court's dismissal of his Ex Post Facto Clause and malicious prosecution claims. We remand for further proceedings consistent with this opinion.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

32