| | | |
|---|---|---|
| JAMES P. CORNELIO,<br>    *Plaintiff,* | )<br>)<br>) | |
| v. | )<br>) | No. 3:19-cv-01240 (JAM) |
| STATE OF CONNECTICUT, ET<br>AL.,<br>    *Defendants*. | )<br>)<br>) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes now James P. Cornelio, by and through undersigned counsel, Plaintiff in the above-captioned case, and submits this Memorandum in Support of Plaintiff's Motion for Summary Judgment. The basis for Plaintiff's Motion is that there are no genuine issues of material fact and that Plaintiff is entitled to judgment as a matter of law.

### Introduction

After appeal, this action consists of a single claim – that Connecticut General Statutes §§ 54-251(a) and 54-253(b) are unconstitutionally overbroad in violation of the First and Fourteenth Amendments to the United States Constitution. See generally Cornelio v. Connecticut, 32 F.4th 160, 166 (2022). Specifically, this action brings a facial challenge to the provisions of those statutes that require Plaintiff to disclose to government authorities any

1

existing, new, or changed "electronic mail address, instant message address, or other similar Internet identifier." See Conn. Gen. Stats. §§ 54-251(a) and 54-253(b).

As a matter of law, this disclosure requirement "burdens protected speech and therefore triggers heightened scrutiny." Cornelio, 32 F.4th at 169. Thus, before the Court now are two questions: 1) What is the appropriate standard of review? and 2) Have Defendants met their burden of demonstrating that the disclosure requirement meets that standard? See Cornelio, 32 F.4th at 172, 177. To answer these questions, this memorandum examines first the scope of the disclosure requirement, then the standard of review applicable to such disclosure requirements, and finally whether the government has met its burden of demonstrating that the disclosure requirement meets this standard of review.

### Scope of the Disclosure Requirement

For persons convicted in Connecticut, Connecticut state law mandates sex offender registration upon conviction for three statutorily defined categories of offenses: 1) "criminal offense[s] against a victim who is a minor;" 2) "nonviolent sexual offense[s];" and 3) "sexually violent offense[s]." Conn. Gen. Stats. §§ 54-250(1), (5), and (11); 54-251(a); 54-252(a). In addition, under Connecticut law, the court may require registration upon conviction of any felony upon finding that the felony was "committed for a sexual purpose."

Conn. Gen. Stat. § 54-254(a). Conn. Gen. Stat. § 54-251 sets forth registration requirements for persons convicted of a "criminal offense against a victim who is a minor" or a "nonviolent sexual offense" and § 54-252 covers registration of person convicted of a "sexually violent" offense.[1] These categories include non-felony offenses (e.g., misdemeanor sexual assault [Conn. Gen. Stat. § 53a-73a]); "status" offenses (e.g., incest [Conn. Gen. Stat. § 53a-72a]); and offenses not requiring interaction or communication with the victim (e.g., voyeurism [Conn. Gen. Stat. § 53a-189(a)(2)-(4)]). Only one such offense necessarily involves use of a computer. See Conn. Gen. Stat. § 53a-90a (Enticing a Minor).

Whether registered under § 54-251, § 54-252, or § 54-254, as part of the registration process, registrants are required to provide Connecticut state officials with their "electronic mail address, instant message address, or other similar Internet communication identifier" and to notify the Commissioner of the Department of Emergency Services and Public Protection (DESPP) in writing when they "establish[] or change[]" any such identifier (the "disclosure requirement"). Conn. Gen. Stats. §§ 54-251(a), 54-252(a), 54-254(a).

---

[1] Most "sexually violent offenses," when committed against a minor, are separately classified as "criminal offenses against a victim who is a minor. Compare Conn. Gen. Stat. § 54-250(11) with Conn. Gen. Stat. § 54-250(2).

Connecticut General Statute § 54-253, makes the disclosure requirement applicable to persons, like Plaintiff, who were convicted in another jurisdiction but are now required to register in Connecticut. Thus, the disclosure requirement applies to any person required to register under Connecticut state law. Failure to disclose Internet identifiers is a Class D felony punishable by up to five (5) years in prison and a $5,000 fine. Conn. Gen. Stat. §§ 54-251(e), 54-252(d), 54-253(e), 54-254(b), 53a-35a, 53a-41.

