## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES P. CORNELIO,<br>    *Plaintiff,* | |
|     v. | No. 3:19-cv-1240 (JAM) |
| STATE OF CONNECTICUT *et al.*,<br>    *Defendants.* | |

## ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

Connecticut law requires convicted sex offenders who have been released to the community to disclose to the state police any and all of their email addresses, instant message addresses, or other similar Internet communication identifiers. *See* Conn. Gen. Stat. §§ 54-251(a), 54-253(b). The plaintiff James P. Cornelio claims that this disclosure requirement violates his right to free speech under the First Amendment. I agree.

To begin, even though the disclosure law does not outright bar Cornelio from speaking, it nonetheless burdens his right to free speech. By compelling him to disclose to the state police all of his email addresses, social media accounts, and any other Internet communication identifiers (such as the name he uses if he comments on an on-line news article), the law chills and inhibits his right to speak freely on the Internet and to do so anonymously if he wishes.

That is not to say that just because the disclosure law burdens free speech, then it must be unconstitutional. But it does mean that the State must justify the law. In particular, under well-established principles of First Amendment review, the State must show that the law advances an important government interest that is unrelated to the suppression of free speech. And it must also show that the law does not burden substantially more speech than necessary to further the government's interest.

The State has not done so. Although the State is right that it has an important government interest in detecting and deterring sex offenders from using the Internet to engage in crime, the State falls short in showing that compelling sex offenders to report all their Internet communication identifiers actually advances this interest.

Indeed, despite the fact that the disclosure law has been in place for more than 15 years, the State cannot point to a single example of when its database of sex offenders' email addresses and other Internet communication identifiers has helped the police detect or solve any crimes. And the State concedes that it has no evidence that requiring sex offenders to disclose their Internet communication identifiers deters them from using the Internet to commit more crimes. Moreover, even if I assumed that the State was able to show that the disclosure law advances an important government interest, the State nonetheless fails to show that the breadth of the disclosure law does not burden substantially more speech than necessary to further that interest.

Accordingly, I will grant Cornelio's motion for summary judgment and deny the State's cross-motion for summary judgment. I shall enter declaratory and injunctive relief in Cornelio's favor but decline his request to grant relief in favor of other sex offenders who are not parties before the Court.

## BACKGROUND

Since 1998 Connecticut has had a comprehensive sex offender registration law. *See* Conn. Gen. Stat. § 54-250 *et seq.*; *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4–5 (2003) (describing basic operation of law).[1] The law is administered by the Sex Offender Registry Unit of the Connecticut Department of Emergency Services and Public Protection ("DESPP").

---

[1] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

In 2005, plaintiff James P. Cornelio was convicted in New York State for one count of a criminal sexual act in the second degree (N.Y. Penal Law § 130.45) and for ten counts of possessing a sexual performance by a child (N.Y. Penal Law § 263.16).[2] Now as a current resident of Connecticut who has previously been convicted of a sex offense against a minor victim, Cornelio is subject to Connecticut's sex offender registration law.

This case stems from criminal charges that were filed in Connecticut against Cornelio because of his violation of one part of Connecticut's sex offender law. The Connecticut State Police arrested Cornelio in April 2018 for violating part of the law that was enacted in 2007 and requires sex offenders to notify the State of any email addresses or other identifiers that they use for Internet communications. *See Cornelio v. Connecticut*, 2020 WL 7043268, at *3 (D. Conn. 2020), *aff'd in part, rev'd in part and remanded*, 32 F.4th 160 (2d Cir. 2022).

In particular, Connecticut law requires sex offenders at the time of their registration as sex offenders to disclose to the Commissioner of DESPP their "electronic mail address, instant message address or other similar Internet communication identifier" on "such forms and in such locations as the commissioner shall direct." Conn. Gen. Stat. § 54-251(a).[3] The disclosure obligation is a continuing one: "[i]f any person who is subject to registration under this section establishes or changes an electronic mail address, instant message address or other similar Internet communication identifier, such person shall, without undue delay, notify the Commissioner of Emergency Services and Public Protection in writing of such identifier." *Id.* § 54-253(b); *see also id.* § 54-251(a) (same). A person who violates this disclosure requirement

---

[2] Doc. #65 at 2 (¶ 2); *In re Cornelio*, 811 N.Y.S.2d 380, 381 (2006).
[3] A separate statute—Conn. Gen. Stat. § 54-253(b)—incorporates this requirement for a sex offender like Cornelio who committed the qualifying sex offense in a jurisdiction other than Connecticut but who is subject to Connecticut's registration requirement.

"shall be guilty of a class D felony" if "such failure continues for five business days." *Id.* § 54-253(e).

The state police arrested Cornelio after he sent numerous emails to the state police's Sex Offender Registry Unit using an email address that he had not previously disclosed to the Unit as required by the law. *See Cornelio*, 2020 WL 7043268, at *2–3. But a state court judge soon dismissed the case against him in May 2018. *Id.* at *3.

