## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

James P. Cornelio,

               Plaintiff,

v.

State of Connecticut *et al.*,

               Defendants.

Civil No. 3:19-CV-01240 (JAM)

November 28, 2023

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a civil rights case in which the plaintiff, James P. Cornelio, won a judgment declaring that Conn. Gen. Stat. § 54-253(b) violated his free speech rights under the First Amendment to the United States Constitution. (Judgment, ECF No. 74.) The presiding District Judge, the Honorable Jeffrey A. Meyer, permanently enjoined the State of Connecticut and two police officials from enforcing the statute against him. (*Id.*)

Cornelio now seeks attorneys' fees and costs. (Pl.'s Mots. for Atty.'s Fees, ECF Nos. 75, 76.) His lead counsel, a North Carolina attorney named Paul Dubbeling, has moved for an award of $76,089.00, composed of $75,765.00 in fees and $324.00 in costs. (Pl.'s Mot. for Atty.'s Fees & Costs, ECF No. 75.) His local counsel, Attorney Robert Berke, moved for an award of $3,950.00 in fees. (Pl.'s Mot. for Atty.'s Fees of R. Berke, ECF No. 76.) The defendants do not dispute that Cornelio may recover his reasonable fees and costs, but they argue that the requested amounts are too high. (Defs.' Resps. To Pl.s' Mots. for Atty.'s Fees, ECF Nos. 79, 80.) They say that Attorneys Dubbeling and Berke should recover no more than $27,550.00 and $1,400.00, respectively. (*Id.*, ECF No. 79, at 7; ECF No. 80, at 6.)

Judge Meyer referred the two motions to me, United States Magistrate Judge Thomas O. Farrish. (Order of Referral, No. 81.) I have carefully reviewed the two motions and the other docket filings. Having done so, I conclude that Cornelio should be awarded fees and costs, although not in the amount sought. For the reasons set forth below, I recommend that Judge Meyer award him $49,286.00, composed of $46,750.00 in reasonable fees for the work performed by Attorney Dubbeling, $2,212.00 in reasonable fees for the work performed by Attorney Berke, and $324.00 in costs.

## II.    FACTUAL BACKGROUND

Cornelio is a convicted sex offender who pled guilty to sex offenses in New York state court in 2005. (Compl., ECF No. 1, at 1.) After his conviction he moved to Connecticut, and upon doing so, he became subject to Connecticut's sex offender registration law. *See* Conn. Gen. Stat. § 54-253 (requiring certain persons convicted of sex offenses in other states to "register with the Commissioner of Emergency Services and Public Protection" "without undue delay upon residing in the state"). The registration law "is administered by the Sex Offender Registry Unit of the Connecticut Department of Emergency Services and Public Protection," or "DESPP." (Order on Cross-Mots. for Summ. J., ECF No. 73, at 2) ("MSJ Ruling"). Among other things, the law purported to require sex offenders to disclose to the Commissioner of DESSP any "electronic mail address, instant message address or other similar Internet communication identifier." Conn. Gen. Stat. § 54-251(a). A separate statute, Conn. Gen. Stat. § 54-253(b), "incorporate[d] this requirement for a sex offender like Cornelio who committed the qualifying sex offense in a jurisdiction other than Connecticut but who is subject to Connecticut's registration requirement." (MSJ Ruling, at 3 n.3.) Throughout this litigation, Cornelio referred to Sections 54-251(a) and 54-

253(b) collectively as the "disclosure requirement" (*e.g.*, Memo. in Supp. of Pl.'s Mot. for Summ. J, ECF No. 61, at 2), and I will do likewise.

Cornelio sent e-mails to DESPP using an account that he had not previously disclosed. (MSJ Ruling, at 4.)  A state police detective named Debbie Jeney noticed the different address, and on June 30, 2016, she applied for an arrest warrant charging Cornelio with violating the disclosure requirement.  (Arrest Warrant Appl., ECF No. 1, at 20.)  A Superior Court judge signed the warrant on July 19, 2016 (*id.*), but the police did not execute it until almost two years later. (Compl., ECF No. 1, at 2.)  The same Superior Court judge then dismissed the case within a few weeks of Cornelio being arrested and presented.  (MSJ Ruling, at 4.)

Claiming that his civil rights had been violated, Cornelio filed this lawsuit *pro se* on August 9, 2019.[1]  (Compl., ECF No. 1.)  He raised three principal claims, the first of which was an allegation that Detective Jeney "engaged in malicious prosecution in violation of [his] Fourth Amendment right to be free of unreasonable searches and seizures."  (*Id.* at 4.)  Second, he asserted that Conn. Gen. Stat. § 54-257 – the portion of the sex offender registration law that required him to confirm his physical address every quarter – "violates . . . the *Ex Post Facto* Clause of the United States Constitution."  (*Id.* at 9.)  Third, he challenged the e-mail address disclosure requirement, claiming that it violated his First Amendment rights.  (*Id.* at 17-18.)  In addition to Detective Jeney, he named the State of Connecticut and its then-Commissioner of DESPP, Stavros Mellekas, as defendants.  (*Id.* at 1.)  He sought money damages and injunctive relief.  (*Id.* at 18.)

---

[1]     Although he filed his suit *pro se*, Cornelio once practiced law.  (Compl., ECF No. 1, at 6.) The New York State Unified Court System's website discloses that he was admitted to practice in 1983, after graduating from the Fordham University School of Law, but was disbarred after his conviction in 2005.  N.Y. State Unified Ct. Sys., *Attorney Online Services – Search*, available at https://iapps.courts.state.ny.us/attorneyservices/search?0 (last visited Nov. 28, 2023).

The defendants moved to dismiss all three claims, and Judge Meyer granted their motion on November 30, 2020. (Order on Mot. to Dismiss, ECF No. 22-1.)  Cornelio then appealed to the United States Court of Appeals for the Second Circuit, again proceeding *pro se*. (Notice of Appeal, ECF No. 25.)  The Court of Appeals affirmed the dismissal of his claims under the Fourth Amendment and Conn. Gen. Stat. § 54-257, but it reversed the dismissal of his First Amendment challenge to Conn. Gen. Stat. § 54-253(b).