The statutes specifically require disclosure of "email address[es]" and "instant message addresses." Conn. Gen. Stats. §§ 54-251, -252, and -253. In addition, registrants must disclose any "similar Internet identifier." While the statute does not define this phrase nor provide any examples to clarify, the State has previously argued that the statute would apply to any personal identifier used on "platforms that can be used to communicate with others online." See Cornelio, 32 F.4th at 175. Thus, even under the State's construction, the disclosure requirement applies to any identifier used on a communication platform "that . . . allows back-and-forth comments between users." Id. (quoting Packingham v. North Carolina, 137 S.Ct. 1730, 1741 (2017) (Alito, J., concurring in the judgment)).[2]

---

[2] A limiting construction of the statute excluding "social networking" platforms would be contrary to the text, history, and purpose of the statute as well as the State's historical practice. In the rare instances in which the State has sought to enforce the statute, it has cited unreported social media account identifiers as the basis for enforcement. See D.E. 60 (Statement of

While the Internet identifiers disclosed are not public records, Conn. Gen. Stat. § 54-258(5) allows disclosure to third parties for "law enforcement or security purposes." The text further makes clear that this includes disclosure to non-governmental entities "including, <u>but not limited to</u>, providers of electronic communication service or remote computing service . . . and operators of Internet web sites." <u>Id.</u> (emphasis added).

On its face, the text does not limit disclosure to the investigation of past crimes but allows it for any "law enforcement <u>or</u> security purpose" (emphasis added). The use of the disjunctive "or" indicates that the words so connected have separate meanings. <u>Loughrin v. United States</u>, 573 U.S. 351, 357-358 (2014). "Law enforcement purpose" standing alone encompasses "any action deemed appropriate by law enforcement agencies to prevent criminal conduct." <u>See</u> <u>Cornelio</u>, 32 F.4th at 176 (quoting <u>White v. Baker</u>, 696 F. Supp. 2d 1289, 1310 (N.D. Ga. 2010)). "Security purpose" is even broader, encompassing any action deemed appropriate to enhance public safety – whether or not the perceived danger would amount to criminal conduct. <u>See</u> <u>Security</u>, Webster's Third New International Dictionary (2002) (defining

---

Undisputed Material Facts) (Exhibit 5) (Records of Enforcement) (all instances identified by Defendants in which the State has enforced the challenged statute). This is consistent with that portion of the statute that contemplates information sharing with any "operator of an Internet website" (Conn. Gen. Stat. § 54-258(a)(5)) as well as the history and purpose of the statute discussed <u>infra</u>.

"security" as "freedom from danger: safety"). If the word "security" is narrowed in the statute to encompass only the prevention of "criminal" conduct, it becomes redundant with "law enforcement," violating the basic grammatical structure of the statute as well as the "cardinal rule" of statutory interpretation that courts "must give effect, if possible, to every clause and word of a statute." <u>Loughrin</u>, 573 U.S. at 358.[3] In addition, though § 54-258 expressly directs DESPP to adopt regulations specifying "the circumstances under which and the persons to whom" a registrant's Internet identifiers may be disclosed, now, more than fifteen (15) years later, DESPP has not done so. <u>See</u> 2007 Conn. Acts 07-4 § 96 (June Spec. Sess.) (noting date statute was enacted). There are no regulations or other guidance limiting disclosures to third-parties or otherwise.

In sum, the statute requires registrants, regardless of whether their predicate offense involved a minor and regardless of whether it was facilitated by use of a computer, to divulge all Internet communication

---

[3] As discussed <u>infra</u>, the language of § 54-258 concerning disclosure to Internet service providers and web site operators is related to the purpose of the statute. In passing the statutes challenged here, the legislature specifically contemplated that the information collected would be shared with internet service providers in order to prevent registrants from using social media. That is, the <u>purpose</u> of the statute is to allow disclosure to non-governmental agencies for the purpose of preventing communications regardless of whether such communications amount to criminal activity. The text of the statute is even broader though, specifically authorizing disclosure to third parties outside this purpose.

identifiers to state officials. These state officials then have broad discretion

(and no regulation or guidance constraining that discretion) to release the

information for any "law enforcement" or "security" purpose – including

release to non-governmental third parties.

## Standard of Review

The disclosure requirement largely strips registrants of their right to

anonymous speech on the Internet and creates a chilling effect on the

exercise of free speech rights. Cornelio, 32 F.4th at 169-70.[4] It is thus subject

to heightened scrutiny. Id. at 169.