Cornelio then filed a *pro se* federal lawsuit raising several constitutional challenges to Connecticut's sex offender registration law.[4] He named several defendants including the State of Connecticut, the commander of DESPP (Stavros Mellekas), a detective for the Connecticut State Police who had previously sworn out the arrest warrant against him (Detective Debbie Jeney), and other John/Jane Doe defendants.[5] In this ruling I refer to the defendants collectively as "the State."

Among Cornelio's constitutional challenges was a claim under the First Amendment. He alleged that the law's requirement that he disclose to the State his email addresses and other Internet communication identifiers violated his First Amendment right to free speech.[6]

I granted the State's motion to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The details of my ruling as well as the Second Circuit's later reversal of the ruling are important to an understanding of the parties' cross-motions for summary judgment in this case.

---

[4] Doc. #1 (complaint).

[5] *Id.* at 1. I take judicial notice that the Connecticut State Police is a division of DESPP that administers the Sex Offender Registry Unit and that Mellekas is the commander of the Connecticut State Police. *See* https://portal.ct.gov/DESPP/Division-of-State-Police/Home (last accessed Sept. 13, 2023).

[6] *Id.* at 17.

At the outset of my ruling, I noted that "Connecticut's disclosure requirement burdens Cornelio's right to free speech in the sense that it compels him to furnish information about himself to the government and inhibits to some degree the exercise of his right to engage in anonymous speech activities on the Internet." *Id.* at *8.

I further concluded that "because the burden imposed is content-neutral and not impermissibly speaker-based, Connecticut's disclosure requirement is not subject to strict scrutiny but instead to intermediate scrutiny." *Ibid.* "Under intermediate scrutiny, a statute or regulation will be upheld against First Amendment challenge if it '(1) advances important governmental interests unrelated to the suppression of free speech, and (2) does not burden substantially more speech than necessary to further those interests.'" *Ibid.* (quoting *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 160 (2d Cir. 2013)).

I then concluded that Connecticut's law survived intermediate scrutiny. As to the first prong of intermediate scrutiny, I ruled that "Connecticut has an important government interest in deterring convicted sex offenders from using the Internet in order to recruit, groom, entice, or otherwise engage in communications with potential or actual sex abuse victims as well as to engage in the distribution or exchange of prohibited sexual images." *Id.* at *9.

I explained that "[r]equiring sex offenders to disclose their email addresses or other Internet communication identifiers specifically serves the government's important interest in at least two ways." *Ibid.* The first was that it could help the State to *detect* and apprehend sex offenders who use the Internet to commit more crimes. "[I]n the event that law enforcement discovers sexual crimes involving Internet communications, they have a readily accessible database to search to potentially determine the true identity of the person engaged in unlawful activity." *Ibid.* The second was that it could *deter* sex offenders from using the Internet to

commit more sex crimes. "[I]f a sex offender registrant knows that his email address and other Internet communication identifiers are known to law enforcement authorities, he is more likely to have second thoughts about using the Internet to engage in more sex crimes." *Ibid.*

As to the second prong of intermediate scrutiny, I concluded that "Connecticut's requirement that a sex offender registrant disclose his email address and other Internet communication identifiers does not burden substantially more speech than necessary to further the government's important interests." *Ibid.* I explained that "Connecticut does not publicly disclose the email addresses and other Internet communication identifiers; instead, such information is not a 'public record' and is reserved solely 'for law enforcement or security purposes.'" *Ibid.* (citing Conn. Gen. Stat. § 54-258(a)(5)).

Cornelio appealed, and the Second Circuit reversed my dismissal of his First Amendment claim. *See Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022).[7] At the outset, the court of appeals agreed with me that the disclosure law burdened free speech. It did so because such a requirement "burdens a registrant's 'ability and willingness to speak on the Internet,'" because it "applies specifically to speakers engaged in online communication," and because "the disclosure requirement prevents a registrant from speaking anonymously." *Id.* at 169 (quoting *Doe v. Harris*, 772 F.3d 563, 572 (9th Cir. 2014)).

The court of appeals then assumed without deciding that intermediate scrutiny rather than strict scrutiny applies. *Id.* at 170–71. It went on to describe at some length what intermediate scrutiny requires and how I had misapplied these requirements.

As to the first prong of intermediate scrutiny (whether the law advances important government interests unrelated to suppressing free speech), the court of appeals made clear that

---

[7] The court of appeals affirmed aspects of my ruling involving Cornelio's other constitutional challenges that are not relevant here.

"the government 'must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.'" *Id.* at 171 (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994)). "When 'trenching on first amendment interests, even incidentally, the government must be able to adduce either empirical support or at least sound reasoning on behalf of its measures.'" *Ibid.* (quoting *Turner*, 512 U.S. at 666).

As to the second prong of intermediate scrutiny (whether the law burdens substantially more speech than necessary to further the government's interests), the court of appeals declared that "the government must demonstrate that the law is 'narrowly tailored' to serve the relevant interest." *Ibid.* (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989)). Although this "does not demand that the law follow the least restrictive means possible," still "'the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier.'" *Ibid.* (quoting *McCullen v. Coakley*, 573 U.S. 464, 495 (2014)).