In addressing Cornelio's First Amendment claim, the court proceeded in three steps. *Cornelio v. Connecticut*, 32 F.4th 160, 169 (2d Cir. 2022).  First, it concluded that the disclosure requirement "burdens protected speech and therefore must survive heightened scrutiny," because it "plausibly deters registrants from engaging in protected online speech," "has the inevitable effect of singling out those engaged in expressive activity," and "prevents a registrant from speaking anonymously."  *Id.* at 169-70.  Second, the court declined to decide whether these burdens implicated strict or intermediate scrutiny, instead asking whether Cornelio had "state[d] a plausible claim even under intermediate scrutiny[.]"  *Id.* at 170.  It then observed that, to survive that level of scrutiny, "the government must show that the challenged law (1) 'advances important governmental interests unrelated to the suppression of free speech' and (2) 'does not burden substantially more speech than necessary to further those interests.'"  *Id.* at 171 (quoting *Time Warner Cable Inc. v. FCC*, 729 F.3d 137, 160 (2d Cir. 2013)).  Third, the court concluded that Cornelio stated a plausible claim even under intermediate scrutiny, because Connecticut had neither demonstrated its asserted "governmental interest" at the Rule 12 stage, nor sufficiently "explained why the disclosure requirement cannot be more narrowly targeted."  *Id.* at 172-75.

After the Court of Appeals remanded the case, Cornelio hired Attorney Dubbeling. (*See* Invoice, ECF No. 75-3, at 1) (attorney fee invoice showing first contact on May 3, 2022)

(hereinafter "Dubbeling Invoice").  As will be discussed below, Attorney Dubbeling is a North Carolina lawyer who is developing a specialty in the representation of sex offenders in federal civil rights cases.  Because he is not regularly admitted in the District of Connecticut, he contacted a Bridgeport civil rights attorney, Robert Berke, to serve as local counsel.  (*See id.*) (documenting call on June 21, 2022).  Attorney Berke filed an appearance on July 7, 2022 (Appearance, ECF No. 35), and on July 14, 2022 he moved for Attorney Dubbeling's *pro hac vice* admission.  (Mot. for Admission of Visiting Atty., ECF No. 36.)  The Clerk of the Court granted the motion on July 19, 2023 (Order, ECF No. 38), and Attorney Dubbeling filed his appearance later that day. (Appearance, ECF No. 41.)

The parties then held their Rule 26(f) conference (*see* Rpt. of Rule 26(f) Conf., ECF No. 42), and afterward they began discovery.  They served interrogatories and requests for production (*see* Dubbeling Invoice, at 2) (documenting service), but neither side took any depositions nor disclosed any experts.  (Defs.' Resp. to Pl.'s Mot. for Atty.'s Fees, ECF No. 79, at 5) (hereinafter "Opp'n to Dubbeling Mot.").  The parties litigated a motion for sanctions over the defendants' failure to update a discovery response (Mot. for Sanctions, ECF No. 68), but otherwise discovery apparently proceeded smoothly, and it finished on schedule on February 2, 2023.

Through Attorney Dubbeling, Cornelio moved for summary judgment on February 20, 2023.  (Pl.'s Mot. for Summ. J., ECF No. 59.)  He began his accompanying memorandum of law by identifying the two principal questions that had not been resolved by the Court of Appeals:  "1) What is the appropriate standard of review? and 2) Have Defendants met their burden of demonstrating that the disclosure requirement meets that standard?"  (Memo. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 61, at 2.)  He then reviewed the scope of the disclosure requirement, noting that it "requires registrants, regardless of whether their predicate offense involved a minor

or regardless of whether it was facilitated by use of a computer, to divulge all Internet communication identifiers to state officials." (*Id.* at 6-7.) Next, he asserted that the requirement should be subjected to strict scrutiny, because that is "[t]he appropriate standard of review for a statute that *both* strips the right to anonymity *and* is directed only at a specific (particularly disfavored) class of persons[.]" (*Id.* at 9-10) (emphasis in original).

Cornelio's principal argument, however, was that the statute could not survive even intermediate scrutiny. (*Id.* at 10.) The defendants had said "that the governmental interest at stake is 'to prevent crime and to protect Connecticut's citizens, particularly children, from sex offenders, to stop sex offenders from engaging in grooming behavior over the Internet and/or assuming false identities over the Internet in order to facilitate crime or the victimization of people[.]'" (*Id.* at 11-12) (quoting defendants' interrogatory response). Cornelio argued that the record contained "no evidence that the disclosure requirement materially provides deterrence, that information collected pursuant to the statute has been used to identify the perpetrator of a crime, that information collected has assisted in the investigation of a crime, or that it has prevented the commission of a crime." (*Id.* at 12.) He also argued that the statute was not "narrowly tailored" to serve the asserted interest, because Connecticut already had a law against using the internet to entice minors into sexual activity. (*Id.* at 12-13.) Finally, he reviewed the statute's legislative history and concluded that "[t]he actual purpose of the disclosure requirement is not 'deterrence' but to prevent all registered sex offenders from using social networking sites," a "purpose" that "is inimical to the values of the First Amendment." (*Id.* at 18.)

The defendants filed their own summary judgment motion on March 2, 2023. (Defs.' Mot. for Summ. J., ECF No. 62.) Interpreting the First Amendment claim as a facial overbreadth challenge to the disclosure requirement, they argued that it must fail because Cornelio lacked

standing to raise it, and because the statute did not "punish a substantial amount of protected speech." (Memo. of L. in Supp. of Defs.' Mot. for Summ. J., ECF No. 62-1, at 5-6.) They then argued that even if Cornelio had standing, and even if the incursion into his First Amendment rights was sufficiently substantial, they were nonetheless entitled to summary judgment because the statute passed intermediate scrutiny. (*Id.* at 9.) They contended that the law was "not at all concerned with," nor did it regulate, "the content of any speech or any message conveyed." (*Id.* at 10.) Rather, it arose out of the state's "significant interest in protecting children on the internet from sex predators," and was "sufficiently tailored to achieve" that interest. (*Id.* at 11, 14.)

The parties then completed briefing. The defendants opposed Cornelio's motion on March 13, 2023 (Obj. to Pl.'s Mot. for Summ. J., ECF No. 64), and on March 19, 2023, Cornelio filed both an opposition to the defendants' motion and a reply brief in support of his own motion. (Resp. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 66; Reply to Defs.' Obj. to Pl.'s Mot. for Summ. J, ECF No. 67.) The defendants did not file a reply brief in support of their motion. Judge Meyer heard one hour and sixteen minutes of oral argument on both motions on May 10, 2023. (Minute Entry, ECF No. 72.)