While true that most courts examining Internet identifier disclosure

requirements have applied "intermediate" scrutiny, those courts have

invariably limited their analysis to pointing out that disclosure requirements

are "content-neutral" – that is, the disclosure requirements make no

reference to the content of the speech sought to be made anonymously. See,

---

[4] The potential for governmental misuse of information collected by the disclosure requirement is illustrated by the present case, in which the record strongly suggests that Plaintiff's prosecution under the challenged statutes was in retaliation for the exercise of his right to bring forth lawful complaints regarding the administration of Connecticut's sex offender registry. See Cornelio v. Connecticut, Case No. 3:19-cv-01240, 2020 U.S. Dist. LEXIS at **13-15, 2020 WL 7043268 (D. Conn. Nov. 30, 2020) reversed in part on other grounds by Cornelio, 32 F.4th at 166. The distance between malicious prosecution under the guise of the challenged law and malicious prosecution or other improper government action utilizing the information gathered under the challenged law is far too close for constitutional comfort.

7

e.g., <u>Doe v. Harris</u>, 772 F.3d 563, 575 (9th Cir. 2014). However, this limited analysis ignores the Supreme Court's jurisprudence specific to anonymous speech.

The right to anonymity in speech is a "historic weapon in the defense of liberty." <u>Talley v. California</u>, 362 U.S. 60, 62 (1960). As such, the Supreme Court has consistently struck down disclosure requirements when not strictly limited to speech implicating the targeted evil. This is to protect speakers from "identification and fear of reprisal [that] might deter perfectly peaceful discussion of public matters of importance." <u>See</u> <u>id.</u> (collecting cases). As noted above, the underlying facts of this case highlight the government's willingness to target individuals for expressing legitimate views.

<u>Talley</u> and related cases are not in tension with the Supreme Court's other First Amendment jurisprudence. The lesser standard of scrutiny applied to "content-neutral time, place, and manner restrictions" is required by the necessity of balancing competing, incompatible interests – especially in the administration of public fora. <u>See, e.g.</u>, <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 115-116 (1972) (giving examples). But the right to anonymity does not butt up against valid, competing rights of others in ways that require a more lenient constitutional review.

Courts looking at sex offender-specific disclosure requirements have also tended to ignore the prohibition on <u>speaker</u>-based regulations of speech.

See, e.g., <u>Doe v. Shurtleff</u>, 628 F.3d 1217, 1223-24 (10th Cir. 2010). When the government targets certain speakers, it "commit[s] a constitutional wrong" that is "quite apart from the purpose or effect of regulating conduct." <u>Citizens United v. FEC</u>, 558 U.S. 310, 341 (2014) ("The First Amendment protects speech <u>and</u> speaker, and the ideas that flow from each.") (emphasis added). Thus, restrictions placed only on a certain group of persons have been upheld only when necessary to allow governmental entities to perform their functions. <u>Id.</u> To deny the right to anonymity is to deny the disfavored group equal footing in the sphere of public discourse.

<u>Citizens United</u> does not rest of the supposition that the burden placed on corporate speakers may be a hidden means of viewpoint expression. <u>See</u> 558. U.S. at 340-41. It is enough that the regulation burdens some speakers but not others and is not justified by the necessity of the regulation in order to perform governmental functions. <u>See id.</u>[5]

---

[5] While the <u>Harris</u> court did consider that sex offender-specific disclosure requirements were speaker-based in finding the statute at issue in that case subject to intermediate scrutiny, it did not read <u>Citizens United</u> properly. 772 F.3d at 575. In <u>Turner Broad. Sys. v. FCC</u>, 512 U.S. 622 (1994), the Court suggested that a speaker-based distinction was acceptable if not, <u>in fact</u>, a subterfuge for content-discrimination. However, in <u>Citizens United</u> the Court clarified that speaker-based distinctions are acceptable only in those cases (such as <u>Turner</u>) where the speaker-based classification is necessary to allow governmental entities to perform their functions. There is no "underlying purpose" analysis when determining the standard of review applicable to statutes that expressly burden only a certain category of speakers. <u>See</u> 558 U.S. at 341.