All in all, the court of appeals stressed that intermediate scrutiny ordinarily requires the government to adduce some form of *evidence* in support of its arguments: "To satisfy intermediate scrutiny, the government must identify evidence—or, at least, provide 'sound reasoning' that 'draw[s] reasonable inferences based on substantial evidence'—that these two requirements are met." *Id.* at 172 (quoting *Turner*, 512 U.S. at 666).

The court of appeals noted the lack of evidence at the initial pleadings stage to support the government's burden as to the first prong of intermediate scrutiny. "With no evidence demonstrating that the disclosure requirement materially provides deterrence, the government

relies on two speculative propositions." The first is that "a registered sex offender is less likely to engage in sex-based crimes on the internet if he knows that law enforcement possesses his email address and other internet communication identifiers." The second is that "the disclosure requirement provides law enforcement with a database that can be used to determine the identity of someone engaged in online sex offenses." *Id.* at 173.

It noted, for example, that upon the development of a factual record, the government "may not be able to show that the database of internet identifiers has actually assisted law enforcement efforts to arrest online predators" and that "[t]here would be a 'dramatic mismatch' between the asserted interest and 'the disclosure regime that [the government] has implemented in service of that end' if 'there was not a single, concrete instance' in which the database 'did anything to advance the [government's] investigative, regulatory or enforcement efforts.'" *Id.* at 173–74 (quoting *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2386 (2021)). It added that "[t]he government may be able to identify some empirical basis for believing that the disclosure requirement materially advances an important governmental interest," but that "[a]t this stage, however, Cornelio has stated a plausible claim." *Id.* at 174.

In similar fashion, the court of appeals highlighted the lack of evidence to support the government's burden under the second prong of intermediate scrutiny. "To show that the disclosure requirement is narrowly tailored, the government must explain why criminal sanctions that do not implicate the First Amendment would not provide adequate deterrence." *Id.* at 174. "The disclosure requirement also plausibly appears to be overbroad because it applies to all persons subject to the sex offender registration law, including registrants who have never engaged in the sort of illicit online activity that the government seeks to deter." *Id.* at 175. "The

government has not explained why the disclosure requirement cannot be more narrowly targeted." *Ibid.*

The court of appeals faulted my ruling because it "purported to apply intermediate scrutiny in this case, but [with] analysis [that] more closely resembled rational basis review." *Id.* at 177. "The district court cannot supply a justification that the government fails to provide." *Ibid.* "Once it is apparent that heightened scrutiny applies, the government cannot be excused from the obligation to identify evidence that supports its restriction of a constitutional right." *Ibid.* "When a court simply accepts the government's assertions, let alone when it excuses the government from even making assertions, the court undermines the protections of the First Amendment by watering down the intermediate scrutiny the court purportedly applies to the challenged restriction into a form of rational basis review." *Ibid.*

Thus, the court of appeals reversed and remanded as to Cornelio's First Amendment claim. Cornelio has since been represented by counsel on remand who has taken the position that Cornelio "brings a facial and an as-applied challenge," seeking declaratory and injunctive relief but not money damages.[8]

In the meantime, the parties have had an opportunity to conduct discovery. They now cross-move for summary judgment.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on each party's summary judgment motion, the Court must

---

[8] Doc. #42 at 3.

view the facts in the light most favorable to the party who opposes the motion and then decide if

those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide

the case in favor of the opposing party. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57

(2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir.

2019).

### The Eleventh Amendment

As an initial matter, it is well settled that the Eleventh Amendment and related principles

of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits by

private citizens against the States, any state government entities, and any state government

officials in their official capacities. *See generally Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91

(2017); *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). On the other

hand, there is a well-recognized exception to Eleventh Amendment immunity that allows a

federal court to grant an order of prospective injunctive relief against a state official for an

ongoing violation of federal law. *See Virginia Office for Protection and Advocacy v. Stewart*,

563 U.S. 247, 255–56 (2011) (citing *Ex Parte Young*, 209 U.S. 123 (1908)); *Vega v. Semple*, 963

F.3d 259, 281 (2d Cir. 2020).

Here, however, I need not address the Eleventh Amendment because none of the State

defendants have raised it. "Unless the State raises the matter [of Eleventh Amendment

immunity], a court can ignore it." *Wisconsin Dept. of Corr. v. Schacht*, 524 U.S. 381, 389

(1998); *Donohue v. Cuomo*, 980 F.3d 53, 77 n.15 (2d Cir. 2020) (same).

### The First Amendment

The First Amendment protects against laws "abridging the freedom of speech." U.S.