On September 14, 2023, Judge Meyer entered an order granting the plaintiff's motion for summary judgment and denying the defendants' motion. (MSJ Ruling at 23.) He began his twenty-four-page opinion by noting that, although the disclosure requirement burdens free speech, that does not necessarily mean that it is unconstitutional. (*Id.* at 1.) "But it does mean that the State must justify the law," and to do so, the defendants "must show that the law advances an important government interest that is unrelated to the suppression of speech" and "that the law does not burden substantially more speech than necessary to further the government's interest." (*Id.*) He then concluded that the disclosure requirement failed on both fronts. With respect to the

first prong, he noted that the defendants fell "well short of producing any evidence that the disclosure requirement *advances*" the claimed governmental interest by, for example, showing that the requirement actually prevented any crimes. (*Id.* at 12) (emphasis in original). With respect to the second prong, he noted that the Court of Appeals had "identified at least three ways that the registration requirement is plausibly overbroad" at the Rule 12 stage, and he held that the defendants had not rebutted these claims even on a fully developed summary judgment record. (*Id.* at 16-18.) For these reasons, he granted Cornelio's motion and awarded him declaratory relief and a permanent injunction enjoining the defendants from enforcing the disclosure requirement against him. (*Id.* at 23-24; *see also* Judgment, ECF No. 74.)

Cornelio has now moved for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Attorneys Dubbeling and Berke filed separate motions. Attorney Dubbeling seeks a fee award of $75,765.00, which he calculates by multiplying his 137.5 hours of work times a $550 hourly rate. (Pl.'s Br. in Supp. of Mot. for Atty.'s Fees and Costs, ECF No. 75-1, at 4-7 (hereinafter "Dubbeling Br."); *see also* Dubbeling Invoice.) He also seeks an award of $324.00 in costs, composed of his $200.00 *pro hac vice* application fee, a $100.00 "research fee," and a $24.00 LEXIS fee to download a case that the defendants had cited. (*Id.*) Attorney Berke requests a fee award of $3,950.00, which he calculates by multiplying his 7.9 hours of work times a $550 hourly rate. (Pl.'s Mot. for Atty.'s Fees of R. Berke, ECF No. 76; Decl. of R. Berke, ECF No. 77.)

The defendants oppose both motions. (Opp'n to Dubbeling Mot.; Defs.' Resp. to Pl.'s Mot. for Atty.'s Fees, ECF No. 80) (hereinafter "Opp'n to Berke Mot.").) They argue that both fee requests are "based on an unreasonable hourly rate and an excessive number of hours claimed." (*Id.* at 1.) They urge the Court to reduce Attorney Dubbeling's and Attorney Berke's hourly rates to $400.00 and $350.00, respectively. (Opp'n to Dubbeling Mot., at 7; Opp'n to Berke Mot., at

6.)  The defendants also contend that both attorneys have overstated the number of hours necessary to prosecute Cornelio's claims, and that the Court should reduce them by a full fifty percent.  (*Id.*)

Attorneys Dubbeling and Berke both filed reply briefs.  (Pl.'s Reply, ECF No. 82; Reply, ECF No. 83.)  Neither side requested oral argument, and the motions are therefore ripe for decision. I will begin by considering whether Cornelio should recover his reasonable attorneys' fees and costs, and after concluding that he should, I will discuss the amounts that he should recover.

## III.    DISCUSSION

### A.    Whether Cornelio Should Recover His Attorneys' Fees and Costs

Successful Section 1983 plaintiffs ordinarily may recover their reasonable attorneys' fees and costs.  "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"  42 U.S.C. § 1988(b).  While the fee statute invests the Court with discretion, *see Duke v. Cnty. of Nassau*, No. 97-CV-1495 (JS), 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003), the Supreme Court has stated that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quotation marks and citation omitted).

A plaintiff who wins a permanent injunction ordinarily qualifies as a "prevailing party" for purposes of Section 1988.  For those purposes, a prevailing plaintiff is "one who obtains 'actual relief on the merits' that 'alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *DiMartile v. Hochul*, 80 F.4th 443, 451 (2d Cir. 2023) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)).  "An injunction or declaratory judgment . . . will usually satisfy that test."  *Lefimine v. Wideman*, 568 U.S. 1, 4 (2012) (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)).

Applying these principles, I conclude that Cornelio should recover his reasonable attorneys' fees and costs. He obtained an injunction that altered the legal relationship between the parties, because whereas the state once claimed that it could compel him to disclose any new e-mail addresses, it may no longer do so. *See id.* (holding that protestor who obtained injunction was a "prevailing party" for Section 1988 purposes because "[b]efore the ruling, police intended to stop [him] from protesting with his signs," but "after the ruling, the police could not prevent him from demonstrating in that manner"). Moreover, there are no "special circumstances [that] would render" a fee award "unjust," and indeed the defendants do not dispute that Cornelio may recover reasonable fees and costs. (*See* Opp'n to Dubbeling Mot., ECF No. 79; Opp'n to Berke Mot., ECF No. 80.)

## B.    Reasonable Attorneys' Fees

"Of course, fees awarded pursuant to section 1988 must be 'reasonable.'" *Chabad Lubavitch of Litchfield Cnty., Inc. v. Borough of Litchfield, Conn.*, No. 3:09-cv-1419 (JCH), 2020 WL 1527239, at *3 (D. Conn. Mar. 31, 2020) (quoting 42 U.S.C. § 1988). Put differently, "[a] court cannot allow a prevailing party to foist an unreasonable fee upon his adversary." *Mendoza v. City of Rome, N.Y.*, 162 F.R.D. 260, 264 (N.D.N.Y. 1995). When a court concludes that a "requested fee is excessive," it "has discretion to reduce the award." *Cabala v. Morris*, No. 3:09-cv-651 (VLB), 2014 WL 12749964, at *2 (D. Conn. Sept. 30, 2014) (quoting *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) (ellipsis omitted).

In this Circuit, an analysis of the reasonableness of a fee request begins with a "lodestar" calculation. *Wei v. Sichuan Pepper, Inc.*, No. 3:19-cv-525 (JBA) (TOF), 2022 WL 385226, at *15 (D. Conn. Jan, 17, 2022), *report and recommendation adopted*, 2022 WL 382019 (D. Conn. Feb. 7, 2022) ("As a general matter, the starting point in analyzing whether claimed attorneys' fees are

appropriate is the lodestar[.]") (citation omitted).  The "lodestar" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  While the Court of Appeals has suggested that the term is outdated, *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ("*Arbor Hill II*"), it has also held that district courts must calculate the figure.  *Ortiz v. City of N.Y.*, 843 F. App'x 355, 358 (2d Cir. 2021) (summary order) ("We have explained that district courts evaluating a request for attorneys' fees must conduct a lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate, which results in a presumptively reasonable fee.") (internal quotation marks omitted).  I will therefore begin my analysis of Cornelio's fee petition by first considering the reasonableness of his attorneys' claimed hourly rates, and then I will consider whether the requested hours are appropriate.