The appropriate standard of review for a statute that <u>both</u> strips the right to anonymity <u>and</u> is directed only at a specific (particularly disfavored) class of persons is strict scrutiny. Under this standard, the Government must prove that the challenged regulation is the least restrictive means of achieving a compelling state interest. <u>McCullen v. Coakley</u>, 573 U.S. 464, 478 (2014).

Even under "intermediate scrutiny" it is still the Government's burden to adduce evidence showing that the challenged law "(1) advances important governmental interests unrelated to the suppression of free speech and (2) does not burden substantially more speech than necessary to further those interests." <u>Cornelio</u>, 32 F.4th at 171 (internal quotation omitted). These two showings are independent, and both must be made. <u>See</u> <u>id.</u> at 171-72.

To establish that the challenged law advances important governmental interests, the Government must demonstrate that "the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." <u>Id.</u> (quoting <u>Turner Broad. Sys. v. FCC (Turner I)</u>, 512 U.S. 622, 644 (1994)). That is, the government must identify actual evidence, or at the very least sound reasoning <u>based on</u> substantial evidence – that the regulation in fact serves the purported interest. <u>Id.</u>

To establish that the challenged law does not burden substantially more speech than is necessary, the Government "'must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interest, not simply that the chosen route is easier.'" Id. (quoting McCullen v. Coakley, 573 U.S. 464, 495 (2014)).

As shown below, the Government has failed to adduce evidence sufficient to meet either prong of intermediate scrutiny. As the Government cannot meet the standard for intermediate scrutiny, it cannot meet the standard for strict scrutiny.

## Argument

Defendants assert that the governmental interest at stake is "to prevent crime and to protect Connecticut's citizens, particularly children, from sex offenders, to stop sex offenders from engaging in grooming behavior over the Internet and/or assuming false identities over the Internet in order to facilitate crime or the victimization of people" (D.E. 60 (Exhibit 3) (Int. 1)), but they have provided no evidence that the statute actually advances those interests.[6]

There is no evidence that the disclosure requirement materially

---

[6] During the course of this litigation, Defendants' formulation of the interest to be advanced by the disclosure requirement has varied. Compare Cornelio, 32 F.4th at 173 (Defendants argue that the interest is "deterrence") with D.E. 60 (Exhibit 3) (Int. 1).

11

provides deterrence, that information collected pursuant to the statute has been used to identify the perpetrator of a crime, that information collected has assisted in the investigation of a crime, or that it has prevented the commission of a crime. See Cornelio, 32 F.4th at 172-73 (noting "[t]here would be a dramatic mismatch between the asserted interest and the disclosure regime that the government has implemented in service of that end if there was not a single concrete instance in which the database did anything to advance the government's investigative, regulatory, or enforcement efforts.") (internal quotation and citation omitted).

Nor, even if there were, have Defendants made any showing that the statute is "narrowly tailored" to serve those interests. As the Second Circuit has found "[t]he government cannot normally justify speech restriction by reference to its interest in deterring crime. The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it rather than by regulating speech." Cornelio, 32 F.4th at 174 (citing Bartnicki v. Vopper, 532 U.S. 514, 529 (2001)) (quotation omitted). A speech restriction is only justified when "criminal sanctions that do not implicate the First Amendment would not provide adequate deterrence." Id.

Connecticut already has a law specifically against using the Internet to "knowingly persuade, induce, entice, or coerce [any minor] . . . to engage in prostitution or sexual activity for which the actor may be charged with a

12

criminal offense." Conn. Gen. Stat. § 53a-90a. Violation of this statute is a Class D felony or, if the victim is under 13, a Class B felony. Id. Separately, Connecticut criminalizes attempts to commit crimes, defining an attempt as "intentionally do[ing] or omit[ting] to do anything which, under the circumstances as [the actor] believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Conn. Gen. Stat. 53a-49(a). In other words, Connecticut separately criminalizes the use of any Internet service to commit or attempt to commit any crime against a minor.

In this case, Defendants have offered no evidence that these criminal statutes do not adequately deter the conduct purported to be targeted by the statute. Nor is there reason to suppose that the disclosure requirement somehow provides "additional deterrence." See Cornelio, 32 F.4th at 173-74 (citing Doe v. Prosecutor, 705 F.3d 694, 701 (7th Cir. 2013)) (questioning whether, once sex offenders "are willing to break the existing anti-solicitation law," a law prohibiting the use of social networking would "provide any more deterrence."). It is implausible to think that a person willing to use the Internet to attempt to commit a crime against a child would not be willing to risk doing so under an unreported identifier.