CONST. AMEND. I. As the Second Circuit has already ruled in this case, the disclosure law

10

unquestionably burdens protected speech and is subject to heightened scrutiny. *See Cornelio*, 32 F.4th at 169–70. Although the State disputes that the disclosure law genuinely burdens speech, I am not at liberty to overrule the court of appeals.[9]

Therefore, the relevant inquiry at this time is whether the State can show that the disclosure law should survive heightened scrutiny. *See id.* at 170–71. Heightened scrutiny may mean the most demanding form of scrutiny—strict scrutiny—or a less demanding form of scrutiny—intermediate scrutiny. *Ibid.*

I first consider whether the disclosure law satisfies intermediate scrutiny.[10] Cornelio argues that there is no genuine issue of fact to support the State's two-part burden under intermediate scrutiny: (1) to show that the disclosure requirement advances important government interests unrelated to the suppression of free speech, and (2) to show that the

---

[9] The State, for example, claims that "the relevant statutes hardly touch on speech at all," Doc. #62-1 at 17, despite the fact that the court of appeals ruled that the disclosure law "burdens protected speech." *Cornelio*, 32 F.4th at 169. The State further argues that "the relevant statutes do not 'punish' speech at all, nor does it [sic] prohibit speech in any way" and that "there is nothing in this record that demonstrates that these provisions punish or restrict speech, whether from Plaintiff or anyone else." Doc. #62-1 at 8. But even if the disclosure law does not prohibit speech or was not intended to punish speech, it does not change the fact that "[b]ecause the disclosure requirement of § 54-253(b) risks chilling online speech, anonymous and otherwise, it is subject to heightened scrutiny under the First Amendment." *Cornelio*, 32 F.4th at 170.

[10] The State complains that Cornelio improperly seeks to pursue a facial overbreadth claim under the First Amendment. A facial overbreadth challenge allows a plaintiff to complain that a law burdens the speech of third parties not before the court, and it assumes that the law is constitutional as applied to the plaintiff party. *See United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019). According to the State, Cornelio cannot raise a facial overbreadth claim because he claims that the disclosure law is unconstitutional as applied to him. In response, Cornelio disclaims reliance on the overbreadth doctrine, insisting that he "is not suing to vindicate the rights of third parties, [but] he is suing to be relieved of his obligation to comply with the Internet disclosure requirements." Doc. #66 at 3. Indeed, the parties have filed a Rule 26(f) report making clear that Cornelio brings a "facial and an as-applied challenge" and that the defendants "deny that the challenged provisions of Connecticut state law violate the First and Fourteenth Amendment of the United States Constitution either on their face or as applied to Plaintiff." Doc. #42 at 3. I agree with Cornelio that he seeks to vindicate his own First Amendment rights and that he may properly invoke intermediate scrutiny to challenge the disclosure law, even though intermediate scrutiny inherently requires a court to consider overbreadth issues that go beyond how the law applies only to Cornelio in this case. *See generally* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1321-24 (2000) (explaining how "there is no single distinctive category of facial, as opposed to as-applied, litigation" but rather that "courts often engage in reasoning indicating that a statute is invalid in whole or in part, and not merely as applied" and that "[i]n this sense, facial challenges undoubtedly occur" but that "facial challenges and invalidations are best conceptualized as incidents or outgrowths of as-applied litigation").

disclosure requirement does not burden substantially more speech than necessary to further those interests. *See id.* at 172. I agree.

Start with whether there is a genuine issue of fact to show that the disclosure requirement advances an important government interest. The State points out the important government interest at stake: "[t]he State's interest here is to prevent crime and to protect Connecticut's citizens, particularly children, from sex offenders, to stop sex offenders from engaging in grooming behavior over the Internet and/or assuming false identities over the Internet in order to facilitate crime or the victimization of people."[11]

But the State falls well short of producing any evidence that the disclosure requirement *advances* this important government interest. After all, a mere disclosure requirement does not "prevent" or "stop" anything. It just requires the furnishing of information. The State's burden here is to make some evidence-based showing of a causal nexus between the disclosure requirement and the important government interest, *i.e.*, that requiring a sex offender like Cornelio to disclose his email addresses and other Internet communication identifiers actually prevents crime as the State suggests. *See id.* at 172 ("the government must identify evidence— or, at least, provide 'sound reasoning' that 'draw[s] reasonable inferences based on substantial evidence'") (quoting *Turner*, 512 U.S. at 666).

The State has not adduced any probative evidence on this causal nexus issue. Indeed, the State admits in its response to Cornelio's statement of material facts that it has "produced no

---

[11] Doc. #62-1 at 13. The court of appeals instructed that "[o]n remand, the district court should inquire into the actual purpose of the law." *Cornelio*, 32 F.4th at 173 n.5. I conclude from the text of the disclosure requirement and the legislative materials that the State's statement of its interest is consistent with the actual purpose of the law. *See* Doc. #60-2 at 374 (statements of Rep. Lawlor). Although Cornelio contends that the actual purpose of the law was to stop sex offenders from using social media at all, this claim is weakened by the lack of statutory text that bars sex offenders from accessing the Internet. In any event, whether the purpose of the law was what the State claims or what Cornelio claims would make no difference to the outcome of this ruling.

evidence showing that the disclosure requirement has any deterrent effect."[12] The State further admits that it "can cite no instance in which law enforcement officials were unable to apprehend an individual committing sexual crimes using Internet identifiers because they were unable to identify the person committing those crimes."[13]

These damning admissions easily compel the grant of summary judgment against the State. As the court of appeals noted, there would be a "'dramatic mismatch' between the asserted interest" of the government in deterring or solving crimes and the disclosure requirement "if 'there was not a single, concrete instance' in which the database [of sex offender email addresses and other Internet identifiers] 'did anything to advance the [government's] investigative, regulatory or enforcement efforts.'" *Id.* at 173–74 (quoting *Ams. for Prosperity Found.*, 141 S. Ct. at 2386).