### 1.    *Reasonable hourly rates*

In assessing the "reasonable hourly rate" component of the lodestar calculation, the Second Circuit has directed district courts to "bear in mind *all* of the case-specific variables that [it] and other courts have identified as relevant to the reasonableness of an attorney's fees."  *Arbor Hill II*, 522 F.3d at 190 (emphasis in original).  "The reasonable hourly rate is the rate a paying client would be willing to pay," and in determining that rate, district courts should consider (among other things) the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[2]  *Id.*  Courts should also "bear in mind that a reasonable, paying client wishes to spend the

---

[2]      The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the

minimum necessary to litigate the case effectively." *Id.*  A reasonable, paying client also "presum[ably] . . . would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.*  Accordingly, "[w]hen an attorney's requested hourly rate is higher than the rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate." *Yuajian Lin v. La Vie en Schezuan Rest. Corp.*, No. 15-cv-09507 (DF), 2020 WL 1819941, at *2 (S.D.N.Y. Apr. 9, 2020) (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)).

"In the District of Connecticut, the customary fee for civil rights litigators, including partners, with extensive experience is $350 to $450 per hour." *Champagne v. Columbia Dental, P.C.*, No. 3:18-cv-1390 (VLB), 2022 WL 951687, at *5 (D. Conn. Mar. 30, 2022).  For example, in the Section 1983 case of *Doe v. University of Connecticut*, Judge Shea approved an hourly rate of $400.00 for an attorney with about ten years' legal experience.  No. 3:20-cv-92 (MPS), 2021 WL 395817, at *11 (D. Conn. Feb. 4, 2021) (hereinafter "*UConn*").  In another Section 1983 case – *Edwards v. Cornell*, No. 3:13-cv-878 (WIG), 2018 WL 3381296, at *2-3 (D. Conn. July 11, 2018) – Judge Garfinkel held that $400.00 was a reasonable hourly rate for an attorney "with approximately fifteen years of experience handling complex civil litigation in state and federal courts in Connecticut and Massachusetts."  And in the civil rights case of *Humphrey v. Crea*, Judge Meyer likewise approved a $400.00 hourly rate.  No. 3:15-cv-1164 (JAM), 2019 WL 3561899, at *4 (D. Conn. Aug. 6, 2019).  Humphrey's attorney had requested $450.00, citing his forty-three years of practice and extensive trial experience.  (Aff. of J. Gulash, ECF No. 78-3, No. 3:15-cv-

---

experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly v. City of N.Y.*, 934 F.3d 222, 228 (2d Cir. 2019).

1164.)  But Judge Meyer deemed a $50.00 reduction necessary "in light of the market and [the attorney's] relevant experience."  *Humphrey*, 2019 WL 3561899, at *4.

In this case, Attorney Dubbeling calculated his fee claim using an hourly rate of $550.00. (Dubbeling Br., at 4-6.)  He cites five principal considerations in support of this rate, the first of which is his experience and specialization.  He describes himself as a "nationally prominent civil rights attorney who has been representing sexual offenders in section 1983 cases for a decade," and he explains that he is "regularly asked to consult on cases involving the constitutionality of sex offender statutes in various states."  (*Id.* at 4-5.)  He adds that he "speaks on section 1983 issues at national conferences and gives continuing legal education presentations in his state of licensure."  (*Id.* at 5.)  Second, he argues that $550.00 is a reasonable hourly rate in this case because sex offenders like Cornelio "are quintessentially 'undesirable' clients" who have limited "access to competent counsel willing to seek vindication of their constitutional rights."  (*Id.*)  Third, he notes that his current hourly rate for corporate clients is $500.00, and he argues that he should be awarded $50.00 more in this case because he "accepted [it] on contingency[.]"  (*Id.*)  Fourth, he contends that this case is like those few Connecticut civil rights cases in which judges exceeded the $350.00-$450.00 norm and approved $500.00 hourly rates, and he adds that he is entitled to a further "upward adjustment of $50 . . . in light of the specialized nature of these proceedings, the specific experience of counsel, [and] the remaining *Johnson* factors[.]"  (*Id.*) (citing, *inter alia*, *Rinaldi v. Laird*, No. 3:14cv-91 (JAM), 2017 WL 2616921, at *2 (D. Conn. June 16, 2017)).  Fifth and finally, he asserts that there has been a "general increase in the prevailing market rates since" those cases were decided.  (*Id.* at 6.)

With respect to the first of these five considerations, Cornelio bears the burden to show that Attorney Dubbeling's experience, specialization, and reputation support the requested hourly

rate. As the Supreme Court has explained, "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the request rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). When an applicant fails to provide this evidence, the court can deny his application in its entirety, "without prejudice to renewal upon a proper showing." *Disney Enterps., Inc. v. Merchant*, No. 6:05-cv-1489, 2007 WL 1101110, at *8 (N.D.N.Y. Apr. 10, 2007). At the same time, the court can also consider the application "in spite of these omissions, provided that [it has] sufficient information about the attorney's qualifications to assess the reasonableness of his claimed rate." *Faniel v. PAFY, Inc.*, No. 3:20-cv-387 (VLB) (TOF), 2022 WL 1212813, at *9 (D. Conn. Feb. 14, 2022), *report and recommendation adopted*, 2022 WL 2287599 (D. Conn. May 4, 2022) (citation and quotation marks omitted). Although they are not obliged to do so, courts sometimes consult internet sources to fill the gaps in the applicant's submission. *E.g., id.* (reviewing attorneys' websites, PACER appearances, and state court dockets to assess experience where attorneys had not provided the information); *Valencia v. Nassau Country Club*, No. 18-cv-2724 (LDH) (JO), 2020 WL 7249440, at *2 (E.D.N.Y. Oct. 19, 2020) (reviewing attorneys' web pages and LinkedIn profiles).

In this case, Attorney Dubbeling provided little information about his experience and reputation. He says that he "began litigating Section 1983 cases seeking to vindicate the constitutional rights of sex offenders in 2013" (Decl. of P. Dubbeling, ECF No. 75-2, ¶ 2), but he does not disclose how many cases he litigated, how they resolved, and so forth. He adds that he has "consulted on" other cases, but again, he does not say how many. (*Id.* ¶ 4.) He states, on "information and belief," that he has "a national reputation as an attorney providing competent and

skilled representation in cases involving the constitutionality of sex offender registry laws" (*id.* ¶ 7), but he provides no further details.