Connecticut's disclosure requirement applies to all persons required to register as sex offenders – regardless of whether they have committed a crime

13

against a minor, are likely to commit a crime against a minor, and regardless of whether they used the Internet to facilitate their crime or are likely to do so in the future. Defendants have provided no evidence regarding the underlying recidivism rate of sexual offenders, what proportion of Connecticut sex offenders target minors, what proportion of offenders use a computer to facilitate crimes, or why the disclosure statute could not be tailored to the risk of future Internet crimes associated with given individuals. See Cornelio, 32 F.4th at 175 ("If the disclosure requirement applies to a broad class beyond those who are likely to engage in the conduct the government seeks to deter, it would be significantly overinclusive rather than narrowly tailored.") (quotation and citation omitted).

Finally, as shown above, the statute expressly provides for broad-based disclosure for widely defined purposes without any limiting regulation or guidance. See id. at 176 (citing Reno v. ACLU, 521 U.S. 844, 884 (1997)).

The interests asserted by Defendants during this litigation are either so abstract ("prevent crime") as to be effectively meaningless or are post-hoc rationalizations ("deterrence"). The actual purpose of the statute can be traced readily.

In late 2006, Sen. McCain introduced the Stop the Online Exploitation of our Children Act. S. 4089, 109th Cong. § 5 (2006) (D.E. 60 (Exhibit 4) (Federal Legislative Materials) (Bates Nos. 595 et seq.)). This was a federal

14

bill that would have required all convicted sex offenders to register "any e-mail address, instant message address, or other similar Internet identifier used by the sex offender to communicate over the Internet." <u>Id.</u> This information would then be provided to all online service providers with the requirement that they remove any "webpage hosted by that provider that is associated with any identifier disclosed under § 5. <u>Id.</u> § 7. This Bill, though never passed into law, was intended to prevent any convicted sex offender from utilizing social media.

Amid pushback to the provisions of S. 4089 forcing private companies to deny service to certain users, a separate bill, the Keeping the Internet Devoid of Sexual Predators (KIDS) Act, was introduced in January 2007. S. 431, 110th Cong. (D.E. 60 (Exhibit 4) (Bates Nos. 612 <u>et seq.</u>)) This Act required the U.S. Attorney General to "establish and maintain" a database of the "Internet identifiers" defined as "electronic email addresses and other designations used for self-identification or routing in Internet communications or posting." <u>Id.</u> at § 2(e)(2). The Attorney General would then provide Internet service providers access to a list of known Internet identifiers of sex offenders (which the service provider could then use to prohibit use of the system). <u>See</u> <u>id.</u> at § 3; <u>cf.</u> Report of the Senate Judiciary

Committee No. 110-332, 110th Cong. (2008) § 3(c)(5) and (6) (D.E. 60 (Exhibit 4) (Bates Nos. 619 et seq.)).[7]

The Connecticut statutes challenged here were introduced in early 2007 and use language lifted almost directly from S. 4089. Conn. H.B. No. 7085 §§ 2 - 6 (Jan. Sess. 2007) (requiring disclosure of "any email address, instant message address, or other similar Internet communication identifier") (D.E. 60 (Exhibit 2 (Bates Nos. 1-19)). The Connecticut Act then requires that "the Commissioner of Public Safety shall designate a sworn law enforcement officer to serve as a liaison between [DESPP] and providers of electronic communication services or remote computing services to facilitate the exchange of nonpersonally [sic] identifiable information concerning registrations." Id. § 10(b) (Bates No. 12). The Act goes on to say, "[w]henever such designated law enforcement officer ascertains from such exchange of

---

[7] The KIDS act as amended was passed into law in October, 2008. Under regulations promulgated by the Attorney General prior to passage of the KIDS Act, the existing federal requirement that a registrant provide their "name (including any alias used by the individual) was interpreted to include "remote communication identifiers" defined as "any monikers or designations used for self-identification in Internet communications or postings." Office of the Attorney Gen., The National Guidelines for Sex Offender Registration and Notification, 73 FR 38029, 38055 (July 2, 2008); see also 28 CFR § 72.6 (requiring disclosure of "remote communication identifiers"). Whether the database contemplated by the KIDS Act has been created and is in use is unknown. Of course, a federal law regarding disclosure of Internet identifiers does not affect the analysis of whether Connecticut's law meets constitutional standards or change the burden of proof placed upon Defendants here.

nonpersonally [sic] identifiable information that there are subscribers, customers or users of such providers who are registrants, such officer <u>shall</u> initiate a criminal investigation to determine if such registrants are in violation of the registration requirements of section 54-251, 54-252, 54-252 or 54-254 of the general statutes, as amended by this act, or of the terms and conditions of their parole or probation by virtue of being subscribers, customers or users of such providers." <u>Id.</u> § 10(c) (emphasis added) (Bates No. 12).