This is not to suggest that the State has adduced no evidence at all. It has. It has furnished numerous examples of other sex offenders who have committed crimes. But the fact that some sex offenders commit more crimes—even if they use the Internet to commit more crimes—falls well short of showing that requiring a sex offender to disclose their Internet communication identifiers will either deter the sex offender from committing more crime or help law enforcement to detect or solve more crimes.

For example, the State highlights the case of Philip Michael Frost, who was previously convicted for possession of child pornography and who was arrested for failing to register

---

[12] Doc. #63-2 at 6 (¶ 25).

[13] *Id.* at 7 (¶ 30). The State was also asked by interrogatory to identify "any known instances in which the data collected pursuant to the requirement has resulted in the arrest and/or conviction of any person for any sexual offense" and "any known instances in which the data collected pursuant to the requirement has prevented the commission of any sexual offense." Doc. #60-3 at 5-6. Its response was to provide a cross-reference to a collection of investigative reports (Bates #715-729) that have been made part of the summary judgment record. *See* Doc. #60-5. A review of these reports reflects numerous instances where sex offenders have been alleged to have violated the disclosure law, but none of these reports reflect that "*the data collected*" pursuant to the disclosure requirement "resulted in the arrest and/or conviction of any person" or "prevented the commission of any sexual offense."

various social media sites with the State.[14] His search history on one of these unregistered social media accounts included the terms "I want to see a toddler get f***ed."[15] The underlying investigative report, however, shows that Frost's illicit on-line activity was discovered only because staff at a halfway house seized and searched a contraband phone in his possession.[16] And so it was not the disclosure law that helped law enforcement discover that Frost was using the Internet to attempt to commit more sex crimes. Nor obviously did the disclosure law deter Frost from trying to commit another sex crime.

The same problem afflicts the rest of the State's examples of other sex offenders. Although the State has submitted investigative reports for nine sex offenders who did not comply with the disclosure requirement and a few of whom also engaged in more sex crimes, nothing in these reports suggests that it was the disclosure law that helped to deter or solve any of these crimes.[17]

---

[14] Doc. #62-1 at 13.

[15] *Ibid.*

[16] Doc. #60-5 at 6.

[17] The record includes investigative reports of the Sex Offender Registration Unit concerning nine sex offenders who were found not to have complied with the Internet identifier disclosure requirements. *See* Doc. #60-5 at 1-2 (report for investigation of sex offender Jesse Wright stemming from seizure by probation officer of his phone that led to discovery that he was using Internet identifiers not disclosed to the State); *id.* at 3-4 (report for investigation of sex offender Robert L. DeMars stemming from tip from local police that DeMars was using a Facebook and email not disclosed to the State); *id.* at 5-6 (report for Philip Michael Frost stemming from parole officer's tip that Frost had been found in possession of a contraband phone at halfway house and that a search of the phone had disclosed his use of three social media accounts not disclosed to the State and suggesting Frost's use of the phone to seek out child pornography); *id.* at 7 (report for Ryan Kupstas stemming from tip from state parole officer that Kupstas was using alias-name Facebook and Instagram accounts not disclosed to the State); *id.* at 8-9 (report for Kenneth W. Hammonds stemming from tip from anonymous caller that Hammonds was using an alias-name Facebook account not disclosed to the State); *id.* at 10 (report for sex offender Richard J. Gschlecht stemming from information received from local police who arrested Gschlecht for child pornography and who learned from search of his computer that was seized at time of arrest that he was using three Internet identifiers not disclosed to the State); *id.* at 11 (report for Frederick Rodney Merrill stemming from Unit's visit to Merrill's home to conduct a report-of-residence-address compliance check and where Unit officers then saw a laptop and learned that Merrill was not only using a Gmail account not disclosed to the State but also had visited child pornography websites and had stored 357 images of suspected child pornography); *id.* at 12-13 (report for an anonymized sex offender stemming from local police tip that the anonymized sex offender was using an email and Facebook account not disclosed to the State); *id.* at 14-15 (report for Robert Suggs stemming from sex offender compliance check where detective learned from interview of Suggs that he was using several Internet identifiers not disclosed to the State).