The Court's own inquiry reveals more information, much of it very impressive.  Attorney Dubbeling's LinkedIn page discloses that he was admitted to the Order of the Coif while at the Indiana University Maurer School of Law, and that he holds an M.B.A. degree from Duke University.  (*Paul Dubbeling*, www.linkedin.com, last visited Nov. 21, 2023).  It also reveals that he clerked on the United States Court of Appeals for the Tenth Circuit for then-Judge Neil Gorsuch.  (*Id.*)  Attorney Dubbeling also served his country in the United States Army, including as a Detention Operations Judge Advocate at the Bagram Airfield in Afghanistan.  (*Id.*)  He has apparently spoken at least six times at the annual conference of the National Association for Rational Sexual Offense Laws.  Nat'l Ass'n for Rational Sexual Offense Laws, *Paul Dubbeling at NARSOL's 2022 Conference*, Apr. 1, 2022, *available at* narsol.org/2022/04/paul-dubbeling-at-narsols-2002-conference/ (last visited Nov. 28, 2023).

On balance, however, the available information about Attorney Dubbeling's experience does not support a $550.00 hourly rate.  A CM/ECF search reveals that he has appeared in thirty-two federal cases, only seventeen of which have a "nature of suit" code corresponding to a civil rights action.  (CM/ECF Search, *Paul Dubbeling*, last viewed Nov. 14, 2023.)  In *Faniel*, an attorney with eighty-three appearances in his field of specialization was awarded only $350.00.  2022 WL 1212813, at *9.  The attorney to whom Judge Garfinkel awarded $400.00 in *Edwards* had appeared in forty-five cases in this District alone, leaving aside his Massachusetts practice.  (CM/ECF Search, *Peter Van Dyke*, last viewed Nov. 28, 2023.)  And in *Goff v. Chivers*, the court approved an hourly rate of $350.00 for an attorney who had "tried approximately ninety cases to verdict in the District of Connecticut, at least fifty of which" were civil rights cases "involv[ing]

allegations of police misconduct."  No. 3:15-cv-722 (SALM), 2017 WL 2896022, at *2 (D. Conn. July 7, 2017).

The second of the five cited considerations – the undesirability of sex offenders as clients (Dubbeling Br., at 5) – likewise does not support a $550.00 hourly rate.  "The 'undesirability' of the case factor articulated in *Johnson* was meant to be considered in cases in which 'civil rights attorneys face hardships in their communities because of their desire to . . . eradicate discrimination,' which 'is not pleasantly received by the community or counsel's contemporaries' and 'can have an economic impact on counsel's practice.'" *Wimbush v. L.I.C. Pet Transp., LLC*, No. 16-cv-5363 (PAE) (KNF), 2017 WL 10299581, at *17 (S.D.N.Y. Aug. 25, 2017) (quoting *Johnson*, 488 F.2d at 719) (brackets omitted), *report and recommendation approved in part and rejected in part*, 2018 WL 3388296 (S.D.N.Y. July 12, 2018).  Stated another way, "*Johnson* makes clear that undesirability is an economic analysis considering the class of case and the bar in general." *Murillo v. A Better Way Wholesale Autos, Inc.*, No. 3:17-cv-1883 (VLB), 2019 WL 5104015, at *6 (D. Conn. Oct. 10, 2019).  Attorney Dubbeling frames the "undesirability" factor in terms of "revulsion"; he suggests that higher rates must be awarded in sex offender cases to encourage attorneys to overcome any potential disgust and welcome those clients into their offices. (Dubbeling Br., at 5) (stating that sex offenders are "generally reviled," and that this "revulsion . . . limit[s] access to competent counsel").  But courts generally do not discuss this *Johnson* factor in those terms; rather, they consider a case to be "undesirable" if the lawyer will suffer in his pocketbook for having taken it.  *E.g., Murillo*, 2019 WL 5104015, at *6; *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 751 n.15 (Blackmun, J., dissenting) ("[O]ne of the factors to consider is the undesirability of the case, because of the effect it may have on obtaining other business[.]") (citation and quotation marks

omitted).    In this case, the record contains no evidence that Attorney Dubbeling's business prospects will suffer from his having represented Cornelio.

The third of the five considerations – the contingency of the fee agreement (ECF No. 75-1, at 5) – also fails to support a $550.00 rate in this case.  To be sure, contingent fee arrangements ordinarily entitle the victorious attorney "to some premium for the risk incurred."  *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014).  But here, Attorney Dubbeling did not appear until after the Court of Appeals had ruled upon Cornelio's *pro se* appeal; he therefore did not bear as much risk as he would have if he had been involved in the case from the beginning.  Moreover, after remand "[t]his case involved no experts, no depositions, and a very modest amount of written discovery."  (Opp'n to Dubbeling Mot., at 5.)  Thus, Attorney Dubbeling took less contingency risk than he would have if the case had involved extensive deposition and expert discovery.  *Cf. Chen v. Select Income REIT*, No. , 2019 WL 6139014, at *18 (S.D.N.Y. Oct. 11, 2019) (rejecting fee applicant's claim "that the contingent nature of the fee agreement between plaintiff and counsel alone is sufficient to warrant an enhancement of" the lodestar; because the case was "strategically short-lived," counsel's "risk" was not "significant").

With respect to the fourth consideration, the Court disagrees that the few cases approving $500.00 hourly rates are appropriate comparators.  In two of the cases cited by Cornelio, the lawyer who was awarded $500.00 was Attorney John Williams.  *Rinaldi v. Laird*, No. 3:14-cv-91 (JAM), 2017 WL 2616921, at *2 (D. Conn. June 16, 2017); *Goff*, 2017 WL 2896022, at *2.  As Judge Merriam explained in *Goff*, Attorney Williams "has been practicing law for more than 49 years, and has tried countless Section 1983 cases to verdict."  *Id.*  Furthermore, Attorney Williams' extensive experience led to exceptional efficiency; he and his law firm litigated the *Rinaldi* case all the way through a bench trial for only $12,262.50, and Judge Meyer approved his $500.00

hourly rate in part because of the "efficient . . . manner in which the case was presented at trial." *Rinaldi*, 2017 WL 2616921, at *1-2. In this case, Attorney Dubbeling has about thirty years less experience, and was evidently less efficient since it took him more than four times as many hours to resolve this case at an earlier stage. (*Compare* Dubbeling Invoice *with Rinaldi*, 2017 WL 2616921, at *1.) And in *Barham v. Wal-Mart Stores, Inc.*, Judge Bolden specifically cited the attorney's "decades of experience" in approving at $500.00 rate. No. 3:12-cv-1361 (VAB), 2017 WL 6459502, at *3 (D. Conn. Dec. 18, 2017). In summary, while Attorney Dubbeling has compiled some significant achievements in his decade of Section 1983 practice, he does not yet have the same level of experience and efficiency as the few civil rights attorneys who have been awarded $500.00.[3]