As explained by Rep. Lawlor in the Connecticut House of Representatives Session discussing H.B. No. 7085, the Act was intended to work as follows. <u>See generally</u> Conn. House Sess. Transcript for 05/24/2007 at **55-57 (D.E. 60 (Exhibit 2 (Bates No. 382 <u>et seq.</u>)). The operators of social networking sites would have access to these reported identifiers and keep "known sex offenders" off the site. <u>See id.</u> at *57. Concurrently, law enforcement officials would provide photos of known sex offenders which, by using facial recognition technology, the websites would seek to match with sex offenders using the site under undisclosed identifiers. <u>Id.</u> When the website found such a match, they would report it to local law enforcement which would then conduct an investigation that "would lead to the arrest of the offender for using an e-mail address and Internet identification which was not previously registered pursuant to the registry." <u>Id.</u>

17

The actual purpose of the disclosure requirement is not "deterrence" but to prevent all registered sex offenders from using social networking sites. Such a purpose is inimical to the values of the First Amendment. See generally Packingham, 137 S. Ct. at 1737 (striking down ban on sex offender use of social networking sites). As the Packingham Court notes, "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights. It is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences." Id.

Additionally, Connecticut has never taken the administrative steps necessary to fulfill this legislative scheme. No "liaison" has ever been appointed and no information shared with Internet service providers. No investigations have ever been conducted upon notice from a service provider that a sex offender was using the site – under an assumed identity or otherwise. Defendants can hardly claim that the challenged law is necessary when it has not even attempted to use the law for its intended purpose and there is no evidence that the law has otherwise increased public safety.

### Conclusion

Connecticut's disclosure requirements were not enacted to "deter" sex offenders from using the Internet to commit crimes – it was enacted as part of a broader legislative scheme to effectively prevent sex offenders from using

the Internet for any communicative purpose. Beyond the questions whether the requirements advance a legitimate state interest or burden substantially more speech than necessary to achieve that purpose, the purpose itself is inimical to the First Amendment.

As to those questions, the answers in this case are clear. There is no evidence, much less "substantial evidence," that the disclosure requirements do anything to prevent crime. Even if there were, there is no evidence that a less burdensome statute would not achieve the same goal. Without such evidence, the Government cannot meet its burden, and summary judgment is favor of Plaintiff is warranted.

WHEREFORE, Plaintiff respectfully requests the following relief:

1. That the Court issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that Conn. Gen. Stats. §§ 54-251(a) and 54-253(b) are overbroad in violation of the 1st and 14th Amendments to the United States Constitution in so far as they require persons subject to those statute to provide and update "electronic mail address[es], instant message address[es], or other similar Internet communication identifier[s]"; and

2. That the Court issue permanent injunction barring state officials from requiring persons to provide electronic mail addresses, instant message addresses, or other similar Internet communication identifiers pursuant to

§§ 54-251(a) or 54-253(b) and barring prosecution for failure to provide electronic mail addresses, instant message addresses, or other similar Internet communication identifiers under §§ 54-251(a) and 54-253(b).

3. For any and all such other relief as may be just and proper in this case.

Respectfully submitted this 20th day of February 2023.

/s/ *Paul M. Dubbeling*
Paul M. Dubbeling
P.M. Dubbeling, PLLC
210 North Columbia Street
Chapel Hill, NC 27514
Telephone: (919) 635-6005
Fax: (919) 404-7074
N.C. Bar No. 40714
Email: paul.dubbeling@pmdubbeling.com
*Admitted Pro Hac Vice*

## Certification

I hereby certify that on February 20, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties via the Court's CM/ECF system.

/s/ *Paul M. Dubbeling*
Paul M. Dubbeling