Merely the fact that the State investigates or files charges against sex offenders who fail to comply with the disclosure law says nothing about whether the law itself advances an important government interest. Nor is it probative—as the State seems to suggest—that its investigations of potential disclosure law violations sometimes turn up evidence that a sex offender has committed more sex crimes.[18] That bootstrapping rationale would mean that the State could justify laws that burden speech simply by arguing that the investigations made possible by the speech-burdening law may sometimes flush out evidence of other crimes. But the relevant inquiry is whether *the law itself* advances an important government interest, not whether investigations of potential violations of an otherwise unconstitutional law have by happenstance ended up revealing more crimes that the government has an important interest in prosecuting.

The State also relies on legislative history to the extent that legislator statements reflect the purpose of the disclosure requirement to prevent sex offenders from using the Internet to commit more sex crimes.[19] But no one disputes the avowed purpose of the disclosure requirement when it was enacted in 2007. The relevant question now is whether the disclosure requirement actually advances those purposes. Despite more than 15 years in which the disclosure requirement has been in effect, the State has failed to show with any evidence that it does.

Because the disclosure law has been in effect since 2007, I have no occasion to consider how the State might discharge its evidentiary burden for challenges to newly enacted laws that

---

[18] Doc. #62-2  at 4 (¶ 20) ("[W]hile being investigated for violation of the provisions of the statutes that Plaintiff challenges, Merrill was found in possession of hundreds of images of child pornography."); *ibid.* (¶ 22) ("Gschlect was found in possession child pornography while also being investigated for failing to register internet identifiers.").
[19] Doc. #62-1 at 10 (citing legislator statements that the disclosure requirement would provide "a critical tool for our law enforcement community" given that "predators are able to engage in that grooming behavior over the Internet as opposed to in person" and that Internet sites "are being used in some cases by predators, often times posing as young people themselves, to attempt to meet up with young people and involve themselves in sexual misconduct"); *see also* Doc. #60-2 (legislative materials).

burden the First Amendment—a concern I raised with counsel at oral argument. For a newly

enacted law, it may be impossible for the State to adduce evidence of examples where the law

has actually advanced a government interest. But the State has other ways it could meet its

intermediate scrutiny burden. For example, it could point to testimony or other data that was

submitted to the legislature in support of the measure. Or it could adduce expert testimony to

substantiate its claim that the law over the course of time will actually advance an important

government interest.

Indeed, to the extent that the State in this case has failed to cite actual case examples

where the disclosure law deterred a sex offender or helped solve a crime, the State could have—

but did not—adduce expert testimony to show solid grounds to believe that sex offenders have

been or will be deterred from using the Internet to commit more crimes if they are required to

disclose all their Internet identifiers to the State. And such expert testimony could explain why

specific examples are not easy to identify or why there may be other limitations on the ability to

empirically measure the law's effectiveness.

The State has not only failed to show that the disclosure law advances an important

government interest but it has also failed to show that the disclosure law does not burden

substantially more speech than necessary. The court of appeals identified at least three ways that

the registration requirement is plausibly overbroad under the second prong of intermediate

scrutiny analysis.

First, it noted that the State does not explain why "criminal sanctions that do not

implicate the First Amendment would not provide adequate deterrence." *Id.* at 174. The State has

still not done so. It has failed to argue or show why it cannot deter sex offenders from engaging

in criminal use of the Internet without burdening their First Amendment rights with respect to on-line communications.

Second, the court of appeals raised a concern that the disclosure law would apply to identifiers on many on-line platforms that "do not reasonably present a vehicle by which a sex offender can communicate with minors or exchange prohibited sexual materials." *Id.* at 175 & n.9. After all, sexually predatory Internet communications are ordinarily "those that occur privately in direct email transmissions, usually using a pseudonym, and in instant messages," and they "generally do not occur in communications that are posted publicly on sites dedicated to discussion of public, political, and social issues." *White v. Baker*, 696 F. Supp. 2d 1289, 1310 (N.D. Ga. 2010).

According to the State, the disclosure law applies to any Internet "platforms that can be used to communicate with others online," which the court of appeals took to mean any Internet platforms that allow any "'back-and-forth comments between users.'" *Cornelio*, 32 F.4th at 174–75 (quoting *Packingham v. North Carolina*, 582 U.S. 98, 114 (2017) (Alito, J., concurring)). This breadth is clearly a problem for the State. It means that the disclosure law requires sex offenders not only to disclose their email addresses and social media identifiers but also to disclose how they identify themselves (whether by true name, nickname, or pseudonym) on a myriad of Internet platforms—such as Amazon.com, the Washington Post, and WebMD—that have comment functions which allow for back-and-forth exchanges between users. *See Packingham*, 582 U.S. at 115–16 (Alito, J., concurring) (discussing in detail how Amazon.com, news websites including the Washington Post, and WebMD allow for back-and-forth comments between users). The State makes no claim that sex offenders use such platforms to perpetrate

crime, and so the State fails to show that the disclosure law does not burden more speech than necessary.