Fifth and finally, the record does not contain any evidence of a "general increase in market rates" sufficient to support the $550.00 figure. (ECF No. 75-1, at 6.) To support such claims, fee applicants often supplement their own attorney's affidavit with affidavits from other lawyers attesting to market trends. *See, e.g., Doe by and through Doe v. E. Lyme Bd. of Educ.*, No. 3:11-cv-291 (JBA), 2019 WL 1397455, at *13 (D. Conn. Mar. 27, 2019); *cf. also Blum*, 465 U.S. at 895-96 n.11 (anticipating the submission of "evidence – in addition to the attorney's own affidavits – that the request rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"). Here, however, Cornelio filed no such affidavit. Moreover, some of the above-cited precedents are not that old, and they

---

[3]     The other case cited by Cornelio, *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-cv-1897 (CSH), 2017 WL 1399630, at *4 (D. Conn. Apr. 18, 2017), was an intellectual property case, not a civil rights case. Judge Haight concluded that a $500.00 hourly rate was consistent with the market in the District of Connecticut for cases of that type. *Id.*

are therefore not especially vulnerable to a charge of being out of step with the market. Judge

Shea's $400.00 award in *UConn*, for example, is not yet three years old. 2021 WL 395817, at *1.

Considering all the relevant case-specific variables, I conclude that $425.00 is a reasonable

hourly rate for Attorney Dubbeling's work on this case. This represents a $25.00 hourly premium

over the $400.00 awards in *UConn*, *Edwards*, and *Humphrey*, and falls toward the top of the

$350.00-450.00 range cited by Judge Bryant in *Champagne*, but the premium is justified for

several reasons. First, while Attorney Dubbeling does not yet have the "decades of experience"

that might entitle him to $500.00, he nevertheless is developing significant specialization and

experience in litigating civil rights cases on behalf of sex offenders, having appeared in seventeen

such cases nationwide. *Johnson*, 488 F.2d at 719 ("An attorney specializing in civil rights cases

may enjoy a higher rate for his expertise than others, providing his ability corresponds with his

experience."). Second, the case presented novel questions even after remand, and it required a

meaningful level of skill to achieve the result ultimately obtained. *Menghi v. Hart*, 745 F. Supp.

2d 89, 112 (E.D.N.Y. 2010) (approving attorney's claimed hourly rate because it was supported

by "[t]he novelty and difficulty of the questions presented," and because attorneys "should be

appropriately compensated for accepting the challenge" presented by a case that seeks to "make

new law"). Third, while Attorney Dubbeling did not take the same level of contingency risk as

some other attorneys, he did take some. (Decl. of P. Dubbeling, ECF No. 75-2, ¶ 10.) So far as

the opinions disclose, the attorneys in *UConn*, *Edwards*, and *Humphrey* did not. Fourth, Attorney

Dubbeling charges his corporate clients $500.00 per hour; thus, a fee award calculated on a

$425.00 hourly rate would not represent a windfall above and beyond his ordinary rate. *See Lilly*,

934 F.3d at 228 (listing "the attorney's customary hourly rate" as a factor to be considered).

19

By contrast, Cornelio has not demonstrated that Attorney Berke is entitled to an award at anything other than the bottom of the $350.00-$450.00 range identified by Judge Bryant in *Champagne*. Attorney Berke has appeared in more than fifty civil rights cases over his twenty-two-year career (Decl. of R. Berke, ECF No. 77, ¶¶ 2-3), some of them before me. I do not doubt that his experience and capabilities can command high hourly rates in the marketplace, but any rate above $350.00 would be too high for the specific work that he did in this case. His invoice shows him performing such tasks as "review[ing] interrogatories," "review[ing the Rule] 26f report," and so forth (Berke Invoice, ECF No. 78), and courts do not typically award high rates for such work even when done by experienced attorneys. *See, e.g., Found. Cap. Res., Inc. v. Udo-Okon*, No. 3:21-cv-1278 (JAM) (TOF), 2022 WL 17413950, at *5 (D. Conn. Dec. 5, 2022) (hereinafter "*Udo-Okon*") (noting attorney's lengthy experience and many credentials, but nonetheless concluding that her claimed rate was "too high for the work required" by the case, considering *Lilly's* direction to consider the "level of skill required"); *Wei*, 2022 WL 385226, at *17 (reducing attorney's rate because much of his work "could have been done by a junior associate or paralegal"). In summary, the reasonable hourly rates in this case are $425.00 for the work performed by Attorney Dubbeling, and $350.00 for the work performed by Attorney Berke.

### 2. *Reasonable hours*

In the second part of the lodestar calculation, courts determine the number of hours that the victorious lawyer reasonably spent on the case – which is not necessarily the same as the number of hours actually spent. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise necessary[.]" *Hensley*, 461 U.S. at 343. Lawyers are ethically forbidden from billing clients for such hours, and "[h]ours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant

to statutory authority." *Id.* (emphasis in original, citation omitted).  When the lawyer submits his fee request, the court must therefore review it to ensure that he is "not . . . compensate[d] . . . for unnecessary hours." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015).

"The Supreme Court has warned that 'the determination of fees should not result in a second major litigation,' and has instructed that the goal of an attorney's fee award is 'to do rough justice, not achieve auditing perfection.'" *McCullough v. World Wrestling Entm't*, No. 3:15-cv-1074 (JAM), 2021 WL 4472719, at *4 (D. Conn. Sept. 30, 2021) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).  Thus, when a fee application contains surplus hours, the court is not obliged to "conduct[] a laborious, entry-by entry analysis" of the lawyer's time records.  *Udo-Okon*, 2022 WL 17413950, at *7.  Rather, it "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" *McCullough*, 2021 WL 4472719, at *4 (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).  In *Wei*, for example, the court reduced an attorney's requested hours by fifteen percent because his bill included "several facially unreasonable entries" such as "1.3 hours for 'Create Binder, Set Up/Key in Database,' .33 hours to 'Key In Complaint Service Due Date and Expected Date of Return of Service,'" and so forth.  2021 WL 385226, at *19.