Third, the court of appeals noted how "[t]he disclosure requirement also plausibly appears to be overbroad because it applies to all persons subject to the sex offender registration law, including registrants who have never engaged in the sort of illicit online activity that the government seeks to deter." 32 F.4th at 175. The State in this respect has failed to show why the disclosure law could not be more narrowly drawn—for example, to apply only to those whose prior convictions involved the use of the Internet to engage in sex crimes. And for Cornelio in particular, the State has not shown that his conviction in 2005 stemmed from any use of or communications over the Internet. The disclosure law therefore seems to "appl[y] to a broad class beyond those who are likely to engage in the conduct the government seeks to deter," making it "significantly overinclusive rather than narrowly targeted." *Id.* at 175 (citing *Simon & Schuster v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 121 (1991)).[20]

In short, I conclude that the State has failed to show a genuine fact issue to carry its burden under intermediate scrutiny. First, it fails to show that the disclosure law advances important governmental interests unrelated to the suppression of free speech. Second, it fails to show that the disclosure law does not burden substantially more speech than is necessary to advance its interests. Because the State does not carry its burden under intermediate scrutiny, there is no need for me to consider Cornelio's argument that a higher strict scrutiny standard should apply.

---

[20] As the court of appeals also noted, the text of the statute suggests that the disclosure law may unnecessarily burden speech by allowing Internet communication identifiers to be shared with third parties outside of law enforcement for "security purposes" not limited to the investigation of criminal activity. *See Cornelio*, 32 F.4th at 176. Although the parties debate to what extent such information could or would be shared with third parties, I need not resolve this issue in light of the other reasons set forth in this ruling for concluding that the State has not met its burden under intermediate scrutiny.

*Relief*

The next issue to address is what relief to grant. As noted above, Cornelio does not seek

money damages but seeks declaratory relief as well as injunctive relief, not only for himself but

for other sex offenders in Connecticut who are subject to the disclosure law.

A plaintiff who seeks declaratory or injunctive relief cannot rely on past injury but must

show a likelihood of injury in the future. *See Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir.

2021). Here, the parties have stipulated that "[t]he challenged statutes are currently enforced and

defendants have not disavowed the intent to enforce the challenged statutes," that Cornelio "is

currently subject to the challenged statutes," and that Cornelio "faces potential arrest and

prosecution for failure to abide by the challenged statutes."[21] Although Cornelio has not adduced

evidence about his specific intentions to create new email addresses, to create new social media

accounts, or to create new Internet communication identifiers in order to participate in

conversations on other Internet communication platforms, a fair reading of the record is that he

"has sufficiently demonstrated an intention to engage in a course of conduct implicated by the

First Amendment but arguably proscribed by a statute, and because there exists a credible threat

of prosecution, … [h]e has sufficiently established injury in fact" to allow for a grant of

prospective relief. *Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022).

Moreover, having been previously arrested for violating the disclosure law, he is

doubtlessly under a continuing chill from exercising his First Amendment rights because of the

State's avowed intention to continue enforcing the disclosure law. *See Brokamp v. James*, 66

F.4th 374, 386–89 (2d Cir. 2023) (where regulators told the plaintiff that she could not offer

counseling to patients in New York, mental health counselor's failure to apply for counseling

---

[21] Doc. #42 at 3.

license did not deprive her of standing to challenge New York's licensing requirement for out-of-state counselors).[22]

Starting with Cornelio's request for declaratory relief, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). I conclude that a grant of declaratory relief is appropriate: that the ongoing requirement of Conn. Gen. Stat. § 54-253(b) requiring Cornelio to disclose his Internet communication identifiers violates Cornelio's right to free speech under the First Amendment.

Turning to Cornelio's request for injunctive relief, a plaintiff seeking permanent injunctive relief must show (1) that he has suffered or will suffer an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that a remedy in equity is warranted by the balance of hardships between the plaintiff and defendant; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v MercExchange, LLC*, 547 U.S. 388, 391 (2006).

As to the first factor (irreparable injury), "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *New York Progress*

---

[22] Despite the fact that Cornelio has not attested to his specific intentions to establish a new email account or to establish more Internet communication identifiers, the State has not contested on summary judgment Cornelio's standing to pursue declaratory and injunctive relief. Its only standing argument was a narrow one with respect to its errant suggestion that Cornelio is seeking to represent the interests of others through a facial overbreadth claim. *See* Doc. #62-1 at 4-6. Of course, standing must be raised by the Court itself even if the parties do not do so. It seems obvious to me that Cornelio plans to open a new email account or to establish more Internet communication identifiers that he would be required to disclose, and I would re-open the pleadings and discovery to allow him to make a more specific record of his intention to do so if this issue were genuinely in dispute and an impediment to his standing to seek prospective relief. *See Chieftain Int'l (U.S.), Inc. v. Se. Offshore, Inc*., 553 F.3d 817, 820 (5th Cir. 2008) (discretion to re-open summary judgment record). That is to say, if the State now wishes for the very first time to pursue a challenge to Cornelio's standing to seek prospective relief, it may wish for reasons of judicial economy to do so by means of a motion to stay and for reconsideration rather than by way of an appeal of this ruling.