Fee applicants bear the burden to support their claims on the second part of the lodestar calculation as well as the first.  In particular, the number of hours claimed must be "document[ed] . . . with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  "The records must be specific and detailed[,]" and "[e]ven if made contemporaneously, an entry 'Engaged on Jones case – 8 hours' will not do." *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).

In this case, Attorney Dubbeling seeks 137.5 hours and Attorney Berke seeks 7.9 hours. (Dubbeling Invoice; Berke Invoice, ECF No. 78.)   Both submissions are supported with spreadsheets listing each item of legal work performed, along with the number of hours in tenth-of-an-hour increments, the date of the work, and the name of the attorney performing it.  (*Id.*)  Both attorneys have also provided declarations confirming that these records were contemporaneously made.  (Decl. of P. Dubbeling, ECF No. 75-2, ¶ 12; Decl. of R. Berke, ECF No. 77, ¶ 7.)  Neither attorney has engaged in "block billing" or other tactics that frustrate review.  *E.g., E.S.*, 796 F. Supp. at 432.  Presumably for these reasons, the defendants have not challenged the sufficiency of the documentation.  (Opp'n to Dubbeling Mot., at 6-7; Opp'n to Berke Mot., at 5-6.)

The defendants do, however, argue that the "calculated hours are excessive."  With respect to Attorney Dubbeling, they do not parse his bill entry by entry, but instead assert generally that his 137.5 hours were too many for a case that "involved no depositions, no experts, a modest amount of written discovery, cross motions for summary judgment, and a brief oral argument." (Opp'n to Dubbeling Mot., at 6.)  They add that the lawyers in *Rinaldi* and *Champagne* took their cases all the way through trial in 31 hours and 113 hours, respectively.  (*Id.*)  With respect to Attorney Berke, the defendants note that almost all his 7.9 hours "come from reviewing the work of Attorney Dubbeling," and that "[t]o the extent this review was simply to ensure compliance with the Local Rules," these hours should be disallowed because even *pro hac vice* attorneys are required to know those rules themselves.  (Opp'n to Berke Mot., at 5.)  The defendants urge the Court to reduce both attorneys' hours by fifty percent.  (Opp'n to Dubbeling Mot., at 7; Opp'n to Berke Mot., at 6.)

Having carefully reviewed both invoices, I conclude that Cornelio has not entirely supported the reasonableness of all the hours claimed in the two fee submissions.   Stated

differently, an entry-by-entry review reveals reasons to accept the defendants' general claim that 143.4 hours (137.5 plus 7.9) are too many. With respect to Attorney Dubbeling's submission, I begin by noting that he seeks four-tenths of an hour, or twenty-four minutes, to draft a two-sentence appearance form. (Dubbeling Invoice, at 1; *see also* Appearance, ECF No. 41.) He then seeks 1.2 hours to draft an unremarkable *pro hac vice* application composed of a two-sentence motion and a simple declaration taken largely verbatim from D. Conn. L. Civ. R. 83.10(d). (Dubbeling Invoice, at 1; *see also* Mot. for Admission of Visiting Atty., ECF No. 36; Aff. of P. Dubbeling, ECF No. 37.) He also requests six-tenths of an hour, or thirty-six minutes, to draft a two-sentence motion for entry of a protective order to which the parties had previously agreed. (Dubbeling Invoice, at 2; Mot. for Prot. Order, ECF No. 44.)

More significantly, the hours sought for the summary judgment motion do not seem supported by the motion's complexity. Attorney Dubbeling seeks forty hours – or a full week of eight-hour workdays – to research and draft a three-page summary judgment motion, a twenty-one-page memorandum of law, and a nine-page statement of material facts. (Dubbeling Invoice, at 2-3.) But as the defendants explain, the Court of Appeals had resolved the most complex issues (Opp'n to Dubbeling Mot., at 4), and I conclude that the remaining issues were likely not so difficult as to reasonably require a full week of an experienced civil rights lawyer's time. *See, e.g., Spencer Recovery Ctrs., Inc. v. Eval Co. of Am. Med. Plan*, No. CV-02-4270 CMB, 2010 WL 11639813, at \*7 (C.D. Cal. Feb. 8, 2010) (observing that "greater experience should come with greater efficiency"). Indeed, in important passages of the supporting memorandum of law, the Court of Appeals' decision is the only case cited. (*See* Memo. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 61, at 11-14) (citing no case other than the Court of Appeals' decision in support of principal arguments about government interests and narrow tailoring). Finally, I note that three

entries totaling 6.5 hours are described only as "review client statements," and I am unable to discern what they involved or why the charges were reasonable.

With respect to Attorney Berke, almost all his time entries are for reviewing Attorney Dubbeling's work. (Berke Invoice, ECF No. 78) (charging for, among other things, "review[ing] interrogatories," "review[ing] *pro hac vice* application," and "review[ing] 26f report"). The necessity of this review has not been explained. Of course, "layers of review" and "some redundancy" may be "prudent in the practice of law." *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-cv-260 (KAD), 2020 WL 2061830, at *2 (D. Conn. Apr. 8, 2020). But the costs of those redundancies generally "should not be visited upon" the opposing party, *id.*, at least without an explanation of why they were necessary.

At the same time, I disagree with the defendants' claim that all of this should add up to a fifty percent reduction in hours. The defendants cite *M.M. v. New York City Department of Education* for this proposition (ECF No. 79, at 6), but that case was one of several between the same law firm and government agency, and the court concluded that many of the hours claimed were duplicative of hours expended in their earlier battles. No. 20-Civ.-6915 (ER), 2022 U.S. Dist. LEXIS 137319, at *27-29 (S.D.N.Y. Aug. 2, 2022). Even so, the court reduced the hours by only twenty-five percent, not the fifty percent the defendants seek here. *Id.* The defendants also reference *L.L. v. New York City Department of Education* (ECF No. 79, at 6-7), another case between the same law firm and government agency. No. 20-CV.-2515 (JPO), 2022 U.S. Dist. LEXIS 25047, at *5 (S.D.N.Y. Feb. 9, 2022). In that case the court reduced the claimed hours by fifty percent, but the billing entries were much more plainly excessive than any of the entries in this case. For example, one attorney claimed to have spent 17.2 hours re-drafting a nine-page complaint that had previously been drafted by another attorney. *Id.* at 10-11.

Considering all the relevant circumstances, I conclude that a twenty percent – rather than a fifty percent – reduction in hours is appropriate in this case.  In *Udo-Okon,* the court applied a twenty percent reduction after determining that some billing entries likely exceeded what was reasonable; the applicant had, for example, billed nine-tenths of an hour to redact four photographs and 2.1 hours to "prepar[e] videos for potential display at a hearing," leading the court to wonder whether other entries had been similarly careless.  2022 WL 17413950, at *7.  Similarly, in *North American Specialty Insurance Co. v. QSR Steel Corp. LLC*, Judge Arterton applied a twenty percent reduction after concluding that it was excessive for the plaintiff to bill "8.1 hours for drafting a motion to strike" and "2.2 hours to review every pleading in the case."  No. 3:21-cv-247, 2023 WL 5614904, at *1 (D. Conn. Aug. 30, 2023).  Here, as in *Foundation Capital* and *North American*, there are excessiveness and redundancy concerns with roughly twenty percent of the claimed hours.  These hours include the time claimed for simple filings like Attorney Dubbeling's appearance and *pro hac vice* application, the 6.5 hours under the unrevealing description "review client statements," a portion of the forty hours to draft the summary judgment motion, and so forth.

Again, the Court's mission is not to achieve "auditing perfection," but rather to be "practical" and to keep the fee motion from developing into an entirely new front of protracted litigation.  *McCullough*, 2021 WL 4472719, at *4.  With that goal in mind, and considering all the above-cited factors, I conclude that 110 hours (137.5 less twenty percent) is a reasonable number of hours for Attorney Dubbeling, and 6.32 hours (7.9 less twenty percent) is a reasonable number of hours for Attorney Berke.

### 3.    Determining the appropriate amount of attorneys' fees

Multiplying the reasonable rates and reasonable hours derived above results in the following calculation:

| Attorney | Reasonable Rate | Claimed Hours | Percentage Reduction | Reasonable Hours | Reasonable Fee |
|---|---|---|---|---|---|
| Dubbeling | $425.00/hour | 137.5 | 20% | 110 | $46,750.00 |
| Berke | $350.00/hour | 7.9 | 20% | 6.32 | $2,212.00 |
| | | | | **Total:** | **$48,962.00** |

Of course, "the product of a reasonable hourly rate and a reasonable number of hours establishes only a 'presumptively reasonable' fee." *Howell v. Yale Univ.*, No. 3:22-cv-1160 (JCH) (TOF), 2023 WL 4564409, at *3 (D. Conn. July 17, 2023).  "[I]t is still within the court's discretion to adjust the amount upward or downward based on [] case-specific factors." *Tyco Healthcare Grp. L.P. v. Ethicon Endo-Surgery, Inc.*, No. 3:10-cv-60 (JBA), 2012 WL 4092515, at *1 (D. Conn. Sept. 17, 2012) (citation and internal quotation marks omitted).  Thus, "the process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010).  In this case, however, neither party has requested an adjustment to the lodestar, and I observe no reason to make one.

### C.    Reasonable Costs

In addition to his reasonable attorneys' fees, Cornelio seeks to recover $324 in costs.  (ECF No. 75, at 1.)  As noted above, the $324 is composed of Attorney Dubbeling's $200 application fee for *pro hac vice* admission, a $100 "research fee," and a $24 LEXIS fee to download a case cited by the defendants.  (Dubbeling Invoice, at 1, 3.)

"[A]ttorney's fee awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *United States Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). Some authorities hold that "'costs associated with the filing of *pro hac vice* applications are generally not reimbursable' . . . at least in cases . . . that implicate no unusual issues requiring out-of-district expertise." *Wei*, 2022 WL 385226, at *20 n.11 (quoting *Div. 1181 Amalgamated Transit Union v. D & A Bus Co.*, 270 F. Supp. 3d 593, 629 (E.D.N.Y. 2017)). And some authorities likewise hold that electronic research costs are not recoverable. *E.g., Cardoza v. Mango King Farmers Market Corp.*, No. 14-cv-3314 (SJ) (RER), 2015 WL 5561033, at *19 (E.D.N.Y. Sept. 1, 2015) (stating that "courts in the Eastern District of New York have not permitted recovery of these costs," because they are "merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost"); *but see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) ("*Arbor Hill I*") ("[The] "use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and . . . in the context of a fee-shifting provision, the charges for such online research may be properly included in a fee award."). Here, however, the defendants presumably know as well as anyone the degree to which this case required out-of-district expertise or legal research falling outside a standard LEXIS or Westlaw subscription, and yet they have not objected to recovery of these costs. (*See* ECF No. 79, at 6-7; ECF No. 80, at 5-6.) I therefore recommend that they be allowed.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that Judge Meyer:

27

A.  Grant in part and deny in part Cornelio's motion for an award of fees and costs incurred by Attorney Dubbeling (ECF No. 75), granting it to the extent of $46,750.00 in reasonable attorneys' fees and $324.00 in reasonable costs, but denying it to the extent that it seeks higher amounts; and

B.  Grant in part and deny in part Cornelio's motion for an award of fees incurred by Attorney Berke (ECF No. 76), granting it to the extent of $2,212.00 in reasonable attorneys' fees but denying it to the extent that it seeks a higher amount.

This is a recommended ruling.  *See LoSacco v. City of Middletown*, 71 F.3d 88, 91 (2d Cir. 1995) (expressing doubt about a Magistrate Judge's authority under 28 U.S.C. § 636(b)(1)(A) to finally determine a post-judgment motion, because that grant of authority is limited to "pretrial" matters); *United States v. Pappas*, 546 F. App'x 63, 64 (2d Cir. 2013) (summary order) (holding that "the result is no different" if "the district court's referral was pursuant to the catch-all provision of § 636(b)(3)," because "[m]atters assigned under that provision are not subject to a final determination by the magistrate judge"); *see also Found. Cap. Res., Inc. v. Prayer Tabernacle Church of Love, Inc.*, No. 3:17-cv-135 (JAM) (TOF), 2021 WL 3863428, at *13 (D. Conn. Apr. 30, 2021), *report and recommendation adopted*, 2021 WL 3861794 (D. Conn. Aug. 30, 2021). Pursuant to Rule 72.2(a) of the District of Connecticut's Local Rules for Magistrate Judges, if any party wishes to object to this recommendation, it must file that objection within fourteen days.  "A party may not thereafter assign as error a defect in the Magistrate Judge's order to which objection was not timely made."  *Id.*

Date: 2023.11.28
15:52:13 -05'00'

Hon. Thomas O. Farrish
United States Magistrate Judge