*and Protection PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013). Cornelio faces irreparable harm to the extent that the disclosure law burdens his ability to engage in lawful and uninhibited communication over the Internet.

As to the second factor (whether remedies at law are inadequate), Cornelio does not seek damages, and the most meaningful remedy is entry of an order enjoining the State from enforcing the disclosure law against him as it has before. Where, as here, the law at issue allows for criminal penalties, then "speakers may self-censor rather than risk the perils of trial," creating a "potential for extraordinary harm and a serious chill upon protected speech." *See Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 670–71 (2004).

As to the third factor (the balance of hardships), I conclude that Cornelio's First Amendment speech interests weigh far more heavily than the State's interest in compelling disclosure of information that it has failed to show advances an important government interest. Lastly, as to the fourth factor (the public interest), I conclude that the public interest would not be disserved if the State is unable to enforce a speech-burdening law that does not serve its stated interest.

All in all, the four factors weigh in favor of permanent injunctive relief. Therefore, I will grant injunctive relief to prevent enforcement of the disclosure law against Cornelio.

Lastly, Cornelio seeks injunctive relief against enforcement of the disclosure law against all other sex offenders. But the Second Circuit has cautioned that "courts should not 'provide relief to nonparties when a narrower remedy will fully protect the litigants.'" *Kane v. De Blasio*, 19 F.4th 152, 173 (2d Cir. 2021) (quoting *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995)). "Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit," but when a court "order[s] the

government to take (or not take) some action with respect to those who are strangers to the suit, it is hard to see how the court could still be acting in the judicial role of resolving cases and controversies." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600, (2020) (Gorsuch, J., concurring in the grant of stay). My order granting declaratory and injunctive relief to Cornelio will fully protect his interests as the only named plaintiff party in this action.

To be sure, it is hard to see how the State could legitimately defend its application of the disclosure law against any other sex offenders. The reasons that the law is invalid as to Cornelio would appear to apply with equal force to all other sex offenders. But Cornelio did not bring this action as a class action, and I am wary of taking the extraordinary step of granting relief to persons who are not parties before me.

Nor do I assume that the State will necessarily continue to enforce the disclosure law against other sex offenders. The State has discretion whether to enforce the law. If the State chooses to continue enforcing the law, then—as Cornelio's counsel suggested at oral argument—it may open the way to more litigation and the possible award of monetary damages against state officials for attempting to enforce a law that has been definitively ruled unconstitutional.

### *Motion for sanctions*

Cornelio has moved for monetary sanctions under Rule 37(c) of the Federal Rules of Civil Procedure. He complains of the State's failure to timely update its discovery response as to whether a liaison officer had been appointed under § 54-260(b) to "facilitate the exchange of" Internet identifiers between DESPP and providers of electronic communication services or remote computing services.

Rule 37(c) allows a court to impose sanctions—including monetary sanctions—if a party fails to comply with its duty to timely update discovery responses. A court should consider

22

factors such as the party's explanation for the failure to comply with the disclosure law, the importance of the late-disclosed evidence, and the prejudice suffered by the opposing party as a result of having to prepare to meet the late-disclosed evidence. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

Here, I am convinced that the State's failure to timely update its discovery response was inadvertent on behalf of a busy Assistant Attorney General and that Cornelio was not meaningfully prejudiced in his prosecution of this action. Absent some showing of bad faith or improper motive, I am generally reluctant to impose monetary sanctions for ordinary and isolated attorney lapses such as the failure to timely update a discovery response. The reality is that most attorneys are busy and occasionally make mistakes with respect to disclosure of discovery that end up inconveniencing opposing counsel. Regrettable but not sanction-worthy. Courts are busy too and should be wary of incentivizing satellite litigation such as the filing of sanctions motions. To the extent that the motion for sanctions seeks other forms of litigation relief, it appears that these requests are now moot. Accordingly, I will deny the motion for sanctions.

## CONCLUSION

For the reasons stated above, the Court GRANTS the plaintiff's motion for summary judgment (Doc. #59) and DENIES the defendants' cross-motion for summary judgment (Doc. #62). The Court DENIES the plaintiff's motion for sanctions (Doc. #68).

The Court DECLARES that Conn. Gen. Stat. § 54-253(b) violates the First Amendment free-speech right of plaintiff James P. Cornelio to the extent that the law requires him to notify the Commissioner of Emergency Services and Public Protection in writing if he establishes or changes an electronic mail address, instant message address, or other similar Internet communication identifier.

23

The Court permanently ENJOINS the State of Connecticut, DESPP Commander Stavros Mellekas, and Connecticut State Police Detective Debbie Jeney from enforcing against plaintiff James P. Cornelio the requirement of Conn. Gen. Stat. § 54-253(b) that he notify the Commissioner of Emergency Services and Public Protection in writing if he establishes or changes an electronic mail address, instant message address, or other similar Internet communication identifier.

It is so ordered.

Dated at New Haven this 14th day of September 2023.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge